FILED

FEB 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT

$\mathcal{SI}$
$\mathcal{S30}$

AO 241
(Rev. 12/04)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: NORTHERN OF CALIFORNIA |
|---|---|

| Name (under which you were convicted): HOMER E. HAWKINS (3) | Docket or Case No.: |
|---|---|

| Place of Confinement : IRONWOOD STATE PRISON | Prisoner No.: C-55875 |
|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| HOMER E. HAWKINS (3) | v. DEBORAH DEXTER- WARDEN |

The Attorney General of the State of

**CV 08 1087** **SI (PR)**

PETITION

1.    (a) Name and location of court that entered the judgment of conviction you are challenging: SUPERIOR COURT STATE OF CALIFORNIA COUNTY OF SAN MATEO

(b) Criminal docket or case number (if you know): SC-58647-A

2.    (a) Date of the judgment of conviction (if you know): OCTOBER 19, 2005

(b) Date of sentencing: DECEMBER 20, 2005

3.    Length of sentence: 80 YEARS TO LIFE

4.    In this case, were you convicted on more than one count or of more than one crime?    ☑ Yes    ☐ No

5.    Identify all crimes of which you were convicted and sentenced in this case: FIRST-DEGREE BURGLARY-PENAL CODE § 460 (a)-COUNT-1 ; SECOND-DEGREE ROBBERY- PENAL CODE § 212.5 (c)-COUNT-2 ; TWO COUNTS ASSAULT-DEADLY WEAPON-PENAL CODE § 245 (a)(1)-COUNT-3-4; EVADING POLICE OFFICER § 2800.2-COUNT-5 ;

6.    (a) What was your plea? (Check one)

☑ (1)    Not guilty        ☐ (3)    Nolo contendere (no contest)

☐ (2)    Guilty            ☐ (4)    Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

*ALL CHARGES*

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8. Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9. If you did appeal, answer the following:

(a) Name of court: *COURT OF APPEAL - CALIFORNIA - FIRST APPELLATE DISTRICT*

(b) Docket or case number (if you know): *SC-05 2641-A, SUPER.Ct. (Appeal-A-112556)*

(c) Result: *DENIED*

(d) Date of result (if you know): *JULY 9, 2007*

(e) Citation to the case (if you know): *A - 112556*

(f) Grounds raised: *(COUNT-II, STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS - FAILURE TO INSTRUCT-JURY-SUA SPONTE-GRAND THEFT); (COUNT-III, EVIDENCE PRESENTED-WAS INSUFFICIENT TO SUPPORT-JURY'S VERDICT-ASSAULTED WITH DEADLY WEAPON); (COUNT-20 YEARS TO LIFE SENTENCE CONSTITUTES CRUEL AND/OR UNUSUAL PUNISHMENT-VIOLATION OF FEDERAL AND STATE); (AGGRAVATED TERMS - VIOLATED "BLAKELY V. WASHINGTON, CUNNINGHAM V. CALIFORNIA"); (TRIAL COURT ERRED-IMPOSED ENHANCEMENTS- BOTH PENAL CODE § 667(a), 667.5 § (b));*

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court: *SUPREME COURT - STATE OF CALIFORNIA*

(2) Docket or case number (if you know): *S-154640 (SUPREME COURT)*

(3) Result: *DENIED*

(4) Date of result (if you know): *AUGUST 29, 2007*


AO 241
(Rev. 12/04)

(5) Citation to the case (if you know): A-112556

(6) Grounds raised: (REVIEW WAS DENIED - SIXTH AMENDMENT RIGHT'S-
JURY DETERMINATION - RECIDIVIST AND NON-RECIDIVIST OFFENSE
RELATED FACTS); (CONSTRUCTIVE TOUCHING OF VICTIM DURING THEFT);
(DENIED-FEDERAL AND STATE CONSTITUTIONAL RIGHTS-DUE PROCESS-
OF ASSAULT WITH DEADLY WEAPON);(SENTENCE OF-80 YEARS TO LIFE-
CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT VIOLATION);

(h) Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?     ☑ Yes     ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)     (1) Name of court: SUPERIOR COURT-SAN MATEO COUNTY

(2) Docket or case number (if you know): SC-058641·A

(3) Date of filing (if you know): MAY 11, 2005

(4) Nature of the proceeding: MOTION - DEFENDANT RIGHT REPRESENT SELF

(5) Grounds raised: (SIXTH AND FOURTEETH AMENDMENTS - CONSTITUTION
"FARETTA V. CALIFORNIA")(LAW LIBRARY)(FREE TELEPHONE)
(INVESTIGATOR)(LEGAL RUNNERS)(PAPER AND PEN'S)
[SEE EXHIBIT COVER PAGE, 1(A)].

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result: NONE

(8) Date of result (if you know): NO DATE

AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: SUPERIOR COURT - COUNTY OF SAN MATEO

(2) Docket or case number (if you know): SC- 058641-A

(3) Date of filing (if you know): JULY 22, 2005

(4) Nature of the proceeding: MOTION

(5) Grounds raised: (NOTICE OF MOTION TO HAVE A PROTECTIVE ORDER)
(All MOTION DENIED)(TRIAL JUDGE AND PROSECUTOR ARE
FRIEND AND COLLEAGUE OF SAME OFFICE)
[SEE EXHIBIT COVER PAGE - 3 (A) (B)].

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes    ☐ No

(7) Result: STRICKEN

(8) Date of result (if you know): AUGUST 11, 2005

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: SUPERIOR COURT - COUNTY OF SAN MATEO

(2) Docket or case number (if you know): SC- 058641 - A

(3) Date of filing (if you know): October 14, 17, 2005

(4) Nature of the proceeding: NOTICE OF MOTION

(5) Grounds raised: (DEFENDANT MOTION RIGHTS HAS BEEN VIOLATED)
(MOTION FOR APPOINTMENT, APPOINTMENT OF EXPERTS)(DISQUALIFY
JUDGE)(MIRANDA)(RIGHT TO CERTAIN SERVICES)(P.C.
1538.5)(EXCLUDE EVIDENCE)(JURY SELECTION EXPERT)

[SEE EXHIBIT COVER PAGE- 3 (B)].

AO 241
(Rev. 12/04)                                                                                 Page 6

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes   ☐ No

(7) Result:  *DENIED*

(8) Date of result (if you know): *October 14, 17, 2005*

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

(1) First petition:   ☑ Yes   ☐ No

(2) Second petition:  ☑ Yes   ☐ No

(3) Third petition:   ☑ Yes   ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution,
       laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts
       supporting each ground.

       CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court
       remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the
       grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *(STATE AND FEDERAL*
*CONSTITUTIONAL RIGHTS TO DUE PROCESS - FAILURE TO INSTRUCT - JURY - SUA*
*SPONTE - GRAND THEFT), (EVIDENCE PRESENTED - WAS INSUFFICIENT TO*
*SUPPORT - JURY'S VERDICT - ASSAULTED WITH DEADLY WEAPON), (30 - YEARS*
*TO LIFE SENTEN CONSTITUTES CRUEL AND/OR UNUSUAL PUNISHMENT -*
*VIOLATION OF FEDERAL AND STATE), (AGGRAVATED TERMS - VIOLATED*
*"BLAKELY V. WASHINGTON, CUNNINGHAM V. CALIFORNIA"), (TRIAL*
*COURT ERRED - IMPOSED ENHANCEMENT - BOTH PENAL CODE § 667(a),*
*667.5 § (b).) [SEE EXHIBIT COVER PAGE - 1 (A) (B) (C) (D)]*

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes     ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☐ Yes     ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *(COUNTS - III, IV MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY's VERDICT THAT APPELLANT ASSAULTED STEPHANIE NORTON AND HER SON BENJAMIN WITH A DEADLY WEAPON)*
*[SEE EXHIBIT COVER PAGE - 1 (A) (B) (C) (D)].*

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)   **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ■ Yes   ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes   ■ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                                    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?                               ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
        have used to exhaust your state remedies on Ground Two

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):  ( APPELLANT 80-
YEAR TO LIFE SENTENCE CONSTITUTES CRUEL AND/OR UNUSUAL
PUNISHMENT IN VIOLATION OF THE FEDERAL AND STATE CONSTITUT-
IONS ) "SEE EXHIBIT COVER PAGE - 1 ", " THE IMPOSITION OF THE
AGGRAVATED TERMS OF IMPRISONMENT VIOLATED [BLAKELY V. WASH-
INGTON][CUNNINGHAM V. CALIFORNIA] AND APPELLANT FEDERAL
CONSTITUTIONAL RIGHTS TO A JURY TRIAL UNDER THE SIXTH AMEND-
MENT TO THE UNITED STATES CONSTITUTION AND DUE PROCESS UNDER
THE FOURTEENTH AMENDMENT")SEE EXHIBIT COVER PAGE - 1 (A)(B)(c)(D).)

AO 241
(Rev. 12/04)

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 241
(Rev. 12/04)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *( CONTROVERY IS A VIOLATION OF `PROPRIA PERSONA [UNITED STATES CONSTITUTION, SIXTH AMENDMENT] RIGHT OF SELF-REPRESENTATION OF ADEQUATE TO PREPARE A DEFENSE. SEE EXHIBIT COVER PAGE-3(B). ) INEFFECTIVE ASSISTANCE OF COUNSEL ON FIRST APPEAL AS OF RIGHT, WAS IN VIOLATION. SEE EXHIBIT COVER PAGE-2(0).) TRIAL JUDGE AND THE DEPUTY DISTRICT ATTORNEY WAS FRIENDS AND COLLEAGUE. SEE EXHIBIT COVER PAGE-(3(A).)*

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ▬▬▬    ☑  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑  Yes    ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *PETITION FOR WRIT OF SUPERSEDEAS*

Name and location of the court where the motion or petition was filed: *COURT OF APPEAL AND SUPREME COURT OF CALIFORNIA:*

Docket or case number (if you know): *COURT OF APPEAL No. A-110179/san Mateo. Super. No. SF-539103; SUPREME COURT OF CAL. No. S-134231*

Date of the court's decision: *MAY 19, 2005/JUNE 8, 2005*

Result (attach a copy of the court's opinion or order, if available): *DENIED*

(3) Did you receive a hearing on your motion or petition?                                    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?                           ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):



(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:



(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241
(Rev. 12/04)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?    ☒  Yes    ☐  No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so,

ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?    ☒  Yes    ☐  No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

of any court opinion or order, if available. *(UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA [C-07-1222-SI(pr)], PETITION FOR A WRIT OF HABEAS CORPUS, DUE PROCESS RIGHTS, INEFFECTIVE ASSISTANCE OF REASONABLY COMPETENT APPEAL COUNSEL, [JUNE 22,2007], DISMISSED WITHOUT PREJUDICE).)*

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?    ☒  Yes    ☐  No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

raised. *UNITED STATES DISTRICT COURT NORTHERN CALIFORNIA [C-07-5012 (SI) (pr)], PETITIONER FOR DECLARATORY JUDGEMENT UNDER FEDERAL DECLARTORY JUDGEMENT ACT "Title, 28 U.S.C.A § 2201,2202", CONTROVERY IS A VIOlATION OF "PROPRIA PERSONA [U.S. CONSTITUTION, SIXTH AMENDMENT] right of SELF-REPRESENTATION OF ADEQUATE TO PREPARE A DEFENSE. SEE EXHIBIT COVER PAGE-2*

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   *PROPRIA PERSONA*

(b) At arraignment and plea:   *PROPRIA PERSONA*

(c) At trial:   *PROPRIA PERSONA*

(d) At sentencing:   *PROPRIA PERSONA*

(e) On appeal:   *ROSS THOMAS*

(f) In any post-conviction proceeding:   *PROPRIA PERSONA*

(g) On appeal from any ruling against you in a post-conviction proceeding:   *PROPRIA PERSONA*

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        ☐  Yes        ☒  No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?        ☐  Yes        ☒  No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 12/04)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.  § 2244(d) provides in

part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such state action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *(1.) This Court immediate issuance of orders, (2) Declaring the rights of the Parties; (3) Require the Respondent to show cause why its policy of the state of California "not" to apply the Federal Rules.*

or any other relief to which petitioner may be entitled.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on   *Feb. 13, 2008*   (month, date, year).

Executed (signed) on   *Feb. 13, 2008*   (date).

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

## IN FORMA PAUPERIS DECLARATION

[insert appropriate court]

* * * * *

## CERTIFICATE OF SERVICE

Case Name: _HOMER E. HAWKINS(1)_ v. _DEBORAH DEXTER - WARDEN_

Case No.: _____

IMPORTANT: You must send a copy of ALL documents filed with the court and any attachments to counsel for ALL parties in this case. You must also file a certificate of service with this court telling us that you have done so. You may use this certificate of service as a master copy, and fill in the title of the document you are filing. Please list below the names and addresses of the parties who were sent a copy of your document and the dates on which they were served. Be sure to sign the statement below. You must attach a copy of the certificate of service to each of the copies and the copy you file with the court.

I certify that a copy of the _28 U.S.C. § 2254 - WRIT OF HABEAS CORPUS_
(Name of document you are filing (i.e., opening brief, motion, etc.)
and any attachments was served, either in person or by mail, on the persons listed below.

**Signature**
Notary NOT required

| Name | Address | Date Served |
|------|---------|-------------|
| MS. SUSAN ZLLSTON<br>U.S. DISTRICT JUDGE | OFFICE OF THE CLERK<br>NORTHERN DISTRICT OF CALIFORNIA<br>450 GOLDEN GATE, AVE.<br>SAN FRANCISCO, CALIFORNIA<br>ZIP - 94102 | Feb. 13, 2008 |

## Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

#### Instructions

1.  To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2.  You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3.  Make sure the form is typed or neatly written.

4.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6.  You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of

    money that the institution is holding for you. If your account exceeds $_____, you must pay the filing fee.

7.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8.  When you have completed the form, send the original and two copies to the Clerk of the United States District Court at this address:

    > Clerk, United States District Court for
    > Address
    > City, State Zip Code

9.  **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

CV 08    1087

EXHIBIT COVER PAGE

[ 1 ]

EXHIBT

Description of this Exhibit: *DIRECT APPEALS (A)(B)(C)(D)*

Case No. *SC-058641*
People v. *HOMER E. HAWKINS (3)*

Number of pages to this Exhibit  *13*  pages.

SI
(PR)

JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

2007 Cal. LEXIS 9411, *

1 of 2 DOCUMENTS

**THE PEOPLE, Plaintiff and Respondent, v. HOMER EARL HAWKINS, Defendant and Appellant.**

**S154640**

**SUPREME COURT OF CALIFORNIA**

**2007 Cal. LEXIS 9411**

**August 29, 2007, Filed**

**PRIOR HISTORY:** [*1]
First Appellate District, Division 5, No. A112556.

Petition for review denied.

**OPINION**

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 5


**COPY**

# FILED
Court of Appeal-First App. Dist.

JUL - 9 2007

**DIANA HERBERT**

BY_____

DEPUTY

THE PEOPLE,
Plaintiff and Respondent,
v.
HOMER EARL HAWKINS,
Defendant and Appellant.

A112556
San Mateo County No. SC058641

BY THE COURT:

    The petition for rehearing is denied.

Date: **JUL - 9 2007**        **JONES, P.J.**  P.J.

1

2

3

4

FILED

JUN 2 2 2007

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8   HOMER EARL HAWKINS,                        No. C 07-1222 SI (pr)

9            Petitioner,                        **JUDGMENT**

10        v.

11  JOHN GRADSAERT; et al.,

12           Respondents.
    _____/

13

14        This action is dismissed without prejudice to petitioner filing a new action after he

15  exhausts his state court remedies.

16

17        IT IS SO ORDERED AND ADJUDGED

18

19  DATED: June 21, 2007

                                        _____
20                                          SUSAN ILLSTON
                                          United States District Judge

21

22

23

24

25

26

27

28

1

2

3

4

FILED

JUN 2 2 2007

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

7

8  HOMER EARL HAWKINS,                              No. C 07-1222 SI (pr)

9             Petitioner,                          **ORDER OF DISMISSAL**

10       v.

11  JOHN GRADSAERT; et al.,

12             Respondents.

13  _____/

14      Homer Earl Hawkins, currently incarcerated at the Ironwood State Prison, has filed this

15  pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition

16  challenges his 2005 conviction in the San Mateo County Superior Court. His appeal from the

17  judgment of conviction was pending in the California Court of Appeal when he filed this action.

18  Petition, pp. 3, 5.

19      Prisoners in state custody who want to challenge either the fact or length of their

20  confinement in federal court by a petition for a writ of habeas corpus are first required to exhaust

21  state judicial remedies, either on direct appeal or through collateral proceedings, by presenting

22  the highest state court available with a fair opportunity to rule on the merits of each and every

23  issue they seek to raise in federal court. See 28 U.S.C. § 2254(b)(1)(A),(c); Duckworth v.

24  Serrano, 454 U.S. 1, 3 (1981). If available state remedies have not been exhausted as to all

25  claims, the district court must dismiss the petition. See id. at 4-5. The exhaustion requirement

26  is not satisfied if there is a pending post-conviction proceeding in state court. See Sherwood v.

27  Tomkins, 716 F.2d 632, 634 (9th Cir. 1983). If an appeal or collateral challenge of a state

28  criminal conviction is pending, a would-be federal habeas petitioner must await the outcome of

United States District Court
For the Northern District of California

1    the state court action before his state remedies are considered exhausted, even where the issue
2    to be raised in the petition for writ of habeas corpus has been finally settled in the state courts.
3    See id. Even if the federal constitutional question raised by the petitioner cannot be resolved in
4    a pending state action, that action may result in the reversal of the petitioner's conviction on
5    some other ground, thereby mooting the federal question. See id. (citations omitted); cf. Phillips
6    v. Vasquez, 56 F.3d 1030, 1036 (9th Cir. 1995) (allowing death penalty defendant's habeas
7    challenge to guilt determination even though state court challenge to his sentence of death was
8    still pending; extraordinary delay in adjudicating the latter excused exhaustion requirement and,
9    unlike Sherwood, there was no danger that the pending state appeal would moot the federal
`10   court's decision).

11         Hawkins' criminal appeal was pending when he filed this action. He must await the
12   outcome of that state court challenge to his conviction before presenting his claims in federal
13   court. Until that proceeding is concluded, a habeas petition in this court is premature and must
14   be dismissed. Because Hawkins has not exhausted his state court remedies, his petition is
15   DISMISSED.

16         After Hawkins exhausts his state court remedies, he may file a new petition for writ of
17   habeas corpus. He is cautioned not to file an amended petition in this action and not to use the
18   case number for this action because this action is being closed today. When he files a new
19   petition, he should put no case number on the first page, and should submit it with the $5.00
20   filing fee or a completed in forma pauperis application. At that time, the court will give the new
21   petition a new case number. Any new petition should also have a proper respondent; the proper
22   respondent is the warden for the prison in which the petitioner is located at the time he files his
23   petition.

24         The in forma pauperis applications are GRANTED. (Docket # 2and # 4.)

25         IT IS SO ORDERED.

26   DATED: June 21, 2007

                                      SUSAN ILLSTON
27                                    United States District Judge

28

2

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

HOMER E. HAWKINS,

Plaintiff,

v.

JLHN L. GRANDSAERT et al,

Defendant.

_____/

Case Number: CV07-01222 SI

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 22, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Homer Earl Hawkins C-55875
Ironwood State Prison
PO Box 2199
Blythe, CA 92226

Dated: June 22, 2007

Richard W. Wieking, Clerk
By: Tracy Sutton, Deputy Clerk

# EXHIBIT A

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | No. A112556 |
| | ) | (San Mateo Co. Super. Ct. |
| v. | ) | No. SC058641) |
| | ) | |
| HOMER EARL HAWKINS, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| | ) | |

## APPELLANT'S OPENING BRIEF

Appeal from the Judgment of the Superior Court
of the State of California in and for the
County of San Mateo

HONORABLE JOHN GRANDSAERT, JUDGE

ROSS THOMAS
Attorney at Law, SBN 96184
4104 24th Street, No. 411
San Francisco, California 94114
Telephone: (415) 627-4052

Attorney for Appellant Hawkins

By Appointment of the Court of Appeal
Under the First District Appellate
Project's Independent Case System

# TOPICAL INDEX

**Page**

STATEMENT OF CASE ..................................... 1

STATEMENT OF APPEALABILITY ........................... 4

STATEMENT OF FACTS ................................... 5

ARGUMENTS ............................................ 9

I    COUNT II MUST BE REVERSED BECAUSE
APPELLANT WAS DENIED HIS STATE AND
FEDERAL CONSTITUTIONAL RIGHTS TO
DUE PROCESS OF LAW AS A RESULT OF
THE TRIAL COURT'S FAILURE TO INSTRUCT
THE JURY *SUA SPONTE* ON GRAND THEFT
OF A PERSON ................................... 9

    A.    Introduction ................................ 9

    B.    The Jury Should Have Been Instructed
On Grand Theft From A Person ................. 9

    C.    The Robbery Conviction Must Be Reversed ...... 13

II    COUNTS III AND IV MUST BE REVERSED
BECAUSE THE EVIDENCE PRESENTED AT
TRIAL WAS INSUFFICIENT TO SUPPORT
THE JURY'S VERDICT THAT APPELLANT
ASSAULTED STEPHANIE NORTON AND
HER SON BENJAMIN WITH A DEADLY
WEAPON ..................................... 15

III    APPELLANT'S 80-YEAR TO LIFE SENTENCE
CONSTITUTES CRUEL AND/OR UNUSUAL
PUNISHMENT IN VIOLATION OF THE
FEDERAL AND STATE CONSTITUTIONS .......... 18

i

## TOPICAL INDEX

IV      THE IMPOSITION OF THE AGGRAVATED
        TERMS OF IMPRISONMENT VIOLATED
        *BLAKELY V. WASHINGTON* AND APPELLANT'S
        FEDERAL CONSTITUTIONAL RIGHTS TO
        A JURY TRIAL UNDER THE SIXTH
        AMENDMENT TO THE UNITED STATES
        CONSTITUTION AND DUE PROCESS
        UNDER THE FOURTEENTH AMENDMENT . . . . . . . . . 20

        A.      Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.      The Issue Is Cognizable On Appeal  . . . . . . . . . . . . 22

        C.      Appellant's Sentence Must Be Reversed  . . . . . . . . 22

V       THE TRIAL COURT ERRED WHEN IT IMPOSED
        ENHANCEMENTS UNDER BOTH PENAL CODE
        SECTION 667, SUBDIVISION (a) AND PENAL
        CODE SECTION 667.5, SUBDIVISION (b) FOR
        THE SAME PRIOR CONVICTION . . . . . . . . . . . . . . . . . 25

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE WITH CALIFORNIA
RULES OF COURT, RULE 14, SUBDIVISION (c)(1) . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apprendi v. New Jersey* (2000) 530 U.S. 466 ................................. 21, 23

*Blakely v. Washington* (2004) 524 U.S. 296 ................................. 21, 23

*Cunningham v. California* __ U.S. __, 126 S. Ct. 1329 ...................... 21

*Ewing v. California* (2003) 538 U.S. 11 ............................................. 19

*Jackson v. Virginia* (1979) 443 U.S. 307 ............................................. 15

*Lockyer v. Andrade* (2003) 538 U.S. 63 ............................................. 19

*Rose v. Clark* (1986) 478 U.S. 570 ....................................................... 22

*Sullivan v. Louisiana* (1993) 508 U.S. 275 ........................................... 22

*United States v. Booker* (2005) 543 U.S. 220 ....................................... 21

## STATE CASES

*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 ........ 21

*In re Sassounian* (1995) 9 Cal.4th 535 ................................................. 15

*In re Tahl* (1969) 1 Cal.3d 122 ............................................................. 22

*Neal v. California* (1960) 55 Cal.2d 11 ................................................. 25

*People v. Austin* (1994) 23 Cal.App.4th 1596 ...................................... 16

*People v. Barton* (1995) 12 Cal.4th 186 ............................................... 10

*People v. Black* (2005) 35 Cal.4th 1238 ............................................... 21

*People v. Boyer* (2006) 38 Cal.4th 412 ................................................. 15

*People v. Bradford* (1997) 14 Cal.4th 1005 .......................................... 11

# TABLE OF AUTHORITIES

## STATE CASES

*People v. Breverman* (1998) 19 Cal.4th 142 .................................. 9, 10, 11, 13

*People v. Carmony* (2005) 127 Cal.App.4th 1066 ......................... 19

*People v. Chatman* (2006) 38 Cal.4th 344 ...................................... 15

*People v. Colantuono* (1994) 7 Cal.4th 206 ................................... 17

*People v. Covington* (1934) 1 Cal.2d 316 ...................................... 11

*People v. Deloza* (1998) 18 Cal.4th 585 ......................................... 18

*People v. Flannel* (1979) 25 Cal.3d 668 .................................. 10, 11

*People v. Glenn* (1991) 229 Cal.App.3d 1461 ............................... 11

*People v. Graham* (1969) 71 Cal.2d 303 ....................................... 10

*People v. Hicks* (1993) 6 Cal.4th 784 ...................................... 18, 19

*People v. Johnson* (1980) 26 Cal.3d 557 ....................................... 15

*People v. Jones* (1993) 5 Cal.3d 1142 ........................................... 25

*People v. Killibrew* (2002) 103 Cal.App.4th 644 ..................... 15, 16

*People v. Kraft* (2000) 23 Cal.4th 978 ........................................... 16

*People v. Lasko* (2000) 23 Cal.4th 101 .......................................... 13

*People v. Lopez* (2004) 119 Cal.App.4th 355 ................................ 26

*People v. Memro* (1985) 38 Cal.3d 658 ......................................... 16

*People v. Morales* (1975) 49 Cal.App.3d 134 ............................... 12

*People v. Morris* (1988) 46 Cal.3d 1 ....................................... 15, 16

*People v. Mosher* (1969) 1 Cal.3d 379 ............................................ 9

*People v. Nelson* (1880) 56 Cal. 77 ............................................... 11

*People v. Ortega* (1998) 19 Cal.4th 686 ....................................... 11

# TABLE OF AUTHORITIES

## STATE CASES

*People v. Overman* (2005) 126 Cal.App.4th 1344 .......................................... 13

*People v. Page* (2004) 123 Cal.App.4th 1466 ................................................ 17

*People v. Palmer* (2001) 24 Cal.4th 856 ......................................................... 16

*People v. Perez* (1979) 23 Cal.3d 545 ............................................................ 25

*People v. Raley* (1992) 2 Cal.4th 870 ............................................................ 16

*People v. Rocha* (1971) 3 Cal.3d 893 ............................................................. 17

*People v. Scott* (1994) 9 Cal.4th 331 ............................................................. 25

*People v. Slaughter* (2002) 27 Cal.4th 1187 .................................................. 15

*People v. Thompson* (1980) 27 Cal.3d 303 ..................................................... 16

*People v. Walker* (2006) 139 Cal.App.4th 782 ............................................... 26

*People v. Wickersham* (1982) 32 Cal.3d 307 .................................................. 10

*People v. Wright* (2002) 100 Cal.App.4th 703 ................................................ 17

## CONSTITUTIONS

Cal. Const., art. I, § 7 .................................................................................. 9, 15

Cal. Const., art. I, § 15 ...................................................................................... 9

Cal. Const., art. I, § 17 .................................................................................... 19

U.S. Const., Amend. V .......................................................................... 9, 15, 21

U.S. Const., Amend. VI ......................................................................... 9, 15, 21

U.S. Const., Amend. VIII ................................................................................ 19

U.S. Const., Amend. XIV ...................................................................... 9, 15, 21

## STATUTES

Pen. Code § 212.5 .............................................................................................. 1

## TABLE OF AUTHORITIES

## STATUTES

Pen. Code § 245(a)(1) ........................................................................... 1

Pen. Code § 459 ................................................................................ 25

Pen. Code § 460 ............................................................................ 1, 25

Pen. Code § 487, subd. (c) .................................................................. 9

Pen. Code § 654 ................................................................................. 3

Pen. Code § 667, subd (a) ........................................................... passim

Pen. Code § 667.5, subd. (b) ....................................................... passim

Pen. Code § 1170(b) ......................................................................... 23

Pen. Code § 1170.12, subd. (c)(2) ...................................................... 2

Pen. Code § 1170.12, subd. (c)(2)(A)(iii) ........................................... 3

Pen. Code § 1202.4 ............................................................................ 3

Pen. Code § 1202.45 .......................................................................... 4

Pen. Code § 1237 ............................................................................... 4

Pen. Code § 1465.8 ............................................................................ 4

Veh. Code § 2600.2 ............................................................................ 1

## RULES OF COURT

Cal. Rules of Ct., rule 14, subd. (c)(1) ............................................. 28

Cal. Rules of Ct. rule 4.447 .............................................................. 26

## OTHER TEXTS AND AUTHORITIES

Mosk, Nothing Succeeds Like Excess (1993) 26 Loyola L.A.L.Rev. 981  ... 18

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

PEOPLE OF THE STATE OF CALIFORNIA, )
                                                          )

           Plaintiff and Respondent, )    No. A112556

                                                           )

     v.                                                            )

                                                            )

HOMER EARL HAWKINS, )

                                                            )

           Defendant and Appellant. )
_____ )

## APPELLANT'S OPENING BRIEF
- - - - -

### STATEMENT OF CASE

On May 18, 2005, an information was filed in San Mateo County Superior Court, charging appellant, Homer Earl Hawkins, with one count of first-degree burglary, a violation of Penal Code section 460, subdivision (a) (Count I); one count of second-degree robbery, a violation of Penal Code section 212.5, subdivision (c) (Count II); two counts of assault with a deadly weapon, a violation of Penal Code section 245, subdivision (a)(1) (Counts III, IV); and one count of evading a police officer, a violation of Vehicle Code

1

section 2800.2 (Count V).  (1CT 13-15.)[1]   It was alleged in the information that appellant had previously suffered four serious felony convictions within the meaning of Penal Code section 1170.12, subdivision (c)(2) and three serious felony convictions within the meaning of Penal Code section 667, subdivision (a).  (1CT 17-19, 23-25.)   It was additionally alleged that appellant had suffered nine felony convictions within the meaning of Penal Code section 667.5, subdivision (a).  (1CT 19-23.)   Appellant pleaded not guilty to the charges and denied the allegations on May 20, 2005.  (1CT 89.)

Prior to the filing of the information, the court granted appellant's request to proceed *in propia persona*.  (1CT 8, 172.)   Appellant represented himself throughout trial and the post-verdict proceedings.  (1RT 8; 3RT 562, 591.)

Appellant's jury trial commenced on October 14, 2005.  (2CT 424.)  On October 17, 2005, the court granted appellant's motion to bifurcate trial on the prior conviction allegations.  (2RT 131.)  The jury returned their verdicts on October 19, 2005, finding appellant guilty on all counts.  (2CT 502-503.)  Before entry of the verdicts, appellant waived his right to a jury trial on the prior conviction allegations.  (3RT 560.)

---

[1]

"CT" refers to the clerk's transcript and "RT" refers to the reporter's transcript. Unless otherwise indicated, any number preceding these notations refers to the volume cited.

2

The court trial on the prior conviction allegations was conducted on October 21 and November 18, 2005. (2CT 523, 589.) At the conclusion of the proceeding, the court found all of the allegations to be true. (2CT 589.)

On December 20, 2005, appellant was sentenced to state prison for an aggregate term of 80 years to life in state prison. (2CT 694-699.) The court imposed the upper term for each of the five counts. (2CT 694-695.) It then enchanced the terms pursuant to Penal Code section 1170.12, subdivision (c)(2)(A)(iii) using the three prior serious felony convictions (Pen. Code § 667, subdivision (a)) and nine prior felony convictions (Pen. Code § 667.5, subd. (b)) previously suffered by appellant. (2CT 696.) The aggregate term of 27 years imposed on Count V was ordered to run consecutive to the aggregate term of 29 years imposed on Count II. (*Ibid.*) Count IV was ordered to run concurrent to Count II. (*Ibid.*) Counts I and III were stayed pursuant to Penal Code section 654. (*Ibid.*) Additionally, the court imposed three five-year enhancements pursuant to Penal Code section 667, subdivision (a) and nine one-year enhancements in accordance with Penal Code section 667.5, subdivision (b). This resulted in an aggregate term of 24 years that was ordered to run consecutive to Count II. (*Ibid.*) Appellant was also ordered to pay a $200 restitution fine pursuant to Penal Code section 1202.4 and a $20

3

court security fee pursuant to pursuant to Penal Code section 1465.8. (*Ibid.*)[2]

The term of imprisonment was credited with the 281 days (245 actual days plus 36 days good time/work time) appellant was in custody prior to sentencing. (*Ibid.*)

Appellant filed a timely notice of appeal on January 4, 2006. (2CT 712.)

## STATEMENT OF APPEALABILITY

This appeal is from a judgment of conviction following a jury trial which disposed of all issues between the parties and is authorized by Penal Code section 1237.

/ /

/ /

---

[2]

The court imposed a matching $200 fine pursuant to Penal Code section 1202.45 and stayed it pending the successful completion of parole. (2CT 696.)

4

## STATEMENT OF FACTS

Stephanie Norton and her toddler son, Benjamin, arrived at the family home on Old Spanish Trail in Portola Valley shortly before noon on April 20, 2005. (2RT 314-315.) There, she saw a blue older model Mercedes Benz parked in the driveway. (2RT 324.) Concerned because she was unfamiliar with the vehicle, Norton memorized its license plate number. (2RT 324, 326.)

With Benjamin in her arms, Norton walked around her house looking for the driver of the Mercedes. (2RT 325-327.) Seeing no one she returned to the front of the house. (2RT 327.) About this time, a man, who Norton later identified as appellant, came walking around the corner of the house, carrying a filled pillowcase. (2RT 328, 331.) Upon seeing Norton, he said "Whoa, whoa, whoa." (2RT 328.) When asked what he was doing there appellant told Norton that he was from the insurance company and he had been sent by Norton's husband. (2RT 329.) Troubled by this answer, Norton backed away from appellant. (*Ibid.*) He, in turn, headed for the Mercedes. (*Ibid.*)

Still carrying her son, Norton headed toward the car as well with the intent of intercepting appellant and retrieving the pillow case which she now believed contained her property. (2RT 330, 332.) Appellant climbed into the driver's seat of the Mercedes and Norton stood next to the open driver's side

5

door. (2RT 330, 332-333.) Appellant started the car after Norton demanded that he return the pillowcase. (2RT 332.) He told her to get out of the way of the car's door and started moving the vehicle slowly in reverse. (2RT 332.) Norton refused and continued to stand next to the door, touching it with her hand. (2RT 333.) After appellant again warned her to step back, he quickly drove the Mercedes down the driveway. (*Ibid.*) As he did, Norton "sidestepped" and then "backed up" from the vehicle. (2RT 334.)

Norton immediately contacted the police and provided both vehicle's description and license plate number. (2RT 335.)

San Mateo Sheriff's Deputy Robert Lawrence was in the area on his marked motorcyle. (2RT 195, 198.) Moments after hearing the burglary report, he spotted the blue Mercedes near Alpine Road and Interstate 280. (2RT 198-199.) The vehicle accelerated after Lawrence's motorcycle fell in behind it. (2RT 199.) After it became apparent that the driver of the Mercedes was attempting to escape, Lawrence activated the motorcycle's lights and siren and gave chase. (2RT 199-200.) During the pursuit that followed, the Mercedes travelled at speed of 85 to 90 miles per hour. (2RT 201.) At some point, Lawrence lost sight of the vehicle. (2RT 203.)

Another sheriff's deputy, Andrew Armando, joined Lawrence in the pursuit of Mercedes. (2RT 210.) He maintained visual contact with the

6

vehicle after Lawrence abandoned the chase. (2RT 221-222.) Armando later lost sight of the Mercedes as well after it apparently made its way onto Highway 101. (2RT 222-223.)

The Mercedes belonged to appellant and was registered to an address in East Palo Alto. (2RT 246.) East Palo Police Detective Jeff Liu arrived there shortly after Norton's report. (2RT 246, 249.) There in a carport he found the Mercedes. (2RT 248.) He saw appellant taking something out of the vehicle at the time. (*Ibid.*) With his gun drawn, Lui ordered appellant to stop. (2RT 249.)[3] Appellant took off running after making eye contact with the detective. (2RT 250.) Lui followed him and at one point attempted to subdued him with his baton. (2RT 252-253.) Appellant was arrested after Lui confronted him a third time. (2RT 259.)

Norton entered her home in the company of a sheriff's deputy and discovered that it had been burglarized. (2RT 322, 336, 348-350.) Thereafter, she was transported to East Palo Alto where she viewed appellant in an in-field show up. (2RT 275-276, 309-310, 337-338.) She positively identified him as the man who had fled in the Mercedes. (2RT 277, 338.) Norton also identified the Mercedes and the property in appellant's possession that had

---

[3]

Through a radio broadcast, Liu had learned that appellant was a parolee at large. (2RT 250.)

been taken from her home. (2RT 338-341.)

The defense offered three witnesses on appellant's behalf. Most notably, Tracy Hawkins, appellant's sister, testified that she had never known appellant to commit acts of violence against another. (3RT 469.) She also revealed to the jury that appellant was in no need of money at the time of his arrest. (3RT 468, 471.)

/ /

/ /

8

## ARGUMENTS

## I

## COUNT II MUST BE REVERSED BECAUSE APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AS A RESULT OF THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY *SUA SPONTE* ON GRAND THEFT OF A PERSON

### A.    Introduction

Substantial evidence was adduced at trial that supported the delivery of instructions on grand theft from a person (Pen. Code § 487, subdivision (d)). Thus, as explained below, the trial court had a *sua sponte* duty to instruct on this lesser included offense of the robbery charged in Count II. Unfortunately, the court failed to meet this duty and deliver the requisite instruction. As a result appellant was denied his federal and state constitutional rights to due process of law. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, §§ 7, 15.) The judgment of conviction must now be reversed.

### B.    The Jury Should Have Been Instructed On Grand Theft From A Person

It is well established that a trial court has a duty to instruct *sua sponte*, on every lesser included offense which has substantial evidentiary support, "'even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154; see also *People v. Mosher* (1969) 1 Cal. 3d 379,

9

393; *People v. Graham* (1969) 71 Cal. 2d 303, 319.) This duty is grounded on the principle that the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. Moveover, as the California Supreme Court observed in *Breverman*:

> [I]nsofar as the duty to instruct applies regardless of the parties' requests or objections, it prevents the "strategy, ignorance, or mistakes" of either party from presenting the jury with an "unwarranted all-or-nothing choice," encourages "a verdict . . . no harsher or more lenient than the evidence merits" (*People v. Wickersham* (1982) 32 Cal.3d 307, 324), and thus protects the jury's "truth-ascertainment function" (*People v. Barton* (1995) 12 Cal. 4th 186, 196). "These policies reflect concern [not only] for the rights of persons accused of crimes [but also] for the overall administration of justice." (*People v. Wickersham, supra,* 32 Cal. 3d at p. 324.)

(*People v. Breverman, supra,* 19 Cal.4th at p. 199.)

"'Substantial evidence' in this context is evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed. (*People v. Barton, supra,* 12 Cal. 4th 186, 201, fn. 8; *People v. Flannel* (1979) 25 Cal.3d 668, 684.) In deciding whether there is

10

such evidence of a lesser offense, "courts should not evaluate the credibility

of witnesses" (*People v. Breverman, supra,* 19 Cal.4th at p. 163; *People v.*

*Flannel, supra,* 25 Cal.3d at p. 684; *People v. Glenn* (1991) 229 Cal.App.3d

1461.)    Moreover, as noted above, the *sua sponte* duty to instruct on lesser

included offenses arises even against the defendant's wishes, and regardless of

the trial theories or tactics the defendant has actually pursued. Consequently,

substantial evidence to support instructions on a lesser included offense may

exist even in the face of inconsistencies presented by the defense itself.

(*People v. Breverman, supra,* 19 Cal.4th at pp. 162-163.)

Turning to the case *sub judice,* the relevant facts reveal that there was

sufficient evidence to require the delivery of instruction on the lesser included

offense of grand theft from a person.[4] Norton intercepted appellant at his car,

demanded that he return her property and attempted to stop him from driving

away. (2CT 330, 332.) Moreover, she attempted to stop appellant and regain

her property while at the same time holding her three-year old son in her arms.

(2CT 330.) Additionally, Norton testified that appellant did not behave

aggressively toward her or young Benjamin when she sought the return of her

---

[4]

    Theft from a person has long been recognized as a lesser included offense of
robbery. (E.g., *People v. Ortega* (1998) 19 Cal.4th 686, *People v. Bradford* (1997)
14 Cal. 4th 1005, 1055; *People v. Covington* (1934) 1 Cal. 2d 316; *People v. Nelson*
(1880) 56 Cal. 77

11

things. (2RT 367.) These facts, particularly Norton's confrontation of appellant while holding her small child, could have permitted the jury to conclude that appellant was guilty of no greater crime than grand theft of a person if it had been properly instructed.

This same issue was addressed in *People v. Morales* (1975) 49 Cal.App.3d 134. There the defendant grabbed an elderly woman's purse. The victim fell to the ground and died several days later as a result of her injuries. An eye witness testified that the defendant pushed the victim when grabbing her purse. The defendant was subsequently convicted of both first-degree murder and robbery. On review he argued that the trial court erred in not instructing the jury on grand theft person. The Court of Appeal agreed, ruling that "the evidence . . . left sufficiently open the question of whether the element of force was present so as to entitle the defendant to have the jury consider the matter." (*Id.* at p. 140.)

Like the defendant in *Morales,* appellant had only momentary contact with the victim. Moreover, both appellant and Morton behaved in a way that could support a finding that theft was committed without the requisite force or fear. Consequently, the jury should have been instructed on grand theft person.

12

## C.    The Robbery Conviction Must Be Reversed

The California Supreme Court in *People v. Lasko* (2000) 23 Cal.4th 101 articulated the applicable standard of prejudice. It stated in part:

> [W]hen a trial court violates state law by failing to properly
>
> instruct the jury on a lesser included offense, this test applies:
>
> "[I]n a noncapital case, error in failing sua sponte to instruct, or
>
> to instruct fully, on all lesser included offenses and theories
>
> thereof which are supported by the evidence must be reviewed
>
> for prejudice exclusively under [*People v.*] *Watson* [(1956) 46
>
> Cal.2d 818, 836]. A conviction of the charged offense may be
>
> reversed in consequence of this form of error only if, 'after an
>
> examination of the entire cause, including the evidence' (Cal.
>
> Const., art. VI, § 13), it appears 'reasonably probable' the
>
> defendant would have obtained a more favorable outcome had
>
> the error not occurred. [Citation.]"

(*People v. Lasko, supra,* 23 Cal.4th at p 111; see also *People v. Breverman, supra,* 19 Cal.4th at p. 178;.*People v. Overman* (2005) 126 Cal. App. 4th 1344, 1363.)

Given the behavior of both appellant and Norton, the jury could have easily found that he was guilty of no greater crime than grand theft from a

13

person. Unfortunately, due to the instructional omission , the jury was faced

with an "all or nothing"choice. In the absence of a third alternative that would

have been provided by instruction on the lesser included offense, the jury had

no choice but to find appellant guilty of the charged robbery. Consequently,

the jury's guilt verdicts do not preclude a finding that the court's error was

prejudicial. In light of the evidence presented, it is reasonably probable

appellant would have been convicted of grand theft from a person had the jury

been properly instructed.

For these reasons, Count II must be reversed.

//

//

14

**II**

## COUNTS III AND IV MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT THAT APPELLANT ASSAULTED STEPHANIE NORTON AND HER SON BENJAMIN WITH A DEADLY WEAPON

A conviction unsupported by substantial evidence denies a defendant due process of law. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318; *People v. Boyer* (2006) 38 Cal.4th 412, 479; U.S. Const., Amends. V, XIV; Cal. Const., art. I, §§ 7, 15.)

When addressing a challenge to the sufficiency of evidence, this Court must decide whether, viewing the evidence and inferences therefrom in a light favorable to the prosecution, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Chatman* (2006) 38 Cal.4th 344, 389; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) "Substantial evidence" is evidence of "ponderable legal significance reasonable in nature, credible, and of solid value." To be "substantial," the evidence must reasonably inspire confidence. (*People v. Morris* (1988) 46 Cal.3d 1, 19, overruled on other grounds, *In re Sassounian* (1995) 9 Cal.4th 535, 544, fn. 5; *People v. Johnson, supra*, 26 Cal.3d 557, 578.) The court's focus is "on the whole record, not isolated bits of evidence." (*People v. Killibrew* (2002) 103 Cal.App.4th 644, 660; see also *People v. Slaughter* (2002) 27 Cal.4th

15

1187, 1203.) The court presumes the existence of every fact the trier of fact could reasonably deduce from the evidence that supports the verdict. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053; *People v. Killibrew*, *supra*, 103 Cal.App.4th at p. 660.)

Additionally, reasonable inferences from the evidence must be based on substantial evidence, not on suspicion, speculation, supposition, surmise, or conjecture. (*People v. Raley* (1992) 2 Cal.4th 870, 891; *People v. Morris*, *supra*, 46 Cal.3d at p. 21; *People v. Austin* (1994) 23 Cal.App.4th 1596, 1604, overruled on another ground, *People v. Palmer* (2001) 24 Cal.4th 856, 861.) A finding based on conjecture or surmise cannot be affirmed. (*People v. Memro* (1985) 38 Cal.3d 658, 694.) This is because suspicion is not evidence; it only raises a possibility, which will not support an inference of fact. To justify a conviction, the trier of fact must be persuaded to a near certainty. Even a strong suspicion is insufficient to support the finding. (*People v. Thompson* (1980) 27 Cal.3d 303, 324.)

Turning to the case *sub judice*, the facts make it plain that appellant's assault with a deadly weapon convictions were based on suspicion, surmise, and speculation as opposed to substantial evidence. Absent from the prosecution's case was evidence that appellant intended to commit battery against Stephanie Morton and her son, Benjamin.

16

An assault is statutorily defined as "'an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another," or in other words, it is an attempt to commit a battery. (*People v. Colantuono* (1994) 7 Cal.4th 206, 214; *People v. Page* (2004) 123 Cal.App.4th 1466, 1472.) Thus, the evidence must establish that when acting the defendant contemplated committing a battery against the victim. (*People v. Rocha* (1971) 3 Cal.3d 893, 900; *People v. Wright* (2002) 100 Cal.App.4th 703, 715.)

The evidence presented at trial failed to establish that appellant contemplated committing a battery against Morton and her child when he drove from the house. In fact, the evidence demonstrates just the opposite. Appellant advised Morton twice to step away from the Mercedes. These warnings demonstrate that it was appellant's intent to leave without hurting Morton or Benjamin. Thus, any conclusion that appellant assaulted the identified victims was necessarily based on suspicion, speculation, supposition, surmise, and conjecture.

For these reasons, Counts III and IV must be reversed.

/ /

/ /

17

## III

## APPELLANT'S 80-YEAR TO LIFE SENTENCE CONSTITUTES CRUEL AND/OR UNUSUAL PUNISHMENT IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS

As aptly noted by the late Justice Mosk, "many criminal sentences have crossed the bounds of reason in this state." (*People v. Hicks* (1993) 6 Cal.4th 784, 797 (Mosk, J., dissenting).) "A sentence . . . that cannot possibly be completed in the defendant's lifetime makes a mockery of the law and amounts to cruel and unusual punishment." (*Ibid.*; see Mosk, Nothing Succeeds Like Excess (1993) 26 Loyola L.A. L.Rev. 981.) Justice Mosk reiterated these beliefs in a concurring opinion *People v. Deloza* (1998) 18 Cal.4th 585: "[A] sentence of 111 years in prison is impossible for a human being to serve, and therefore violates both the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution and the cruel or unusual punishment clause of article I, section 17 of the California Constitution." (*Id.* at p. 600.) Justice Mosk explained that "[a] grossly excessive sentence can serve no rational legislative purpose, under either a retributive or utilitarian theory of punishment. It is gratuitously extreme and demeans the government inflicting it as well as the individual on whom it is inflicted." (*Id.* at pp. 601-602.)

Justice Mosk's remarks are clearly applicable to the present case.

18

Realistically, appellant, who is now 51 years old, cannot complete his sentence. (2CT 700.) Thus, punishment such as this "makes a mockery of the law and amounts to cruel and unusual punishment," in violation of the United States and California Constitutions. (*People v. Hicks, supra,* 6 Cal.4th at p. 797 (Mosk, J., dissenting); U.S. Const., 8th Amend.; Cal. Const, art. I, § 17; accord, *Ewing v. California* ((2003) 538 U.S. 11; *Lockyer v. Andrade* (2003) 538 U.S. 63; see also *People v. Carmony* (2005) 127 Cal. App. 4th 1066) Accordingly, if the judgment is otherwise affirmed, the cause must be remanded for resentencing.

/ /

/ /

**IV**

**THE IMPOSITION OF THE AGGRAVATED TERMS
OF IMPRISONMENT VIOLATED *BLAKELY V.
WASHINGTON* AND APPELLANT'S FEDERAL
CONSTITUTIONAL RIGHTS TO A JURY TRIAL
UNDER THE SIXTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AND DUE PROCESS
UNDER THE FOURTEENTH AMENDMENT**

**A.     Introduction**

When imposing the upper terms for the burglary charged in Count I, the

trial court identified four aggravating factors. It stated:

> I am using the aggravated term because circumstances in
>
> aggravation greatly outweigh circumstances in mitigation. Your
>
> crime involves the threat of great bodily harm. You used a
>
> deadly weapon, that being your car. The manner in which the
>
> crime was carried out indicated planning. Your prior
>
> convictions are numerous. And you have served nine prior
>
> prison terms in connection with those prior felony convictions.

RT 12/20/05 18.) The court also relied on these same factors when imposing

aggravated terms on Counts II through V. (RT 12/20/05 18)

Appellant submits that the aggravated term in each of the five counts

must be reduced to the midterm because he was denied his federal

constitutional right to a jury determination that the factors which supported the

20

trial court's imposition of the aggravated terms were true beyond a reasonable doubt. (U.S. Const., Amends. VI, XVI; *United States v. Booker* (2005) 543 U.S. 220; *Blakely v. Washington* (2004) 524 U.S. 296.)

Appellant recognizes that on June 20, 2005, the California Supreme Court in *People v. Black*, 35 Cal.4th 1238, held that the federal constitutional right to a jury trial on fact-finding as announced in *Blakely* does not apply to the imposition of the upper and aggravated term pursuant to California's Determinate Sentencing Law. Appellant further recognizes that this Court is bound to follow the decisions of the California Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) However, on February 21, 2006, the United States Supreme Court granted a petition for writ of certiorari in *Cunningham v. California*, __ U.S. __; 126 S. Ct. 1329; 164 L.Ed. 2d 47, in which it will be determining whether California's Determinate Sentencing Law, by permitting sentencing judges to impose enhanced sentences based on their determination of facts not found by the jury or admitted by the defendant, violates the Sixth and Fourteenth Amendments, pursuant to *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 and *Blakely v. Washington, supra*, 542 U.S. 296. In light of this action, appellant makes this argument to preserve the issue for possible federal court review

21

## B.    The Issue Is Cognizable On Appeal

Appellant concedes that he did not object to the trial court's action. This omission, however, does not preclude the Court's review of the claim at hand.    The trial court's usurpation of the jury's role violated appellant's fundamental constitutional rights to substantive due process and trial by jury and no objection at trial was required to preserve the issue for appeal. (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 280; see *Rose v. Clark* (1986) 478 U.S. 570, 578.) Moreover, given the importance of the constitutional right to a jury trial (*In re Tahl* (1969) 1 Cal.3d 122, 129, fn.4 ["California law has long required that waiver of a jury trial be express. [Citation.]"] a reviewing court should not find that a claim based on the right to a jury trial has been implicitly forfeited by mere inaction unless there is no substantial doubt about the matter. Accordingly, the waiver/forfeiture doctrine should not be applied in the case at hand.

## C.    Appellant's Sentence Must Be Reversed

Since this Court is currently bound by *Black* and because it is familiar with the core arguments, appellant foregoes an extended explanation as to why *Black* was decided incorrectly. Appellant will, however, briefly summarize the rationale for *Blakely*'s application to California upper terms.

In *Blakely*, the court held that, where state law establishes a

22

presumptive sentence for a particular offense and authorizes a greater term only if certain additional facts are found (beyond those inherent in the plea or jury verdict), the Sixth and Fourteenth Amendments entitle the defendant to a jury determination of those additional facts by proof beyond a reasonable doubt. (*Blakely v Washington, supra*, 542 U.S. at p. 302.)

Because the middle term is the presumptive sentence under California's Determinate Sentence Law and a defendant may only receive an upper term if "aggravating circumstances" are found (Pen. Code § 1170(b)), the California sentencing scheme for judicial determination of those facts under a preponderance standard suffers from the same constitutional defects as the sentencing regime reviewed in *Blakely*.

The sentencing court violated *Blakely* by imposing an upper term based on its own findings of aggravating facts not found true by the jury's verdict. Under *Apprendi* and *Blakely*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey*, 530 U.S. at p. 490; *Blakely v. Washington, supra*, 542 U.S. at pp. 301-302.)

The court's findings on three of the four aggravating factors here are the kind of offense-related aggravating factors which *Apprendi* and *Blakely*

23

entrust to a jury. In view of the sentencing court's finding of these aggravating

factors, the court's selection of the upper terms was tainted by *Blakely* error

and reversal of appellant's sentence is required.

/ /

/ /

24

## V

### THE TRIAL COURT ERRED WHEN IT IMPOSED ENHANCEMENTS UNDER BOTH PENAL CODE SECTION 667, SUBDIVISION (a) AND PENAL CODE SECTION 667.5, SUBDIVISION (b) FOR THE SAME PRIOR CONVICTION

Appellant suffered a conviction for two counts of residential burglary (Pen. Code §§ 459, 460) on March 29, 1985, in Case No. 96269 in Santa Clara County Superior Court. This conviction was alleged in the information under both Penal Code section 667.5, subdivision (b) and Penal Code section 667, subdivision (a) and identified as "Prior 8" and "Prior 16," respectively. (1CT 20, 24.) Both allegations were subsequently found true by the court. (2CT 589.) At the time of sentencing, the court imposed a five-year term for this conviction in accordance with Penal Code section 667, subdivision (a). It also imposed a one-year consecutive term for the conviction pursuant to Penal Code section 667.5, subdivision (b). (2CT 695, 698.)

Appellant submits that the one-year term is unauthorized by law as it runs afoul of *People* v. *Jones* (1993) 5 Cal.3d 1142, and it progeny.[5]

_____

[5]

Appellant did not interpose an objection to the improper double use of the conviction. However. it is well established that legally unauthorized sentences are in excess of the trial court's jurisdiction and may therefore be challenged for the first time on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Impermissible double punishments constitute a legally unauthorized sentence in excess of the trial court's jurisdiction and this type of sentencing error therefore cannot be waived. (*People v. Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3; *Neal v. California* (1960) 55 Cal.2d 11.)

25

In *Jones*, the California Supreme Court addressed whether the electorate intended, when it enacted Proposition 8, that one prior conviction could serve as the basis for sentence enhancement under both Penal Code section 667, subdivision (a) and Penal Code section 667.5, subdivision (b). Following a lengthy analysis, *Jones* concluded that the cumulative imposition of enhancements under sections 667, subdivision (a) and 667.5, subdivision (b) is impermissible if based on the same conviction. Only the greater of the two enhancements may be imposed. (*Id.* at pp. 1145-1147; see also *People v. Walker* (2006) 139 Cal. App.4th 782, 794, fn. 9.)

In light of *Jones* and its progeny, this Court should remand the cause to the trial court with directions that the challenged one-year enhancement imposed pursuant to Penal Code section 667.5, subdivision (b) be stayed. (See Cal. Rules of Court, rule 4.447; *People v. Walker*, *supra*, 139 Cal. App.4th at p. 794, fn. 9; *People v. Lopez* (2004) 119 Cal.App.4th 355, 364.)

/ /

/ /

## CONCLUSION

For the foregoing reasons, Counts II, III, and IV must be reversed and

the cause remanded to the trial court for resentencing.

DATED: July 31, 2006

Respectfully submitted,


ROSS THOMAS
Attorney for Appellant Hawkins

## CERTIFICATE OF COMPLIANCE WITH
## CALIFORNIA RULES OF COURT,
## RULE 14, SUBDIVISION (c)(1)

I certify that pursuant to California Rules of Court, rule 14, subdivision

(c)(1) the attached appellant's opening brief contains 5212 words.

Dated: July 31, 2006

> ROSS THOMAS
> Attorney for Appellant Hawkins

28

## DECLARATION OF SERVICE

People v. Hawkins                                                    No. A112556

    I, the undersigned, declare that I am over the age of 18 years and am not a party to the within cause; my business address is 4104 24th Street, Ste., 411, San Francisco, California 94114. I served a true copy of the attached:

### APPELLANT'S OPENING BRIEF

on each of the following by placing same in an envelope (or envelopes) addressed respectively as follows:

ATTORNEY GENERAL                             HOMER HAWKINS
455 Golden Gate Avenue                        (Appellant)
San Francisco, California 94102

FIRST DISTRICT APPELLATE PROJECT
730 Harrison, Ste. 201
San Francisco, California 94107

CLERK, SUPERIOR COURT
County of San Mateo
400 County Center
Redwood City, California 94063

DISTRICT ATTORNEY
County of San Mateo
400 County Center
Redwood City, California 94063

Each said envelope was then on July 31, 2006, sealed and deposited in the United States Mail with the postage fully prepaid.

    I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed on the 31st day of July, 2006.

 

                                        _____

                                                DECLARANT

# EXHIBIT B



# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT, DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff and Respondent,<br><br>v.<br><br>**HOMER EARL HAWKINS,**<br><br>Defendant and Appellant. | A112556 |

San Mateo County Superior Court No. SC058641
The Honorable John L. Grandsaert, Judge

### RESPONDENT'S BRIEF

BILL LOCKYER
Attorney General of the State of California

MARY JO GRAVES
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

RENE CHACON
Supervising Deputy Attorney General

JOAN KILLEEN
Deputy Attorney General
State Bar No. 111679

455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5968
Fax: (415) 703-1234

Attorneys for Respondent

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE     1

STATEMENT OF FACTS     2

ARGUMENT     8

I.    **THE TRIAL COURT PROPERLY DECLINED TO INSTRUCT ON GRAND THEFT**     8

    A.  Background     8

    B.  Applicable Law     9

    C.  The Trial Court Properly Found Instruction On Grand Theft Was Not Warranted     10

II.    **SUFFICIENT EVIDENCE SUPPORTS APPELLANT'S CONVICTIONS FOR ASSAULT WITH A DEADLY WEAPON**     15

    A.  Applicable Law     15

    B.  Sufficient Evidence Supports The Jury's Findings     16

III.    **APPELLANT WAIVED HIS CLAIM THAT HIS SENTENCE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT**     20

IV.    **APPELLANT WAIVED HIS CLAIM THAT THE TRIAL COURT'S IMPOSITION OF AGGRAVATED TERMS VIOLATED HIS RIGHT TO A JURY TRIAL**     24

V.    **THE TRIAL COURT PROPERLY IMPOSED SERIOUS FELONY AND PRIOR PRISON TERM ENHANCEMENTS FOR APPELLANT'S 1985 BURGLARY CONVICTIONS**     28

i

**TABLE OF CONTENTS  (continued)**

**Page**

CONCLUSION                                                      31

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Apprendi v. New Jersey*
(2000) 530 U.S. 466     25

*Auto Equity Sales, Inc. v. Superior Court*
(1962) 57 Cal.2d 450     25

*Blakely v. Washington*
(2004) 542 U.S. 296     24

*Chamberlain v. Pliler*
(C.D. Cal. 2004) 307 F. Supp. 2d 1128     25

*In re Lynch*
(1972) 8 Cal.3d 410     22

*Neder v. United States*
(1999) 527 U.S. 1     25

*People v. Alvarado*
(2001) 87 Cal.App.4th 178     22

*People v. Avena*
(1996) 13 Cal.4th 394     9

*People v. Barton*
(1995) 12 Cal.4th 186     9

*People v. Black*
(2005) 35 Cal.4th 1238     25

*People v. Blakely*
(2000) 23 Cal.4th 82     10, 14

*People v. Bloyd*
(1987) 43 Cal.3d 333     15

**TABLE OF AUTHORITIES  (continued)**

|  | Page |
|---|---|
| *People v. Breverman*<br>(1998) 19 Cal.4th 142 | 9, 10, 14 |
| *People v. Cooksey*<br>(2002) 95 Cal.App.4th 1407 | 12, 13 |
| *People v. DeJesus*<br>(1995) 38 Cal.App.4th 1 | 21, 22 |
| *People v. Dillon*<br>(1983) 34 Cal.3d 441 | 22 |
| *People v. Estrada*<br>(1997) 57 Cal.App.4th 1270 | 22 |
| *People v. Gonzales*<br>(1993) 20 Cal.App.4th 1607 | 29, 30 |
| *People v. Gonzalez*<br>(2003) 31 Cal.4th 745 | 24 |
| *People v. Hicks*<br>(1982) 128 Cal.App.3d 423 | 16 |
| *People v. Johnson*<br>(1993) 6 Cal.4th 1 | 15 |
| *People v. Jones*<br>(1993) 5 Cal.4th 1142 | 28-30 |
| *People v. Kelley*<br>(1997) 52 Cal.App.4th 568 | 21 |
| *People v. Kraft*<br>(2000) 23 Cal.4th 978 | 15 |
| *People v. Lasko*<br>(2000) 23 Cal.4th 101 | 10, 14 |

## TABLE OF AUTHORITIES (continued)

**Page**

*People v. Mickle*
(1991) 54 Cal.3d 140                                                 21

*People v. Morales*
(1975) 49 Cal.App.3d 134                                            13

*People v. Osband*
(1996) 13 Cal.4th 622                                               26

*People v. Page*
(2004) 123 Cal.App.4th 1466                                     18, 19

*People v. Redmond*
(1969) 71 Cal.2d 745                                               16

*People v. Rhodes*
(2005) 126 Cal.App.4th 1374                                       22

*People v. Rodriguez*
(1999) 20 Cal.4th 1                                               15

*People v. Ross*
(1994) 28 Cal.App.4th 1151                                       21

*People v. Sanghera*
(2006) 139 Cal.App.4th 1567                                      16

*People v. Saunders*
(1993) 5 Cal.4th 580                                             24

*People v. Scott*
(1994) 9 Cal.4th 331                                             24

*People v. Towler*
(1982) 31 Cal.3d 105                                             15

*People v. Walker*
(2006) 139 Cal.App.4th 782                                      29

## TABLE OF AUTHORITIES (continued)

                                                                    **Page**

*People v. Weddle*
(1991) 1 Cal.App.4th 1190                                            22

*People v. Williams*
(2001) 26 Cal.4th 779                                                17

*People v. Wright*
(2002) 100 Cal.App.4th 703                                          17

*United States v. Cotton*
(2002) 535 U.S. 625                                                  25

*United States v. Olano*
(1993) 507 U.S. 725                                                  24

*Washington v. Recuenco*
(2006) ___ U.S. ___
126 S.Ct. 2546                                                      25

**Statutes**

Penal Code
        § 212.5, subd. (c)                                          1
        § 245, subd. (a)(1)                                         1
        § 460, subd. (a)                                            1
        § 487, subd. (c)                                            11
        § 667, subd. (a)                                            1, 28-30
        § 667.5, subd. (b)                                          1, 28-30
        § 969, subd. (b)                                            28
        § 1170.12, subd. (c)(2)                                     1

Vehicle Code
        § 2800.2                                                    1

**TABLE OF AUTHORITIES (continued)**

**Page**

**Other Authorities**

2 Witkin & Epstein, Cal. Criminal Law
(3d ed. 2000) Crimes Against Property, § 5, p. 23        12

California Jury Instructions, Criminal
    No. 14.23        11

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** | |
| Plaintiff and Respondent, | A112556 |
| **v.** | |
| **HOMER EARL HAWKINS,** | |
| Defendant and Appellant. | |

### STATEMENT OF THE CASE

On May 18, 2005, the San Mateo County District Attorney filed an information charging appellant with burglary (Pen. Code, § 460, subd. (a), count one),[1] robbery (§ 212.5, subd. (c), count two), assault with a deadly weapon (§ 245, subd. (a)(1), counts three, four), and evading a police officer (Veh. Code, § 2800.2, count five). The information further alleged that appellant had suffered four prior strike convictions, three prior serious felony convictions, and had served nine prior prison terms (§§ 667, subd. (a), 667.5, subd. (b), 1170.12, subd. (c)(2)). (1 CT 13-25.) Appellant represented himself in the trial proceedings. (1 CT 8.)

On October 19, 2005, a jury found appellant guilty as charged. (2 CT 514-518.) On November 18, 2005, the trial court found the prior conviction allegations to be true. (2 CT 589; 3 RT 617-618.) On December 20, 2005, the court sentenced appellant to a total term of 80 years to life. (2 CT 694-699; 12/20/05 RT 17-21.)

On January 4, 2006, appellant filed a notice of appeal. (2 CT 712.)

---

1. All further unspecified references are to the Penal Code.

1

## STATEMENT OF FACTS

On April 20, 2005, shortly before noon, Stephanie Norton and her two-year-old son, Benjamin, returned to her home in Portola Valley. She did not expect to see anyone there, but when she arrived, she saw an unfamiliar blue Mercedes Benz parked in her driveway. Holding her son, Norton walked up to the Mercedes to get a closer look at it. She was concerned, because she did not expect to see it there, and so she memorized its license plate. (2 RT 314-315, 324-326.)

Still holding Benjamin, Norton went to her front door, but no one was there. She walked all the way around her house to see if she could find anyone, but still saw no one. When she returned to her driveway, she saw appellant, who was carrying a bag, approach her from the side of her house. (2 RT 326-328, 330-331.) When he saw her, he said, "Whoa, whoa, whoa." Norton asked him who he was and what he was doing. (2 RT 328.) Appellant said he was there from "the insurance," and that her husband sent him. Norton "knew something was wrong" when he said that. (2 RT 329.) She started to back up toward a storage shed. As she did so, she realized that appellant was carrying a pillowcase that looked like it was full. When appellant walked quickly over to the driver's side of the Mercedes, Norton realized they were being robbed and told appellant to stop. (2 RT 329-332.) She went to the driver's side of the Mercedes to "intercept" appellant. He was already in the driver's seat, with the door open, and she was "[r]ight next to it." (2 RT 330.) Norton could see her pillowcase on the front passenger seat. She said, "That's our stuff. Give that back." (2 RT 331.) Appellant started the car and told Norton, "You better get out of the way." Norton "didn't do anything," but appellant "started rolling the car backwards a little bit." (2 RT 332.) Norton was holding her son in her left arm. She was near the inside of the driver's door so that she could touch it with her hand in an effort to stop appellant. Appellant "said, you better get out of the

2

way, again. And then, the car went backwards really fast. . . . [¶] It seemed like he gunned it. All of a sudden it started shooting backwards." (2 RT 333.) Norton "kind of sidestepped" to get out of the way of the open driver's door. She was not struck by the door, but she "had to move fast to get out of the way, or else [she] would have been hit. It was moving right at me. The door was moving right at me, and the wheels were practically right next to me." (2 RT 334.) On cross-examination, Norton told appellant, "There wasn't any cussing. The second time you said, you better get out of the way. It was definitely said in a serious sort of loudish and gruff tone. And my impression was that I needed to get out of the way of the car." (2 RT 366.) Norton was less than one foot from the door and was touching it with her hand. She was about one foot from the side of the car. (2 RT 367-368.)[2/] When appellant's car backed up, Norton saw the tires spin and kick up gravel in her driveway. (2 RT 369.)

Norton called the police about 12:08 p.m., after appellant left. They arrived about 1:00 p.m. and checked her house for additional suspects. (2 RT 335-336.) Inside the house, Norton saw that the window to her back door was raised and the screen torn. She also learned that the sliding glass door in the master bedroom was open and the lock on the screen for the sliding glass door in the guest room was broken. (2 RT 358-360.)

About 1:30 or 2:00 p.m., Norton went to East Palo Alto, where she identified appellant, the Mercedes, and some of her belongings from the pillowcase on the front seat. She recalled seeing some of her jewelry, her jewelry box, her earring rack, her husband's belt and leather jacket, a jar of coins, a gift certificate, and her camera and video camera. (2 RT 336-341.) Norton also recognized the pillowcase appellant had in his possession, which previously had been on a pillow in her master bedroom. (2 RT 346.)

---

2. When fully opened, the outside edge of the driver's side door was 45 inches from the side of the car. (2 RT 399.)

3

Deputy Sheriff Robert Lawrence was on duty on a marked sheriff's motorcycle that day. (2 RT 195.) He heard a dispatch regarding a reported burglary in the area. The suspect description was a Black male driving a light blue Mercedes with a license plate number of 3AZL346. The dispatch described the suspect as a "parolee at large." (2 RT 197.) Lawrence passed the Mercedes near Highway 280. When he turned to follow the vehicle, the driver accelerated away from him. (2 RT 198-199.) Lawrence sped up to follow the Mercedes and saw it run through a stop sign at Alpine and Highway 280. He turned on his lights and siren and followed the vehicle northbound on 280. (2 RT 199-200.) Initially, the Mercedes and Lawrence were traveling about 80 miles per hour. After the driver turned to look at Lawrence, he accelerated to about 100 miles per hour and was passing other vehicles on the highway. Lawrence could not keep up with him and felt it was unsafe to continue the pursuit at that speed. He saw the Mercedes exit at Woodside Road and advised other officers of the vehicle's last known location. Lawrence never saw the driver slow down after the chase began. (2 RT 201-203.)

Deputy Sheriff Andrew Armando saw Deputy Lawrence in pursuit of the Mercedes on Highway 280. (2 RT 209-210.) The Mercedes "was driving erratically and very fast." (2 RT 210.) Armando saw it make "an abrupt three-lane change, from the fast lane all the way over to the shoulder, right before the exit to Woodside." (2 RT 210-211.) Armando lost sight of the Mercedes after it turned onto Woodside Road, but saw it again on Stockbridge, where the driver ran a stop sign at about 30 miles per hour. By then, Armando had learned the driver was wanted on a warrant for being a parolee at large.[3] When Armando resumed the pursuit, the driver accelerated to about 80 miles per hour. He drove through two stop signs at about 40 miles per hour, then increased his

---

3. A parolee at large is a person who has not reported in or has committed another offense in violation of his parole status. (2 RT 250.)

4

speed to 85 miles per hour. (2 RT 211-216.) The Mercedes went through a stop sign on Selby at 80 miles per hour, then went through another stop sign at El Camino, where Selby ended, at 50 miles per hour. As the car turned onto El Camino, it went across the road to the wrong side, then returned to the right side of the road as it turned on Fifth Avenue and continued at about 60 miles per hour. (2 RT 217-220.) After the Mercedes ran two stop signs at 60 miles per hour and drove on the wrong side of the road at 70 miles per hour, Armando decided to quit the pursuit. Instead of slowing, the Mercedes continued to accelerate, eventually turning onto Highway 101. (2 RT 221-223.)

East Palo Alto Police Officer Angel Sanchez pursued the Mercedes for a short distance after it exited Highway 101. He lost sight of the vehicle as it fled through residential neighborhoods at 60 miles per hour. (2 RT 230-233.) East Palo Alto Police Officer Jeff Liu saw the Mercedes just after it had parked in a carport in Manhattan Alley. A man, whom Officer Liu identified as appellant, was on the passenger side taking items out of the car. When Officer Liu approached appellant with his gun drawn, appellant made eye contact with him, then started running. Liu gave chase and caught up to him. When he told appellant to get on the ground, however, appellant refused. (2 RT 247-253.) Even though Liu hit him with his baton, "it didn't seem to have much of an effect on him." (2 RT 253.) Appellant started running again, and Liu resumed the pursuit. (2 RT 253-254.) Eventually, appellant was arrested in his apartment building after he complied with Liu's order to get down on the ground. (2 RT 258-260.)

Deputy Sheriff John Kovach took custody of appellant at the apartment complex. While appellant was in the back of his patrol car, appellant's sister approached and said appellant had money that she needed. (2 RT 271-273.) After Deputy Kovach asked appellant his name, appellant said, "I ain't saying shit." (2 RT 296-297.) Stephanie Norton made a positive

identification of appellant while he was with Deputy Kovach. She also identified the Mercedes and some of her belongings in the car. (2 RT 275-278.)

Deputy Kovach spent "hours" going through the contents of the Mercedes. (2 RT 279.) He found a screwdriver, which Norton said did not belong to her, inside the pillowcase that was leaning against the passenger side door of the Mercedes. (2 RT 278-279, 286, 304-306, 388-389.) "There were very many items inside of the vehicle," including inside the glove box, center console, passenger compartment, side compartments, and trunk. (2 RT 298.) Included among the documents found in the vehicle was a purchase contract for a multi-million dollar house and a purchase contract for a new Lamborghini. (2 RT 299-300.) When Deputy Kovach searched appellant, he found another screwdriver, as well as a coin bag and a case for sunglasses that contained 15 $100 bills. (2 RT 301-302.) Deputy Kovach did not send the screwdriver found in the pillowcase for fingerprint processing because he did not believe the identity of the burglar was in question. (2 RT 307.) Similarly, Detective Ben Hand did not have the Mercedes or its contents dusted for fingerprints because he believed it was unnecessary. (2 RT 404-405.)

Deputy Sheriff Tim Glitz determined that the point of entry into Norton's home was the rear door that entered into a laundry room. The screen on the door's window had been cut and there were pry marks under the frame of the window. He was unable to find any identifying fingerprints at the point of entry or inside the house. (2 RT 375-378.)

Appellant's sister, Tracy Hawkins, testified that she had never known appellant to threaten, shoot, or stab anyone when arrested or at any other time. She had never known appellant to be in need of money, clothing, or anything else. She was aware that he had documentation for a large loan and was in the process of buying a house. Appellant was not employed on April 20, 2005, and had not had a job for years. Appellant had been staying at her apartment for

6

about five months before his arrest. He gave her about $100 a month for rent, and she provided him with food and shelter. He was the only person who had keys to the Mercedes. (3 RT 468-475.)

## ARGUMENT

### I.

## THE TRIAL COURT PROPERLY DECLINED TO INSTRUCT ON GRAND THEFT

Appellant contends the trial court erred by failing to instruct on grand theft from a person as a lesser included offense of robbery, as charged in count two. The record does not support his claim.

### A. Background

After the prosecution rested, the court and parties raised the issue of instruction on lesser included offenses. (2 RT 428.) The prosecutor stated grand theft person was a standard lesser included offense of robbery, but argued "there is no reasonable set of facts to justify grand theft person, simple grand theft, or petty theft." (2 RT 429.) The court stated it would decide the question of lesser included offense instructions the next day, after appellant presented his evidence. (2 RT 432.)

The next day, the court ruled as follows:

> I have reviewed testimony taken in this case, and have determined there is not a basis for lesser included instructions in this case.
>
> Mr. Hawkins has not requested any. But even had he requested them, there is no evidentiary basis for the jury to find the defendant guilty of any lesser offense, if they were to find him not guilty of the greater offense.
>
> So, in other words, there is no evidentiary basis for lesser includeds in this case. That is the argument of the People. I reviewed the People's memorandum. And I do agree with the statements of law and facts stated therein. And my own independent research into the law advises me that there is not a place for lesser included instructions in this case.

(3 RT 485.)

8

## B.  Applicable Law

The trial court's obligation to instruct on the general principles of law relevant to the issues raised by the evidence includes "giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present." (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Ibid.*) However, instruction on lesser included offenses is required only if there is substantial evidence to support the lesser charge. (*Id.* at p. 162; see *People v. Avena* (1996) 13 Cal.4th 394, 424.)

> [T]he existence of "*any*" evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury. [Citations.] "Substantial evidence" in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[]'" that the lesser offense, but not the greater, was committed. [Citations.]
>
> In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury. [Citations.] Moreover, as we have noted, the sua sponte duty to instruct on lesser included offenses, unlike the duty to instruct on mere defenses, arises even against the defendant's wishes, and regardless of the trial theories or tactics the defendant has actually pursued. Hence, substantial evidence to support instructions on a lesser included offense may exist even in the face of inconsistencies presented by the defense itself.

(*People v. Breverman, supra,* 19 Cal.4th at pp. 162-163, original italics, footnote omitted; see *People v. Barton* (1995) 12 Cal.4th 186, 201 & fn. 8 [substantial evidence is evidence that a reasonable jury could find persuasive, not evidence that is minimal and insubstantial].)

"[F]ailure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." (*People v. Breverman, supra,* 19 Cal.4th at p. 165; see *People v. Lasko* (2000) 23 Cal.4th 101, 111.) Thus, a conviction of the charged offense may be reversed for failure to instruct on a lesser offense only if there is a reasonable probability, in light of the entire record, that the defendant would have obtained a more favorable outcome had the error not occurred. (*People v. Blakely* (2000) 23 Cal.4th 82, 93; *People v. Lasko, supra,* 23 Cal.4th at p. 111; *People v. Breverman, supra*, 19 Cal.4th at p. 165.) The state standard "requires a *reasonable* probability, not a mere *theoretical* possibility, that the instructional error affected the outcome of the trial." (*People v. Blakely, supra,* 23 Cal.4th at p. 94, original italics.) The state harmless error standard applies because "the United States Supreme Court has expressly refrained from recognizing a federal constitutional right to instructions on lesser included offenses in noncapital cases." (*People v. Breverman, supra,* 19 Cal.4th at p. 165.) After a thorough discussion on the issue, the California Supreme Court stated,

> Accordingly, we affirm that the rule requiring sua sponte instructions on all lesser necessarily included offenses supported by the evidence derives exclusively from California law. In light of the United States Supreme Court's careful disclaimers, and its tendency to interpret related federal rules, both constitutional and nonconstitutional, in a narrow way, we decline to do what the high court has expressly not done—to hold that such an instructional rule is required in noncapital cases by the federal Constitution.

(*Id.* at p. 169, footnote omitted.)

## C.   The Trial Court Properly Found Instruction On Grand Theft Was Not Warranted

The trial court instructed the jury on robbery as follows:

10

Defendant is accused in Count 2 of having committed the crime of robbery, a violation of Section 211 of the Penal Code.

Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear, and with the specific intent permanently to deprive that person of the property, is guilty of the crime of robbery, in violation of Penal Code Section 211.

. . . .

In order to prove this crime, each of the following elements must be proved:

1. The person had possession of property of some value, however slight.

2. The property was taken from that person or from his or her immediate presence.

3. The property was taken against the will of that person.

4. The taking was accomplish[ed] either by force or fear; and,

5. The property was taken with a specific intent to permanently deprive that person of the property.

The element of fear in the crime of robbery may be either:

1. The fear of an unlawful injury to the person or property of the person robbed, or to any of his or her relatives or family members; or,

2. The fear of immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery.

(3 RT 503-505.)

Grand theft includes the theft of property "taken from the person of another." (§ 487, subd. (c).) CALJIC No. 14.23, applicable at the time of appellant's trial, provides,

The theft of personal property of any value from the person of another is grand theft. A taking of property is from the person if the property was either on the body or in the clothing worn, or in a container carried by the person from whom it was taken.

Robbery thus requires a taking of property from a person or from his or her immediate presence against that person's will, by force or fear, and with the intent to permanently deprive that person of the property. Grand theft from the person of another requires a taking of property from the person's body,

11

clothing, or a container carried by the person. It does not require a taking by force or fear or with the intent to permanently deprive.

"Grand theft person, depending on the facts, can be a lesser included offense of robbery." (*People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1411.) "The crime is grand theft if property *is taken from the person of another*. (P.C. 487(c); see CALJIC (6th ed.), No. 14.23 [when property is taken from person].) This is common law 'compound' or 'aggravated' larceny, which would be robbery except for the absence of force or fear (infra, § 94)." (2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 5, p. 23, original italics.) "The statutory language—'from the person'—is strictly interpreted, and the 'immediate presence' rule in robbery cases [citation] is inapplicable." (*Id*. at pp. 23-24.)

Here, the property, i.e., the pillowcase containing Norton's possessions, was not taken from Norton's person, clothing, or a container she carried. Rather, appellant had the pillowcase in his possession when he saw Norton. She attempted to get him to return her property when she approached the car as he got in and prepared to drive away. Rather than comply with her request that he return the property, however, appellant threatened Norton and her son with his car. He did so by telling her to get away, then moving the car slightly to signal his intention that he planned to leave with her property. When Norton did not immediately move, appellant told her to back away again and then suddenly "gunned" the car, moving it rapidly in reverse, so that Norton was forced to jump out of the way as appellant escaped with her property.

As the trial court found, the facts did not support instruction with the lesser offense of grand theft of property from another. The property was not in Norton's immediate possession, although it was in her presence. Thus, the facts supported a finding of robbery, but not grand theft, on that element. Moreover, the facts showed that the robbery was accomplished by force or fear. Indeed,

12

the taking could have occurred in no other way because Norton did not have physical control of the property. Rather, appellant had control of the property and refused to give it back. He used his car to threaten Norton by indicating, both in word and deed, that he would hit her with the car door if she did not move away from him. He accomplished the robbery by forcing Norton to move out of fear that she and her son would be struck and injured by the car door or the car itself. Accordingly, the elements of robbery were shown, but not the elements of grand theft of property from another.

Appellant argues that the jury might not have found him guilty of robbery had it been given a lesser offense alternative because he "did not behave aggressively toward" Norton or her son. (AOB 11.) He appears to believe that Norton's demand that he return her property and her attempt to stop him militates against any finding of force or fear. He is mistaken. The situation is no different than if appellant had held a knife or a gun and threatened to hurt Norton if she did not cease her demands that he return her property. Appellant did not have to use the weapon, in this case, his car, to actually hurt Norton. It was the threat of harm to her and her son that resulted in the taking by force or fear. Appellant can point to no evidence in the record that would have supported a finding that property was taken from Norton, but *not* by force or fear.

Appellant's reliance on *People v. Morales* (1975) 49 Cal.App.3d 134 for a contrary result is unavailing. As the court of appeal in *People v. Cooksey, supra,* 95 Cal.App.4th 1407, pointed out, there was conflicting evidence in *Morales* on the question whether the victim was pushed or merely fell when her purse was snatched from her. (*Cooksey, supra*, at pp, 1412-1413.) If she was pushed, the evidence supported a finding of robbery, but if she simply fell, the evidence supported a finding of grand theft from the person of another. (*Ibid.*) As in *Cooksey, supra*, at p. 1413, "the facts in this case are far different from

13

*Morales.*" In *Cooksey,* there was a two-minute struggle between the perpetrator and the victim as they fought over the victim's purse, during which the victim screamed and cried. (*Id.* at pp. 1411, 1413.) Accordingly, "[t]he trial court correctly refused to instruct on grand theft from the person." (*Id.* at p. 1413.) In this case, there was a threat of harm rather than a physical struggle, but no evidence that appellant simply took the property without the use of force or fear. Consequently, the trial court correctly refused to give the lesser offense instruction.

For the same reasons, there is no reasonable probability that appellant would have obtained a more favorable outcome absent the alleged error. (*People v. Blakely, supra,* 23 Cal.4th at p. 93.) Had the jury been given an instruction on grand theft of property from another, the prosecutor could have pointed out that appellant did not take the property from Norton's person, clothing, or a container she carried. Instead, the evidence showed appellant took the property from Norton's immediate presence by force or fear, i.e., the threat that he would knock her down with his car if she refused to move. Since the evidence supported a finding of robbery, a point appellant does not dispute, and did not support a finding of grand theft, appellant was not prejudiced even if the trial court should have given the instruction. Accordingly, his claim should be rejected.[4]

---

4. Appellant fails to support his claim that his federal constitutional rights were violated by the alleged error. As noted, failure to instruct with a lesser included offense in a noncapital case is, at most, an error of state law. (*People v. Lasko, supra,* 23 Cal.4th at p. 111; *People v. Breverman, supra,* 19 Cal.4th at pp. 165, 169.)

14

## II.

## SUFFICIENT EVIDENCE SUPPORTS APPELLANT'S CONVICTIONS FOR ASSAULT WITH A DEADLY WEAPON

Appellant contends his convictions for assault with a deadly weapon in counts three and four were not supported by sufficient evidence. The record does not support his claim.

### A. Applicable Law

The applicable standard of review is well established.

To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find defendant guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.

(*People v. Johnson* (1993) 6 Cal.4th 1, 38.) Substantial evidence is evidence that is reasonable, credible, and of solid value, upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) The standard of review is the same in cases where the People rely primarily on circumstantial evidence. (*People v. Bloyd* (1987) 43 Cal.3d 333, 346.) Even if the reviewing court believes the evidence might also reasonably be reconciled with the innocence of the defendant, this view "does not warrant interference with the determination of the trier of fact." (*People v. Towler* (1982) 31 Cal.3d 105, 118.) Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to

15

support it. (*People v. Redmond* (1969) 71 Cal.2d 745, 755; *People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

A criminal defendant "does not show the evidence is insufficient by citing only his own evidence, or by arguing about what evidence is *not* in the record, or by portraying the evidence that is in the record in the light most favorable to himself." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573, original italics.) Rather, "the defendant must set forth in his opening brief *all* of the material evidence on the disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict." (*Id.* at p. 1574, original italics.)

## B.   Sufficient Evidence Supports The Jury's Findings

Appellant claims his convictions for assault with a deadly weapon "were based on suspicion, surmise, and speculation as opposed to substantial evidence." (AOB 16.) He apparently believes there was no evidence he actually "intended to commit a battery against Stephanie Morton [*sic*] and her son, Benjamin." (*Ibid.*)

The jury was instructed in pertinent part as follows:

Defendant is accused in Counts 3 and 4 of having violated Section 245(a)(1) of the Penal Code, a crime.

Every person who commits an assault upon the person of another with a deadly weapon or instrument, other than a firearm, or by means of force likely to produce great bodily injury, is guilty of a violation of Section 245(a)(1) of the Penal Code, a crime.

. . . .

In order to prove this crime, each of the following elements must be proved:

1.   A person was assaulted.

2.   The assault was committed with a deadly weapon or instrument, other than a firearm, or by means of force likely to produce great bodily injury.

In order to prove an assault, each of the following elements must be proved:

16

     1.   A person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person.

     2.   The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural, and probable result of this act, that physical force would be applied to another person; and,

     3.   At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another.

(3 RT 505-506.) The court also instructed that "an assault does not require an intent to cause injury to another person or an actual awareness of the risk that injury might occur to another person." (3 RT 506.) The court further instructed that "[a]n assault includes a conditional threat to apply physical force upon another," as defined. (3 RT 507.)

Appellant claims that assault "is an attempt to commit a battery," and that the evidence at trial "failed to establish that [he] contemplated committing a battery against Morton [*sic*] and her child when he drove from the house." (AOB 17.) As the jury was correctly instructed, however, "an assault does not require an intent to cause injury." (3 RT 506.)

[W]e hold that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.

(*People v. Williams* (2001) 26 Cal.4th 779, 790; see *People v. Wright* (2002) 100 Cal.App.4th 703, 706.)

On the other hand, an assault does includes a "conditional threat to apply physical force upon another." (3 RT 507.)

Ordinarily, [a]n assault occurs whenever [t]he next movement would, at least to all appearance, complete the battery. [Citations.] But there can also be an assault when the battery is only threatened. [Citation.] Where a party puts in a condition which must be at once

17

performed, and which condition he has no right to impose, and his intent is immediately to enforce performance by violence, and he places himself in a position to do so, and proceeds as far as it is then necessary for him to go in order to carry out his intention, then it is as much an assault as if he actually struck, or shot, at the other party, and missed him. [Citations.]

(*People v. Page* (2004) 123 Cal.App.4th 1466, 1473, internal quotation marks omitted.)

Here, the evidence showed that when Norton was standing with her son next to appellant's open driver's side door, he told her to get out of the way. When she did not do anything, he "started rolling the car backwards a little bit." (2 RT 332.) She testified that appellant "said, you better get out of the way, again. And then, the car went backwards really fast. . . . [¶] It seemed like he gunned it. All of a sudden it started shooting backwards." (2 RT 333.) Norton "sidestepped" to get out of the way of the open car door. She was not struck by the door, but she "had to move fast to get out of the way, or else [she] would have been hit. It was moving right at me. The door was moving right at me, and the wheels were practically right next to me." (2 RT 334.) Norton was about one foot from the side of the car and less than one foot from the door when appellant backed up. (2 RT 369.)

The evidence showed that appellant committed an intentional act, the movement of his car, and that he had actual knowledge of facts sufficient to establish that the act by its nature would probably and directly result in the application of physical force against another, as evidenced by his words of warning to Norton. Indeed, had Norton not moved quickly enough, he would have hit her and her son.

Appellant's claim that he attempted to avoid hitting Norton by telling her to move does not mean that he did not commit an assault, as he claims. On the contrary, his demand that she get out of the way, coupled with his initial movement of the car, constituted a "conditional threat to apply physical force

18

upon another." That action alone constituted an assault with a deadly weapon. (*People v. Page, supra,* 123 Cal.App.4th at p. 1473.)  Appellant did not stop there.  Instead, he warned her again, but then immediately moved the car backwards, forcing Norton to "move fast to get out of the way, or else [she] would have been hit."  Regardless of appellant's purported warning (or threat), his actions showed an assault with a deadly weapon on both victims.  His claim of insufficient evidence should therefore be rejected.

## III.

## APPELLANT WAIVED HIS CLAIM THAT HIS SENTENCE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT

Appellant contends his sentence of 80 years to life constitutes cruel and unusual punishment. Appellant did not raise this argument below. In any event, the record does not support his claim.

Appellant was convicted of five felonies. The trial court found true the allegations that he had suffered four prior strike convictions, three prior serious felony convictions, and had served nine prior prison terms. (See 3 RT 617-618; 12/20/05 RT 7-8.) At sentencing, the court stated in reference to appellant's prior, as well as current, convictions,

> Mr. Hawkins, among your 20 or so prior felonies, your record's replete with residential burglaries. You made it your profession to invade other people's homes and steal their property. You were caught doing this in 1979, 1985, and 1993, before being caught doing so again in this case.
>
> In 1993, you told the Probation Department that you supported yourself with odd jobs and burglaries. And in this case, when we were reviewing the stolen property that you were found in possession of, there was property found which had been taken in a Menlo Park residential burglary in, I believe it was 2003.
>
> You made the statement at the time that a friend had given you or sold you that bag, and that he had gotten it wholesale, or some such story. But the bag had been found in your possession, the victim's passport and other personal property still inside.
>
> In the instant burglary, in the one in which you were caught in this case, two innocent people were nearly very badly hurt. And why? Because Mrs. Norton had the audacity to demand her property back from you. And when she and her two-year-old son did not immediately get out of your way, you warned them one more time, then floored your Mercedes in reverse. If she had not quickly gotten out of your way, she and her son would have been seriously hurt or possibly killed.
>
> Then, there was the high speed chase. You were driving recklessly. You were driving through stop signs at 60 miles an hour. Again, someone easily could have been killed.

And worse, this was not the first time that this chase had been part of your crime pattern.

In 1993, when you were caught in the driveway of a residence that you had just burglarized, the police ordered you to stop, and you did not. You led police on a high speed chase until you lost control of the car that you were racing around in, and crashed into another home.

Also, in this case, in your efforts to avoid responsibility, you tarred the reputation of the family that you had previously victimized. You had the nerve, in a public courtroom, to tell the victim that her husband hired you to commit insurance fraud.

And I trust that you read the victim's letter in this case. I trust that you read about the permanent psychological damage that your crime may have done to her son. I know, from your probation reports, that you allege that you were not treated well as a child. But that's no excuse for what you've done here.

I am convinced that if you were left at large, that you would continue to do what you have done for the last 30 years, since your first burglary conviction as an adult. Indeed, the conclusion is almost inescapable. And the next time you did it, someone could very well die.

It is the judgment and sentence of this Court, therefore, that you will be sentenced as follows:

First of all, I want to announce for the record that I've considered the case of People versus Romero, and my discretion to strike prior strikes. I have determined that I will not strike any of the prior strikes. I find, based upon the defendant's extensive criminal history, his 18 prior felonies, which include at least four prior strikes, that to strike any of these prior strikes would not be in the interest of justice.

(12/20/05 RT 15-17.) The court thereafter imposed sentence on the five current convictions, which totaled 80 years to life. (12/20/05 RT 17-21.)

Because appellant failed to raise the issue of cruel and unusual punishment below, it is waived. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) The inquiry is a fact-bound one that may not be considered for the first time on appeal. (*People v. Ross* (1994) 28 Cal.App.4th 1151, 1157, fn. 8 [declining to reach issue], citing *People v. Mickle* (1991) 54 Cal.3d 140, 186.) Since appellant did not raise the issue below, it cannot be considered here.

21

Even if appellant had preserved the issue, he could not prevail. "A punishment is excessive under the Eighth Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' [Citation.]" (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 199.) A punishment may violate the state constitution if "'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignitiy.' [Citation.] In determining whether a particular punishment is cruel and/or unusual, courts examine the nature of the particular offense and offender, the penalty imposed in the same jurisdiction for other offenses, and the punishment imposed in other jurisdictions for the same offense. [Citations.]" (*Ibid.*; see *People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1389-1390; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1278.) "'Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment.' [Citation.]" (*People v. Rhodes, supra,* 126 Cal.App.4th at p. 1390.)

"Successful challenges based upon proportionality are extremely rare." (*People v. Kelley, supra,* 52 Cal.App.4th at p. 583; see *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196.) "*Dillon*'s [[5]] analysis is the exception, not the rule." (*People v. DeJesus, supra,* 38 Cal.App.4th at p. 31.) "The defendant must show the sentence is '"out of all proportion to the offense"' and that it offends 'fundamental notions of human dignity.'" (*People v. Kelley, supra*, 52 Cal.App.4th at p. 583, citing *In re Lynch* (1972) 8 Cal.3d 410, 424.)

"[T]he definition of crime and the determination of punishment" are "matters which are uniquely in the domain of the Legislature." (*People v. Rhodes, supra,* 126 Cal.App.4th at p. 1390.) "While these intrinsically legislative functions" are circumscribed by constitutional limits, "the validity of

---

5. *People v. Dillon* (1983) 34 Cal.3d 441.

enactments will not be questioned unless their unconstitutionality clearly, positively, and unmistakably appears." (*Ibid.*, internal quotation marks omitted.)

Appellant contends only that his age of 51 years means that he cannot possibly serve out his sentence, thus rendering it a "'mockery of the law,'" which "'amounts to cruel and unusual punishment.'" (AOB 19.) He provides no other relevant argument, and pointedly fails to address his extensive criminal history, upon which his three strikes sentence was based. As explained in the trial court's sentencing statement, the sentence imposed is fully justified. It does not constitute cruel and unusual punishment.

## IV.

## APPELLANT WAIVED HIS CLAIM THAT THE TRIAL COURT'S IMPOSITION OF AGGRAVATED TERMS VIOLATED HIS RIGHT TO A JURY TRIAL

Appellant contends the trial court's imposition of sentence, specifically its imposition of aggravated terms upon which it calculated his three strikes sentence (see 12/20/05 RT 18-21), violated his right to a jury trial under *Blakely v. Washington* (2004) 542 U.S. 296. He states he is raising this issue to preserve it for possible federal review. (AOB 21.)

Initially, we note that appellant failed to object on this ground at sentencing. "No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (*People v. Saunders* (1993) 5 Cal.4th 580, 590, quoting *United States v. Olano* (1993) 507 U.S. 725, 731, internal quotation marks omitted.) Moreover, "[t]he right to challenge a criminal sentence on appeal is not unrestricted." (*People v. Scott* (1994) 9 Cal.4th 331, 351; see *People v. Gonzalez* (2003) 31 Cal.4th 745, 751-755.) Specifically, "a criminal defendant cannot argue for the first time on appeal that the court . . . aggravated a sentence based on items contained in a probation report that were erroneous or otherwise flawed. [Citation.]" (*People v. Scott, supra*, at pp. 351-352.) Appellant's argument that the court erred under *Blakely* is essentially a claim that the court considered flawed sentencing factors when it based its sentencing decision on factors he did not admit and that the jury did not find. Since the probation report sufficiently described several aggravating sentencing factors (2 CT 703), and since appellant did not request a jury determination or otherwise object to the reasons the court gave for the sentence (12/20/05 RT 18-20), his claim should be deemed forfeited.

24

In any event, the California Supreme Court rejected a challenge under *Blakely* with respect to the imposition of both upper term and consecutive sentences in *People v. Black* (2005) 35 Cal.4th 1238, 1257-1263. That holding is binding on this Court under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455. Accordingly, appellant's claim should be rejected.

Further, even if appellant could have shown that he had a right to a jury trial on sentencing factors, he could not show prejudice. (*Washington v. Recuenco* (2006) ___ U.S. ___, 126 S.Ct. 2546, 2553 [*Blakely* error is subject to harmless error review]; see also *Neder v. United States* (1999) 527 U.S. 1, 19 [a trial court's failure to instruct a jury on all of the statutory elements of an offense is subject to harmless-error analysis].) For example, if the facts supporting the trial court's sentencing choice were undisputed, the error is harmless. (See *Chamberlain v. Pliler* (C.D. Cal. 2004) 307 F. Supp. 2d 1128, 1143 [holding that any *Apprendi*[6] error from the failure to submit a personal-use finding to the jury was harmless because "[p]etitioner has adduced no evidence to contradict the evidence considered by the trial court, which included the victim's testimony that petitioner had pulled out a knife and struck the victim in the head with a shiny object cutting him and leaving a scar"]; cf. *United States v. Cotton* (2002) 535 U.S. 625, 634 [finding no plain error from an *Apprendi* violation involving a drug quantity enhancement because the evidence was "'overwhelming'" and "'essentially uncontroverted'"].)

Here, the trial court cited the following aggravating factors:

> Your crime involves the threat of great bodily harm. You used a deadly weapon, that being your car. The manner in which the crime was carried out indicated planning. Your prior convictions are numerous. And you have served nine prior prison terms in connection with those prior felony convictions.

---

6. *Apprendi v. New Jersey* (2000) 530 U.S. 466.

(12/20/05 18.) The court cited the same aggravating factors when imposing the upper term on the remaining counts. (12/20/05 RT 18-20.)

The latter two findings had already been made by the court when it found the prior conviction allegations true. Appellant previously had waived his right to a jury trial when he agreed the court could make those determinations. (3 RT 559-562.) Accordingly, he cannot now claim he had a right to a jury trial with respect to those sentencing factors.

As to the first two factors, that appellant's crimes involved the threat of great bodily harm and that he used a deadly weapon, his vehicle, in the commission of the crimes, the jury had essentially made those determinations when it convicted appellant of robbery and assault with a deadly weapon. Accordingly, he was not deprived of a jury determination with respect to those sentencing factors.

As to the planning factor, the evidence at trial showed that appellant drove to a residential area far from his home to commit a burglary. He cut open a back door screen and pried open the window. He filled a pillowcase with the victim's belongings, apparently without leaving any fingerprints, and left the scene. When he encountered the victim, he made up a story that her husband sent him with respect to "insurance." After threatening to strike the victim with his car, appellant left the scene. He then led several police officers on a high speed chase, managing to elude capture until he returned to his sister's apartment. Had the jury been asked to make this finding, it undoubtedly would have done so.

A single aggravating factor is sufficient to support the imposition of an upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728.) Here, the court listed two factors as to which appellant had already waived his right to a jury trial, two factors the jury had essentially found true by its verdicts, and one factor as to which appellant could present no contradictory evidence.

26

Accordingly, even if he could show he was deprived of his right to a jury trial as to some of the sentencing factors, he could not show prejudice.

## V.

## THE TRIAL COURT PROPERLY IMPOSED SERIOUS FELONY AND PRIOR PRISON TERM ENHANCEMENTS FOR APPELLANT'S 1985 BURGLARY CONVICTIONS

Appellant contends the trial court erred by imposing a five-year enhancement for a serious felony prior under section 667, subdivision (a) and imposing a one-year enhancement for a prior prison term under section 667.5, subdivision (b) for the same prior conviction. He did not object on this ground below. In any event, the record shows that he is mistaken.

As appellant acknowledges, he was convicted of two counts of residential burglary on March 29, 1985. The People's offer of proof on the prior conviction allegations shows that appellant entered a plea to the charges, which arose from two separate burglaries. (2 CT 556.) The abstract of judgment in that case, Santa Clara County No. 96269, shows the imposition of consecutive sentences for the two burglaries. (2 CT 545, contained in People's Exhibit 6 (§ 969, subd. (b) packet) 2 CT 528 et seq.; see 3 RT 570.) The information in this case, which alleged the prior burglary convictions from the 1985 case, specifically noted there were two counts of residential burglary on the same date. (1 CT 20 (§ 667.5, subd. (b) allegation), 24 (§ 667, subd. (a) allegation.) The information also alleged those two separate burglaries as two separate prior strike convictions. (1 CT 18.)

Appellant cites *People v. Jones* (1993) 5 Cal.4th 1142 for the proposition that the court could not impose both a section 667, subdivision (a) enhancement and a section 667.5, subdivision (b) enhancement for the same prior conviction. *Jones* involved imposition of both enhancements for a single prior offense of kidnapping. (*Id*. at pp. 1145, 1150.) The court concluded the enhancements applied to the same facts (*id*. at p. 1149), and that the voters had not intended that both enhancements should apply in such circumstances. (*Id*.

28

at p. 1153.)  Similarly, in *People v. Walker* (2006) 139 Cal.App.4th 782, 794, fn. 9, the court agreed that both enhancements could not be applied to a single conviction for rape.

Appellant cites no authority for the proposition that his sentence could not be enhanced with one prior burglary conviction under section 667, subdivision (a) and another prior burglary conviction under section 667.5, subdivision (b), where the evidence showed two separate burglary convictions for offenses committed on different dates and for which consecutive sentences had been imposed.

In *People v. Gonzales* (1993) 20 Cal.App.4th 1607, the court was faced with a similar situation.  The defendant had multiple prior convictions, for which the trial court had imposed multiple prior serious felony and prior prison term enhancements.  (*Id.* at p. 1609.)  Pursuant to *People v. Jones, supra,* 5 Cal.4th at p. 1150, the *Gonzales* court struck one prior prison term enhancement because a prior serious felony enhancement had also been imposed for the same conviction.  (*People v. Gonzales, supra,* 20 Cal.App.4th at p. 1610.)  However, as to another prior prison term enhancement, the court found the defendant had suffered two prior convictions, for which concurrent sentences had been imposed.  (*Ibid.*)  The trial court had also imposed a serious felony enhancement as to one of those prior convictions.  (*Ibid.*)

> The question presented, therefore, is does *Jones* preclude the court from imposing a one-year enhancement under section 667.5 when the prior prison term is based *in part* on the same case that also is the basis for imposition of a serious prior felony conviction (§ 667, subd. (a)), and based *in part* on a separate, independent case?  We conclude *Jones* does not preclude imposition of the section 667.5 one-year enhancement for the third prior prison term allegation.  In 1986, Gonzales was sentenced in case No. CRN-10532 to prison; in 1986, the court imposed a concurrent prison term in case No. CRN-11200. Each of these cases therefore provides an independent basis for the third prior prison allegation alleged against Gonzales in the amended information.  Each case involves a separate crime, which was

29

committed separately and brought and tried separately. In other words, case No. CRN-11200 could serve as a sufficient basis in and of itself to support the third prior prison allegation against Gonzales in the amended information.

(*People v. Gonzales, supra,* 20 Cal.App.4th at pp. 1610-1611, original italics.) The court thus found that *People v. Jones, supra,* 5 Cal.4th 1142, did not preclude imposition of the third prior prison enhancement. (*Gonzales, supra,* 20 Cal.App.4th at p. 1611.)

Here, appellant's 1985 convictions arose from two burglaries that were committed separately, and resulted in the filing of separate complaints. (2 CT 556; see 2 CT 644-650 [Report of Probation Officer, No. 96269].)[7] Although appellant was not tried separately, because he entered no contest pleas to both offenses in 1985, he was sentenced to consecutive prison terms for the two offenses. (2 CT 545, 556, 644.) As in *People v. Gonzales, supra,* 20 Cal.App.4th at p. 1611, "[e]ach of these cases . . . provides an independent basis for the third prior prison allegation . . . " and each "could serve as a sufficient basis in and of itself to support the third prior prison allegation . . . ."

Accordingly, appellant's claim that the court erred under *People v. Jones, supra,* 5 Cal.4th 1142, a case that did not address the instant situation, should be rejected. Appellant's two 1985 burglary convictions supported the imposition of both the section 667, subdivision (a) and the section 667.5, subdivision (b) enhancements. (*People v. Gonzales, supra,* 20 Cal.App.4th at pp. 1610-1611.) Appellant's claim that the section 667.5, subdivision (b) enhancement should have been stayed is therefore without merit.

---

7. In both burglaries, appellant used socks to hide his fingerprints (2 CT 645-646), raising the possibility he used socks in the instant offense, thus explaining the absence of fingerprints in the house, which he touted so highly below.

30

## · **CONCLUSION**

Accordingly, respondent respectfully requests that the judgment be

affirmed.

Dated: November 21, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

MARY JO GRAVES
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

RENE CHACON
Supervising Deputy Attorney General

*Joan Killeen*

JOAN KILLEEN
Deputy Attorney General

Attorneys for Respondent

SF2006400593
20067800.wpd

31

## CERTIFICATE OF COMPLIANCE

I certify that the attached RESPONDENT'S BRIEF uses a 13 point

Times New Roman font and contains 8928 words.

Dated: November 21, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of
California

*Joan Killeen*

JOAN KILLEEN
Deputy Attorney General

Attorneys for Respondent

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **People v. Homer Earl Hawkins**                          No.:**A112556**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or
older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service that same day in the ordinary course of business.

On November 21, 2006, I served the attached **RESPONDENT'S BRIEF** by placing a true copy
thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail
collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000,
San Francisco, CA 94102-7004, addressed as follows:

Ross Thomas
4104 24th Street, No. 411
San Francisco, CA 94114

First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, CA 94107

Honorable James P. Fox
District Attorney
400 County Center, Third Floor
Redwood City, CA 94063

Clerk of the Superior Court
400 County Center
Redwood City, CA 94063-1655

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on November 21, 2006, at San Francisco,
California.

| | |
|---|---|
| L. SORENSEN | _L. Sorensen_ |
| Declarant | Signature |

20068882.wpd

# EXHIBIT C

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

PEOPLE OF THE STATE OF CALIFORNIA, )
)
Plaintiff and Respondent, )  No. A112556
)  (San Mateo Co. Super. Ct.
v. )  No. SC058641)
)
HOMER EARL HAWKINS, )
)
Defendant and Appellant. )
_____ )

## APPELLANT'S REPLY BRIEF

Appeal from the Judgment of the Superior Court ·
of the State of California in and for the
County of San Mateo

HONORABLE JOHN GRANDSAERT, JUDGE

<div style="text-align:center">———————</div>

ROSS THOMAS
Attorney at Law, SBN 96184
4104 24th Street, No. 411
San Francisco, California 94114
Telephone: (415) 627-4052

Attorney for Appellant Hawkins

By Appointment of the Court of Appeal
Under the First District Appellate
Project's Independent Case System

# TOPICAL INDEX

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I     COUNT II MUST BE REVERSED BECAUSE
APPELLANT WAS DENIED HIS STATE AND
FEDERAL CONSTITUTIONAL RIGHTS TO
DUE PROCESS OF LAW AS A RESULT OF
THE TRIAL COURT'S FAILURE TO INSTRUCT
THE JURY *SUA SPONTE* ON GRAND THEFT
OF A PERSON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II    COUNTS III AND IV MUST BE REVERSED
BECAUSE THE EVIDENCE PRESENTED AT
TRIAL WAS INSUFFICIENT TO SUPPORT
THE JURY'S VERDICT THAT APPELLANT
ASSAULTED STEPHANIE NORTON AND
HER SON BENJAMIN WITH A DEADLY
WEAPON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III   APPELLANT'S 80-YEAR TO LIFE SENTENCE
CONSTITUTES CRUEL AND/OR UNUSUAL
PUNISHMENT IN VIOLATION OF THE
FEDERAL AND STATE CONSTITUTIONS . . . . . . . . . . . 7

IV   THE IMPOSITION OF THE AGGRAVATED
TERMS OF IMPRISONMENT VIOLATED
*BLAKELY V. WASHINGTON* AND APPELLANT'S
FEDERAL CONSTITUTIONAL RIGHTS TO
A JURY TRIAL UNDER THE SIXTH
AMENDMENT TO THE UNITED STATES
CONSTITUTION AND DUE PROCESS
UNDER THE FOURTEENTH AMENDMENT . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

# TOPICAL INDEX

CERTIFICATE OF COMPLIANCE WITH CALIFORNIA
RULES OF COURT, RULE 14, SUBDIVISION (c)(1) . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Blakely v. Washington* (2004) 524 U.S. 296 ........................................... 9

*Lenhard v. Wolff* (1979) 444 U.S. 807 .................................................. 7

*Rose v. Clark* (1986) 478 U.S. 570 ....................................................... 10

*Sullivan v. Louisiana* (1993) 508 U.S. 275 .......................................... 10

*United States v. Booker* (2005) 543 U.S. 220 ......................................... 9

### STATE CASES

*Canaan v. Abdelnour* (1985) 40 Cal.3d 703 ........................................... 8

*In re Tahl* (1969) 1 Cal.3d 122 .............................................................. 10

*People v. Berryman* (1993) 6 Cal.4th 1048 ........................................... 8

*People v. Cooksey* (2002) 95 Cal.App.4th 1407 .................................... 3

*People v. Hill* (1992) 3 Cal.4th 959 ...................................................... 1

*People v. Leigh* (1985) 168 Cal.App.3d 217 .......................................... 7

*People v. Morales* (1975) 49 Cal.App.3d 134 .................................... 2, 3

*People v. Rosales* (1984) 153 Cal.App.3d 353 ....................................... 8

*People v. Stratton* (1988) 205 Cal.App.3d 87 ....................................... 8

*People v. Vera* (1997) 15 Cal.4th 269 ................................................... 7

*People v. Welch* (1993) 5 Cal.4th 228 ................................................... 7

### STATUTES

Pen. Code § 487, subdivision (c) ........................................................... 2

## TABLE OF AUTHORITIES

### CONSTITUTIONS

Cal. Const., art. I, § 15 ............................................................................. 8

U.S. Const., Amend. V ........................................................................ 8, 9

U.S. Const., Amend. XIV ................................................................... 8, 9

### RULES OF COURT

Cal. Rules of Ct., rule 14, subd. (c)(1) ................................................. 12

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | No. A112556 |
| | ) | |
| v. | ) | |
| | ) | |
| HOMER EARL HAWKINS, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| | ) | |

## APPELLANT'S REPLY BRIEF
- - - - -

In this reply to respondent's brief, appellant has limited argument to those issues which additional briefing will be helpful to the Court, in the interest of brevity and to avoid redundancy. Appellant's omission of a discussion or a refutation on a particular argument, subargument, or allegation made by respondent does not constitute concession or waiver by appellant. (See *People* v. *Hill* (1992) 3 Cal.4th 959, 995, fn. 3.)

1

## ARGUMENTS

### I

### COUNT II MUST BE REVERSED BECAUSE APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AS A RESULT OF THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY *SUA SPONTE* ON  GRAND THEFT OF A PERSON

Appellant demonstrates in his opening brief that substantial evidence was adduced at trial that compelled the court to deliver instructions on grand theft from a person (Pen. Code § 487, subdivision (c)) in the absence of a request by trial counsel.  Unfortunately, the court failed to meet this duty and as a result the judgment of conviction must now be reversed.

In establishing his position, appellant relies on *People v. Morales* (1975) 49 Cal.App.3d 134.  There, the defendant grabbed an elderly woman's purse.  The victim fell to the ground and died several days later as a result of her injuries. An eyewitness testified that the defendant pushed the victim when grabbing her purse.  The defendant was subsequently convicted of both first-degree murder and robbery.   On review he argued that the trial court erred in not instructing the jury on grand theft person.   The Court of Appeal agreed, ruling  that "the evidence . . . left sufficiently open the question of whether the element of force was present so as to entitle the defendant to have the jury consider the matter."  (*Id.* at p. 140.)

2

Like the defendant in *Morales,* appellant had only a momentary contact with the victim. Moreover, both appellant and Norton behaved in a way that could support a finding that theft was committed without the requisite force or fear. As in *Morales*, the evidence left sufficiently open the question whether the element of force was present. Consequently, the jury should have been instructed on grand theft person.

Respondent answers this argument with *People v. Cooksey* (2002) 95 Cal.App.4th 1407, a case where the defendant physically struggled with the victim for two minutes before making off with her purse and, as result, the trial court refused to instruct on grand theft of a person.   (RB 13-14.)[1]   As is apparent, this case in no way compares favorably to the case at hand. Here, Norton intercepted appellant at his car, demanded that he return her property, and attempted to stop him from driving away. (2CT 330, 332.) Moreover, she attempted to stop appellant and regain her property while at the same time holding her three-year old son in her arms. (2CT 330.) Additionally, the victim, Norton, testified that appellant did not behave aggressively toward her or young Benjamin when she sought the return of her things.  (2RT 367.) Instead, he warned her to step away from his car prior to driving away. (2RT

---

[1]

Prior to the struggle, the defendant in *Cooksey* ran up to the victim from behind and grabbed her with both hands. (*People v. Cooksey, supra,* 95 Cal.App.4th at p. 1410.) There was no phyiscal contact between appellant and Norton.

332-334.) These facts, particularly Norton's confrontation of appellant while holding her small child, could have permitted the jury to conclude that appellant was guilty of no greater crime than grand theft of a person if it had been properly instructed.

Respondent concludes his argument with the claim that the error was harmless. (RB 14.) However, he offers the Court nothing more than a talismanic declaration that appellant "took the property from Norton's immediate presence by force or fear." (*Ibid.*) Respondent fails to address the relevant fact noted in the preceding paragraph, particularly Norton's testimony that appellant did not behave aggressively towards her or her son and the fact Norton attempted to retrieve her property while at the same time holding her toddler. These and other facts, noted both here and in the opening brief, demonstrate that the error was prejudicial to appellant.

For these reasons and those set forth in appellant's opening brief, Count II must be reversed.

//

//

4

**II**

## COUNTS III AND IV MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT THAT APPELLANT ASSAULTED STEPHANIE NORTON AND HER SON BENJAMIN WITH A DEADLY WEAPON

Appellant was convicted of assaulting with a deadly weapon both Stephanie Norton and her son. According to the prosecution, the assault occurred when appellant drove from Norton's home in his automobile.

In his opening brief, appellant demonstrates that the convictions must be reversed because they were based on suspicion, surmise, and speculation as opposed to substantial evidence as required by the due process clause of both the federal and state constitutions. (U.S. Const., Amends. V, XIV; Cal. Const., §§ 7, 15.) The facts reveal that the prosecution failed to present substantial evidence that appellant contemplated battering Norton and Benjamin when he drove away.

Respondent takes an opposite view. However, in doing so, he muddies the water by focusing attention on the principle that "an assault does not require an intent to cause injury to another person or an actual awareness of the risk that injury might occur to another." (RB 17.)

Appellant does not dispute this principle or the fact that the jury was correctly instructed on the charged crime. Instead, he argues that the evidence

5

presented at trial failed to establish that he contemplated committing a battery against Norton and her child when he drove from the house. In fact, the evidence demonstrates just the opposite. Appellant advised Norton twice to step away from the Mercedes. These warnings demonstrate that it was appellant's intent to leave without hurting Norton or Benjamin.

/ /

/ /

6

## III

### APPELLANT'S 80-YEAR TO LIFE SENTENCE CONSTITUTES CRUEL AND/OR UNUSUAL PUNISHMENT IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS

In his opening brief, appellant argues that his 33-year to life sentence violated the prohibition against cruel and unusual punishment contained in both the California and United States Constitutions. Respondent answers, in part, that this issue has not been preserved for appeal because appellant failed to raise it in the trial court. (RB 20-21.)

Respondent's position is meritless because the constitutionality of appellant's sentence is not subject to waiver. (See *People v. Leigh* (1985) 168 Cal.App.3d 217, 223-224; 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) §1336, pp. 1559-1560; *Lenhard v. Wolff* (1979) 444 U.S. 807, 811 [Marshall, J., dissenting] ["Society's independent stake in enforcement of the Eighth Amendment's prohibition against cruel and unusual punishment cannot be overridden by a defendant's purported waiver."]; see also *People v. Vera* (1997) 15 Cal.4th 269, 276-277 [errors implicating fundamental constitutional rights may be noticed on appeal even in the absence of an objection].) In fact, a sentence that constitutes cruel and unusual punishment is an unauthorized sentence which may be corrected at any time. (*People v. Welch* (1993) 5 Cal.4th 228, 235-236.)

7

Even if this were not so, an appellate court has the authority to reach a question that has not been preserved for review by a party, and appellant respectfully requests that the Court do so in this case if it concludes that the waiver doctrine applies to claims of error under the state and federal cruel and unusual punishment clauses. (E.g., *Canaan v. Abdelnour* (1985) 40 Cal.3d 703, 722, fn. 17; *People v. Berryman* (1993) 6 Cal.4th 1048, 1072-1076 [passing on a claim of prosecutorial misconduct that was not preserved for review].)

Finally, assuming for argument's sake only that the claim was waived, then trial counsel's failure to object below obviously lacked any possible tactical justification and constituted ineffective assistance of counsel in violation of the state and federal constitutions. (U.S. Const., Amends. VI, XIV; Cal. Const., art. I, § 15; cf. *People v. Rosales* (1984) 153 Cal.App.3d 353, 360-361; *People v. Stratton* (1988) 205 Cal.App.3d 87, 94 [relief on grounds of ineffective assistance of counsel proper on direct appeal where no possible tactical reason appears for counsel's act or omission].)

For these reasons and those set forth in appellant's opening brief, the sentence must be vacated.

8

IV

## THE IMPOSITION OF THE AGGRAVATED TERMS OF IMPRISONMENT VIOLATED *BLAKELY V. WASHINGTON* AND APPELLANT'S FEDERAL CONSTITUTIONAL RIGHTS TO A JURY TRIAL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

Appellant in his opening brief argues that the aggravated term imposed by the court on each of the five counts must be reduced to the midterm because he was denied his federal constitutional right to a jury determination that the factors which supported the trial court's imposition of the aggravated terms were true beyond a reasonable doubt. (U.S. Const., Amends. VI, XVI; *United States v. Booker* (2005) 543 U.S. 220; *Blakely v. Washington* (2004) 524 U.S. 296.)

Respondents disagrees. He contends, in part, that the claim was waived because appellant's trial counsel failed to object at the time of sentencing on the ground set forth in the opening brief. (RB 24.) This position is without merit.

Appellant concedes in his opening brief that he did not object to the trial court's action. This omission, however, does not preclude the Court's review of the claim at hand. The trial court's usurpation of the jury's role violated appellant's fundamental constitutional rights to substantive due

9

process and trial by jury and no objection at trial was required to preserve the issue for appeal. (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 280; see *Rose v. Clark* (1986) 478 U.S. 570, 578.) Moreover, given the importance of the constitutional right to a jury trial (*In re Tahl* (1969) 1 Cal.3d 122, 129, fn.4 ["California law has long required that waiver of a jury trial be express. [Citation.]"] a reviewing court should not find that a claim based on the right to a jury trial has been implicitly forfeited by mere inaction unless there is no substantial doubt about the matter. Accordingly, the waiver/forfeiture doctrine should not be applied in the case at hand.

For these reasons and those set forth in the opening brief, appellant's sentence must be vacated.

/ /

/ /

10

## CONCLUSION

For the foregoing reasons, Counts II, III, and IV must be reversed and

the cause remanded to the trial court for resentencing.

DATED:  December 11, 2006

Respectfully submitted,


ROSS THOMAS
Attorney for Appellant Hawkins

11

## CERTIFICATE OF COMPLIANCE WITH CALIFORNIA RULES OF COURT, RULE 14, SUBDIVISION (c)(1)

I certify that pursuant to California Rules of Court, rule 14, subdivision

(c)(1) the attached appellant's reply brief contains 2234 words.

Dated: December 11, 2006

ROSS THOMAS
Attorney for Appellant Hawkins

12

## DECLARATION OF SERVICE

People v. Hawkins                                                              No. A112556

I, the undersigned, declare that I am over the age of 18 years and am not a party to the within cause; my business address is 4104 24th Street, Ste., 411, San Francisco, California 94114. I served a true copy of the attached:

### APPELLANT'S REPLY BRIEF

on each of the following by placing same in an envelope (or envelopes) addressed respectively as follows:

ATTORNEY GENERAL                          HOMER HAWKINS
455 Golden Gate Avenue                       (Appellant)
San Francisco, California 94102

FIRST DISTRICT APPELLATE PROJECT
730 Harrison, Ste. 201
San Francisco, California 94107

CLERK, SUPERIOR COURT
County of San Mateo
400 County Center
Redwood City, California 94063

DISTRICT ATTORNEY
County of San Mateo
400 County Center
Redwood City, California 94063

Each said envelope was then on December 11, 2006, sealed and deposited in the United States Mail with the postage fully prepaid.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed on the 11th day of December, 2006.

_____
DECLARANT

# EXHIBIT D

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | No. A112556 |
| | ) | (San Mateo Co. Super. Ct. |
| v. | ) | No. SC058641) |
| | ) | |
| HOMER EARL HAWKINS, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| | ) | |

## PETITION FOR REVIEW

ROSS THOMAS
Attorney at Law, SBN 96184
4104 24th Street, No. 411
San Francisco, California 94114
Telephone: (415) 627-4052

Attorney for Appellant Hawkins

By Appointment of the Court of Appeal
Under the First District Appellate
Project's Independent Case System

**TOPICAL INDEX**

Page

QUESTIONS PRESENTED ................................... 2

WHY REVIEW SHOULD BE GRANTED ....................... 2

STATEMENT OF CASE .................................... 5

STATEMENT OF FACTS .................................. 5

ARGUMENTS ........................................... 6

    I       REVIEW SHOULD BE GRANTED TO DETERMINE
           WHETHER APPELLANT WAS DENIED HIS SIXTH
           AMENDMENT RIGHT TO A JURY DETERMINATION
           THAT THE RECIDIVIST AND NON-RECIDIVIST
           OFFENSE-RELATED FACTS WHICH SUPPORTED
           THE TRIAL COURT'S IMPOSITION OF THE
           AGGRAVATED TERM WERE TRUE BEYOND A
           REASONABLE DOUBT .......................... 6

    II      REVIEW SHOULD BE GRANTED TO DETERMINE
           WHETHER APPELLANT'S CONSTRUCTIVE
           TOUCHING OF THE VICTIM DURING THE THEFT
           SUPPORTED INSTRUCTION OF THE JURY ON
           GRAND THEFT OF A PERSON ................... 10

    III     REVIEW SHOULD BE GRANTED TO DETERMINE
           WHETHER APPELLANT WAS DENIED HIS
           FEDERAL AND STATE CONSTITUTIONAL
           RIGHTS TO DUE PROCESS BECAUSE THE
           CONVICTIONS FOR ASSAULT WITH A DEADLY
           WEAPON WERE NOT SUPPORTED BY LEGALLY
           SUFFICIENT EVIDENCE ....................... 13

# TOPICAL INDEX

IV    REVIEW SHOULD BE GRANTED TO DETERMINE
WHETHER APPELLANT'S SENTENCE OF 80
YEARS TO LIFE IN PRISON CONSTITUTED
CRUEL AND/OR UNUSUAL PUNISHMENT IN
VIOLATION OF THE FEDERAL AND STATE
CONSTITUTIONS .............................. 16

CONCLUSION ........................................... 18

CERTIFICATE OF COMPLIANCE WITH CALIFORNIA
RULES OF COURT, RULE 8.504, SUBDIVISION (d)(1) ........... 19

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Almendarez-Torres v. United States* (1998) 523 U.S. 224 .................... 8

*Apprendi v. New Jersey* (2000) 530 U.S.466 ..................................... 6, 8

*Blakely v. Washington* (2004) 524 U.S. 296 ..................................... 4, 7

*Cunningham v. California* (2007) 549 U.S. ____ [127 S.Ct. 856] ... 4, 7

*Ewing v. California* (2003) 538 U.S. 11 .............................................. 17

*Jackson v. Virginia* (1979) 443 U.S. 307 ............................................ 13

*Lockyer v. Andrade* (2003) 538 U.S. 63 .............................................. 17

*Ring v. Arizona*, 536 U.S. 584, 153 L.Ed.2d 556 .................................. 6

*Shepard v. United States* (2005) 544 U.S. 13 ......................................... 8

*United States v. Booker* (2005) 543 U.S. 220 ..................................... 4, 7

*Washington v. Recuenco* (2006) 546 U.S. __ [126 S.Ct. 2546] ............ 8

## STATE CASES

*In re Jesus O.* (2007) 40 Cal.4th 859 .............................................. 10, 11

*In re Sassounian* (1995) 9 Cal.4th 535 ................................................. 13

*People v. Austin* (1994) 23 Cal.App.4th 1596 ....................................... 14

*People v. Boyer* (2006) 38 Cal.4th 412 ................................................. 13

*People v. Carmony* (2005) 127 Cal.App.4th 1066 ............................... 17

*People v. Chatman* (2006) 38 Cal.4th 344 ........................................... 13

*People v. Church* (1897) 116 Cal. 300 ................................................. 12

# TABLE OF AUTHORITIES

## STATE CASES

*People v. Hicks* (1993) 6 Cal.4th 784 .................................................... 16

*People v. Johnson* (1980) 26 Cal.3d 557 .............................................. 13

*People v. Killibrew* (2002) 103 Cal.App.4th 644 ........................... 13, 14

*People v. Kraft* (2000) 23 Cal.4th 978 ................................................. 14

*People v. McElroy* (1897) 116 Cal. 583 ............................................... 11

*People v. Memro* (1985) 38 Cal.3d 658 .............................................. 14

*People v. Morales* (1975) 49 Cal.App.3d 134 ..................................... 12

*People v. Morris* (1988) 46 Cal.3d 1 .............................................. 13, 14

*People v. Page* (2004) 123 Cal.App.4th 1466 ..................................... 15

*People v. Palmer* (2001) 24 Cal.4th 856 ............................................. 14

*People v. Raley* (1992) 2 Cal.4th 870 .................................................. 14

*People v. Rocha* (1971) 3 Cal.3d 893 .................................................. 15

*People v. Slaughter* (2002) 27 Cal.4th 1187 ....................................... 13

*People v. Thompson* (1980) 27 Cal.3d 303 .......................................... 14

*People v. Wright* (2002) 100 Cal.App.4th 703 ............................... 15, 16

## CONSTITUTIONS

Cal. Const., art. I, § 7 ................................................................. 10, 13

Cal. Const., art. I, § 15 ............................................................... 10, 13

Cal. Const, art. I, § 17 ....................................................................... 17

U.S. Const., Amend. V ............................................................. 4, 10, 13

# TABLE OF AUTHORITIES

## CONSTITUTIONS

U.S. Const., Amend. VIII ...................................................................... 17

U.S. Const., Amend. XIV .......................................................... 4, 10, 13

## STATUTES

Pen. Code § 487, subd. (c) ...................................................................... 3

## RULES OF COURT

Cal. Rules of Ct., rule 8.500, subd. (b)(1) .............................................. 2

Cal. Rules of Ct., rule 8.504, subd. (d)(1) ............................................. 19

Cal. Rules of Ct., rule 8.512, subd. (d)(2) ............................................... 4

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA, )
                                    )
                Plaintiff and Respondent,  )      No. A112556
                                    )
v.                                  )
                                    )
HOMER EARL HAWKINS,                 )
                                    )
                Defendant and Appellant.  )
_____ )

## PETITION FOR REVIEW

TO: THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Pursuant to rule 8.500, subdivision (a)(1) of the California Rules of Court, appellant, Homer Earl Hawkins, respectfully requests that this Court grant a petition for review following the June 19, 2007, issuance of an unpublished opinion in People v. Hawkins, A112556, in which the Court of Appeal, First Appellate District, Division Five, affirmed appellant's conviction. A copy of the Court of Appeal's opinion and July 9, 2007 order denying appellant's petition for rehearing are attached herein as "Appendix."

1

## QUESTIONS PRESENTED

1.      Whether appellant was denied his Sixth Amendment right to a jury determination that recidivist and non-recidivist offense-related factors which supported the trial court's imposition of the aggravated term were true beyond a reasonable doubt?

2.      Whether constructive touching of the victim by the perpetrator during a theft is sufficient to support the delivery of instruction on grand theft of a person?

3.      Whether appellant was denied his federal and state constitutional rights to due process because the convictions for assault with a deadly weapon were not supported by legally sufficient evidence?

4.      Whether appellant's sentence of 80 years to life in prison constitutes cruel and/or unusual punishment in violation of the federal and state constitutions?

## WHY REVIEW SHOULD BE GRANTED

The issues set forth above present important questions of law which this Court should resolve.  (Cal. Rules of Ct., rule 8.500, subd. (b)(1).)

The Court should grant review to determine whether appellant was denied his federal constitutional right to trial by jury when the trial court imposed aggravated terms of imprisonments relying on factors not found true

2

beyond doubt by a jury.

Additionally, the Court should take this opportunity to determine whether a constructive touching of the victim by the perpetrator during the theft is sufficient to support the deliver of instruction on grand theft of a person (Pen. Code § 487, subd. (c)) as a lesser included offense of robbery.

\* \* \*

When imposing the upper terms for the burglary charged in Count I, the trial court identified four aggravating factors. It stated:

> I am using the aggravated term because circumstances in aggravation greatly outweigh circumstances in mitigation. Your crime involves the threat of great bodily harm. You used a deadly weapon, that being your car. The manner in which the crime was carried out indicated planning. Your prior convictions are numerous. And you have served nine prior prison terms in connection with those prior felony convictions.

RT 12/20/05 18.) The court also relied on these same factors when imposing aggravated terms on Counts II through V. (RT 12/20/05 18)

Appellant argued on review that the aggravated term on each of the five counts must be reduced to the midterm because he was denied his federal constitutional right to a jury determination that the factors which supported the

3

trial court's imposition of the aggravated terms were true beyond a reasonable doubt. (U.S. Const., Amends. VI, XVI; *Cunningham v. California* (2007) 549 U.S. __ [127 S.Ct. 856]; *United States v. Booker* (2005) 543 U.S. 220; *Blakely v. Washington* (2004) 524 U.S. 296.) The Court of Appeal rejected this claim in its entirety. (Slip opn., pp. 7-9.)

This case vividly demonstrates the need for guidance from this Court regarding the application of *Cunningham*. Appellant recognizes that such guidance is soon to be issued in the series of cases currently before it. (See *People v. French*, rev. gr. 2/7/07 (S148845/C050785); *People v. Hernandez*, rev. gr. 2/7/07 (S148974/D047682); *People v. Mvuemba*, rev. gr. 2/7/07 (S149247/B186622); *People v. Pardo*, rev. gr. 2/7/07 (S148914/E039420); *People v. Sandoval*, rev. gr. 2/7/07 (S148917/B187977).) He respectfully requests that his petition be granted pursuant to California Rules of Court, rule 8.512, subdivision (d)(2) and any further action by the Court be deferred until these cases are decided.

Appellant also argued in the Court of Appeal that he was denied his federal and state constitutional right to due process of law (U.S. Const., Amends. V, XIV; Cal. Const., art. I, §§ 7, 15) as a result of the trial court's failure to instruct the jury *sua sponte* on grand theft of a person as a lesser included offense of the charged robbery. The reviewing court rejected this

4

claim, citing the fact that appellant never personally touch the identified victim during the theft. (Slip opn, p. 4.) In a petition for rehearing, appellant noted that the victim attempted to prevent the theft by hanging onto the door of appellant's car when he started to drive away. He argued that this was sufficient evidence of "touching" to warrant the delivery of instruction on grand theft from a person. The request for rehearing was denied by the Court of Appeal. (See "Appendix.")

Review is additionally sought to preserve the claims so that appellant may pursue the case in the federal courts should this Court deny the petition.

## STATEMENT OF CASE

By this reference, appellant adopts the statement of case in the Court of Appeal's decision. (Slip opn., p. 3.)

## STATEMENT OF FACTS

By this reference, appellant adopts the statement of facts in the Court of Appeal's decision. (Slip opn., pp. 1-2.)

5

## ARGUMENTS

## I

## REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO A JURY DETERMINATION THAT THE RECIDIVIST AND NON-RECIDIVIST OFFENSE-RELATED FACTS WHICH SUPPORTED THE TRIAL COURT'S IMPOSITION OF THE AGGRAVATED TERM WERE TRUE BEYOND A REASONABLE DOUBT

It is now established that, by placing sentence elevating fact-finding within the province of the judge, not the jury, California's Determinate Sentencing Law (DSL) violates a criminal defendant's right to trial by jury, with proof beyond a reasonable doubt, guaranteed by the Sixth and Fourteenth Amendments. (*Cunningham v. California* (2007) 549 U.S. __ [127 S.Ct. 856].)

The United States Supreme Court very recently opined in *California v. Cunningham*, *supra*, 127 S.Ct. at pp. 860, 871:

> As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435

6

(2000); *Ring v. Arizona,* 536 U.S. 584, 153 L. Ed. 2d 556 (2002); *Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403 (2004); *United States v. Booker,* 543 U.S. 220, 160 L. Ed. 2d 621 (2005). "[T]he relevant 'statutory maximum,'" this Court has clarified, "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely,* 542 U.S., at 303-304 (emphasis in original)

. . .Contrary to the *Black* court's holding, our decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum. Because the DSL [Determinate Sentencing Law] authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent.

When imposing the upper terms for the burglary charged in Count I, the trial court identified four aggravating factors. It stated:

I am using the aggravated term because circumstances in aggravation greatly outweigh circumstances in mitigation. Your crime involves the threat of great bodily harm. You used a

7

> deadly weapon, that being your car. The manner in which the
>
> crime was carried out indicated planning. Your prior
>
> convictions are numerous. And you have served nine prior
>
> prison terms in connection with those prior felony convictions.

RT 12/20/05 18.) The court also relied on these same factors when imposing

aggravated terms on Counts II through V. (RT 12/20/05 18)

Appellant's sentence is unconstitutional. The trial court made

additional factual findings and utilized them to justify imposition of the

upper terms. Under *Cunningham*, this procedure violated appellant's Sixth

and Fourteenth Amendment rights to a jury trial by proof beyond a

reasonable doubt.

The error was not harmless. (See *Washington v. Recuenco* (2006) 546

U.S. __ , __ [126 S.Ct. 2546, 2553].) Although some of the trial court's

reasons relate to recidivism, the *Almendarez-Torres v. United States* (1998)

523 U.S. 224 exception to the right to a jury trial, should be read very

narrowly and applies only to the mere fact of a prior conviction. (*Shepard*

*v. United States* (2005) 544 U.S. 13, 25 (plurality opn.).) Moreover, the

exception is on very shaky ground. The Court in *Apprendi v. New Jersey*

(2000) 530 U.S.466, while criticizing *Almendarez-Torres*, left it intact,

because the petitioner in *Apprendi* did not challenge it. (*Id.* at p. 490.)

8

Moreover, as the Court noted, the defendant in *Almendarez-Torres* did not question the accuracy of the fact of his conviction. (*Id*. at p. 488.) In addition, the fifth vote in the 5-4 *Almendarez-Torres* majority, Justice Thomas, later recognized that his vote in that case was wrong. (*Id*. at p. 520.)

For these reasons, the aggravated terms must be vacated and the cause remanded to the trial court for further proceedings.

/ /

/ /

9

## II

## REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER APPELLANT'S CONSTRUCTIVE TOUCHING OF THE VICTIM DURING THE THEFT SUPPORTED INSTRUCTION OF THE JURY ON GRAND THEFT OF A PERSON

Appellant argued in the Court of Appeal that substantial evidence was adduced at trial that supported the delivery of instruction on grand theft from a person (Pen. Code § 487, subdivision (c)). Thus, the trial court had a *sua sponte* duty to instruct on this lesser included offense of the robbery charged in Count II. Unfortunately, the court failed to meet this duty and deliver the requisite instruction. As a result appellant was denied his federal and state constitutional rights to due process of law. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, §§ 7, 15.)

Citing *In re Jesus O.* (2007) 40 Cal.4th 859, the Court of Appeal rejected this claim, finding that there was no evidence that appellant took the property from the victim. (Slip opn., p. 4.) In his petition for rehearing, appellant explained that the victim's attempt to stop appellant from taking her property by placing her hand on the door of the of appellant's automobile was sufficient to support the instruction of the jury on grand theft from a person.

Appellant also distinguished his case from *Jesus O.* There, the

10

defendant and his crime partner assaulted the victim with the intent to steal property. The victim fled his assailants, dropping his cell phone as he did. Thereafter, the crime partner retrieved the phone. On review, the defendant argued that these facts did not support a conviction for grand theft from a person. (*Id.* at pp. 561-562.) This Court rejected the claim, concluding that "[w]hen someone, intending to steal, causes property to become separated from the victim's person, then gains possession of the property, the theft is from the person." (*Id.* at p. 861.) Here, appellant did not separate the property from Norton and then gain control of it. This factual difference, however, does not bar a conviction of the grand theft from a person in the case at bar.

Key to the resolution of *Jesus O*, was the Court's consideration of whether, "to be a taking from the person, 'the property must be actually on, or attached to, the person, or merely under the eye, or within the immediate reach, and so constructively within the control of the owner.'" (*Id.* at p. 863, quoting *People v. McElroy* (1897) 116 Cal. 583, 585.) Making this same determination in appellant's case establishes that Norton was sufficiently attached to the bag of property through the placement of her hand on the Mercedes to require instruction on grand theft from a person. This scenario is comparable to the victim who clutches the strap of her purse as a thief

11

attempts to take the purse. (See *People v. Church* (1897) 116 Cal. 300, 303; *People v. Morales* (1975) 49 Cal.App.3d 134.) The victim in the case at hand was effectively hanging onto her property by placing her hand on the car door in order to prevent appellant from accomplishing the taking. Accordingly, if properly instructed, the jury could have found appellant guilty of grand theft from a person.

For these reasons, review should be granted and the robbery conviction reversed.

/ /

/ /

12

## III

## REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER APPELLANT WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS BECAUSE THE CONVICTIONS FOR ASSAULT WITH A DEADLY WEAPON WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE

A conviction unsupported by substantial evidence denies a defendant due process of law. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318; *People v. Boyer* (2006) 38 Cal.4th 412, 479; U.S. Const., Amends. V, XIV; Cal. Const., art. I, §§ 7, 15.)

When addressing a challenge to the sufficiency of evidence, this Court must decide whether, viewing the evidence and inferences therefrom in a light favorable to the prosecution, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Chatman* (2006) 38 Cal.4th 344, 389; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) "Substantial evidence" is evidence of "ponderable legal significance reasonable in nature, credible, and of solid value." To be "substantial," the evidence must reasonably inspire confidence. (*People v. Morris* (1988) 46 Cal.3d 1, 19, overruled on other grounds, *In re Sassounian* (1995) 9 Cal.4th 535, 544, fn. 5; *People v. Johnson, supra,* 26 Cal.3d 557, 578.) The court's focus is "on the whole record, not isolated bits of evidence." (*People v. Killibrew* (2002)

13

103 Cal.App.4th 644,  660;  see also *People v. Slaughter*  (2002) 27 Cal.4th

1187, 1203.) The Court is to presume the existence of every fact the trier of

fact could reasonably deduce from the evidence that supports the verdict.

(*People v. Kraft* (2000) 23 Cal.4th 978, 1053; *People v. Killibrew*, *supra*, 103

Cal.App.4th at p. 660.)

Additionally, reasonable inferences from the evidence must be based

on substantial evidence, not on suspicion, speculation, supposition, surmise,

or conjecture. (*People v. Raley* (1992) 2 Cal.4th 870, 891; *People v. Morris*,

*supra*, 46 Cal.3d at p. 21; *People v. Austin* (1994) 23 Cal.App.4th 1596,

1604, overruled on another ground, *People v. Palmer* (2001) 24 Cal.4th 856,

861.) A finding based on conjecture or surmise cannot be affirmed. (*People*

*v. Memro* (1985) 38 Cal.3d 658, 694.) This is because suspicion is not

evidence; it only raises a possibility, which will not support an inference of

fact. To justify a conviction, the trier of fact must be persuaded to a near

certainty. Even a strong suspicion is insufficient to support the finding.

(*People v. Thompson* (1980) 27 Cal.3d 303, 324.)

Turning to the case *sub judice*, the facts make it plain that appellant's

assault with a deadly weapon convictions were based on suspicion, surmise,

and speculation as opposed to substantial evidence.  Absent from the

prosecution's case was evidence that appellant intended to commit battery

14

against Stephanie Morton and her son, Benjamin.

An assault is statutorily defined as "an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another," or in other words, it is an attempt to commit a battery. (*People v. Colantuono* (1994) 7 Cal.4th 206, 214; *People v. Page* (2004) 123 Cal.App.4th 1466, 1472.) Thus, the evidence must establish that when acting the defendant contemplated committing a battery against the victim. (*People v. Rocha* (1971) 3 Cal.3d 893, 900; *People v. Wright* (2002) 100 Cal.App.4th 703, 715.)

The evidence presented at trial failed to establish that appellant contemplated committing a battery against Norton and her child when he drove from the house. In fact, the evidence demonstrates just the opposite. Appellant advised Morton twice to step away from the Mercedes. These warnings demonstrate that it was appellant's intent to leave without hurting Norton or Benjamin. Thus, any conclusion that appellant assaulted the identified victims was necessarily based on suspicion, speculation, supposition, surmise, and conjecture.

For these reasons, review should be granted and convictions on Counts III and IV must be reversed.

15

## IV

### REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER APPELLANT'S SENTENCE OF 80 YEARS TO LIFE IN PRISON CONSTITUTED CRUEL AND/ OR UNUSUAL PUNISHMENT IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS

As aptly noted by the late Justice Mosk, "many criminal sentences have crossed the bounds of reason in this state." (*People v. Hicks* (1993) 6 Cal.4th 784, 797 (Mosk, J., dissenting).) "A sentence . . . that cannot possibly be completed in the defendant's lifetime makes a mockery of the law and amounts to cruel and unusual punishment." (*Ibid.*; see Mosk, Nothing Succeeds Like Excess (1993) 26 Loyola L.A. L.Rev. 981.) Justice Mosk reiterated these beliefs in a concurring opinion *People v. Deloza* (1998) 18 Cal.4th 585: "[A] sentence of 111 years in prison is impossible for a human being to serve, and therefore violates both the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution and the cruel or unusual punishment clause of article I, section 17 of the California Constitution." (*Id.* at p. 600.) Justice Mosk explained that "[a] grossly excessive sentence can serve no rational legislative purpose, under either a retributive or utilitarian theory of punishment. It is gratuitously extreme and demeans the government inflicting it as well as the individual on whom it is inflicted." (*Id.* at pp. 601-602.)

16

Justice Mosk's remarks are clearly applicable to the present case. Realistically, appellant, who is now 51 years old, cannot complete his sentence. (2CT 700.) Thus, punishment such as this "makes a mockery of the law and amounts to cruel and unusual punishment," in violation of the United States and California Constitutions. (*People v. Hicks, supra,* 6 Cal.4th at p. 797 (Mosk, J., dissenting); U.S. Const., 8th Amend.; Cal. Const, art. I, § 17; accord, *Ewing v. California* (2003) 538 U.S. 11; *Lockyer v. Andrade* (2003) 538 U.S. 63; see also *People v. Carmony* (2005) 127 Cal. App. 4th 1066) Accordingly, review should be granted and the cause must be remanded for resentencing.

/ /

/ /

17

## CONCLUSION

For the foregoing reasons, appellant respectfully requests that review

be granted in this case.

DATED: July 17, 2007

Respectfully submitted,


ROSS THOMAS
Attorney for Appellant Hawkins

18

## CERTIFICATE OF COMPLIANCE WITH CALIFORNIA RULES OF COURT, RULE 8.504, SUBDIVISION (d)(1)

I certify that pursuant to California Rules of Court, rule 8.504,

subdivision (d)(1) the attached petition for review contains 3356 words.

Dated: July 17, 2007

ROSS THOMAS
Attorney for Appellant Hawkins

19

# APPENDIX

Filed 6/19/07  P. v. Hawkins CA1/5
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>HOMER EARL HAWKINS,<br><br>　　　Defendant and Appellant. | A112556<br><br>(San Mateo County<br>Super. Ct. No. SC058641) |

　　　Defendant Homer Earl Hawkins was convicted of five felonies including residential burglary, robbery, assault with a vehicle likely to produce great bodily injury, and evading a police officer. As a third strike defendant, he was sentenced to 80 years to life imprisonment. He challenges his convictions for robbery and assault with a deadly weapon and several aspects of his sentence. We affirm.

### BACKGROUND

　　　Stephanie Norton arrived home around noon with her two-year-old son, Benjamin, and noticed an unfamiliar blue Mercedes Benz parked in her driveway. Norton picked up her son and looked to see if anyone was at her front door. After returning to the driveway, she saw a man she later identified as Hawkins coming around the side of the house with a bag in his hand. Norton asked, "Who are you and what are you doing?" He said he was there from "the insurance" and that her husband sent him. Norton noticed that Hawkins was carrying a full pillowcase and was walking quickly toward the driver's

1

side of the Mercedes. Suspecting she was being robbed, she walked to the driver's side of the Mercedes to intercept Hawkins, still holding Benjamin in her arms. Hawkins sat in the driver's seat and placed the pillowcase on the passenger seat. Norton stood in the open doorway with her hand on the door.

Norton told Hawkins, "That's our stuff. Give that back." Hawkins started the car and told her she better get out of the way. Norton stayed put and Hawkins started rolling the car backward a few inches. Hawkins, speaking in a "serious sort of loudish and gruff tone," again said Norton better get out of the way. He did not cuss or act like he was going to attack Norton, but she was afraid she would be hit by the door if she did not get out of the way. Hawkins then backed up the car very fast and Norton moved out of the way. "[H]e gunned it. All of a sudden it started shooting backwards." The tires spun and kicked up gravel from the driveway. Norton would have been hit if she had not moved quickly out of the way. "The door was moving right at me, and the wheels were practically right next to me."

Norton called the police. Two sheriff's deputies spotted the Mercedes on the road and pursued it in marked vehicles with their lights and sirens activated. Hawkins drove at excessive speeds and ran several stop signs during this pursuit. The sheriff's deputies lost sight of the car, but a police officer quickly located it parked near its registered address. Hawkins was standing on the passenger side of the parked car and the pillowcase was on the ground near him. Following a foot chase, the officer apprehended Hawkins and placed him under arrest.

When Norton entered her house after Hawkins drove away, she saw that the screen on the back door had been cut and the window raised. Several items of personal property were missing from the house. This property was recovered from Hawkins' possession following his arrest.

2

Hawkins was charged by information with first degree burglary (Pen. Code, § 460, subd. (a)[1]; count 1); robbery (§ 212.5, subd. (c); count 2); two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3, 4); and evasion of a police officer (Veh. Code, § 2800.2; count 5). It was alleged that Hawkins had four serious felony convictions within the meaning of section 1170.12, subdivision (c)(2); he had three serious felony convictions within the meaning of section 667, subdivision (a) (hereafter, section 667(a)); and he served nine prior prison terms within the meaning of section 667.5, subdivision (b) (hereafter, section 667.5(b)).

Hawkins represented himself in the trial court. A jury found him guilty of all counts. Hawkins waived a jury trial on the prior conviction allegations and the court found all of the allegations true.

The sentencing court denied defendant's *Romero* motion to strike prior felony convictions noting that Hawkins had suffered 18 prior felony convictions including at least four prior strikes. The court sentenced Hawkins to state prison for 80 years to life. The court imposed the upper term for each count and, pursuant to section 1170.12, subdivision (c)(2)(A)(iii), imposed three-strikes terms of 30 years for count 1; 29 years to life for count 2; 28 years for count 3; 28 years for count 4; and 27 years for count 5. The court designated count 2 as the base term; stayed the sentences for counts 1 and 3 pursuant to section 654; ran the sentence for count 4 concurrent to the sentence for count 2; and ran the sentence for count 5 fully consecutive to the sentence for count 2. Finally, the court imposed three five-year enhancements pursuant to section 667(a) and nine one-year enhancements pursuant to section 667.5(b), for a total of 24 years in enhancements. The 80-year-to-life term resulted from the consecutive terms of 29-years-to-life and 27 years, plus the 24 years in enhancements.

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

3

DISCUSSION

I.    *Failure to Provide Sua Sponte Instruction on Grand Theft*

Hawkins argues the trial court erred by failing sua sponte to instruct the jury on grand theft from the person of another as a lesser included offense of robbery.

A trial court has a duty to instruct sua sponte on a lesser included offense if there is substantial evidence that the lesser offense, but not the greater offense, was committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 160.)  Here, the trial record did not contain substantial evidence that Hawkins committed the lesser offense of grand theft from the person of another.  (§ 487, subd. (c).)  That offense occurs when a defendant takes property that is in some way actually upon or attached to another person or carried by or held in actual physical possession by that person.  (*In re Jesus O.* (2007) 40 Cal.4th 859, 863.)  Unlike robbery, it does not occur when a defendant takes property from the immediate presence of another.  (*Ibid.*)  Here, Hawkins took a pillowcase full of Norton's personal property from her house while she was not present; he carried the property to his car while she objected but made no physical contact with the property; and he drove away with the property in his car while she stood by the car.  Hawkins never took the property from Norton's person.  Therefore, an instruction on the offense of grand theft from the person of another was not required.

II.    *Sufficiency of the Evidence for Assault with a Deadly Weapon*

Hawkins argues there was insufficient evidence to support his convictions for assault with a deadly weapon based on his backing out of the driveway while Norton and her son were in the path of the car door.

When a conviction is challenged on the ground of insufficient evidence, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the

4

defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Hawkins specifically argues there was insufficient evidence that he contemplated committing battery when he drove from the house. He argues the evidence that he twice warned Norton to move away from his car showed that he intended to leave without hurting Norton or her son.

Hawkins confuses the required intent with subjective expectation or desire. "[A]ssault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.) Trial evidence demonstrated that Hawkins intentionally backed his vehicle out of the driveway while warning Norton, who was standing in the open driver's side doorway, to get out of the way. A reasonable jury could infer from this evidence that Hawkins knew that the probable and direct result of his backing up the car was that the car door would strike Norton while she was holding her son. Thus, there was substantial evidence that Hawkins committed an intentional act knowing the probable and direct result of that act would be a battery.

Hawkins' warnings to Norton did not shield him from criminal responsibility for taking action that would have resulted in battery had Norton not moved out of the way. When a defendant threatens to commit a battery unless the potential victim complies with a condition the defendant has no right to impose (i.e., Hawkins threatens to back into Norton unless she gets out of the way so he can leave with her property) and he has the present ability and intent to carry through with the threat, the defendant commits an assault. (*People v. Page* (2004) 123 Cal.App.4th 1466, 1473.)

5

III.    *Cruel and Unusual Punishment*

Hawkins argues his sentence for 80 years to life is cruel and unusual punishment that violates the state and federal constitutions. He relies on the view of Justice Stanley Mosk, expressed in concurring and dissenting opinions, that a sentence that cannot be completed in a defendant's lifetime constitutes cruel and unusual punishment. (*People v. Hicks* (1993) 6 Cal.4th 784, 797 (dis. opn. of Mosk, J.); *People v. Deloza* (1998) 18 Cal.4th 585, 600-601 (conc. opn. of Mosk, J.).) He makes no effort to support his argument with the controlling decisions of the United States or California Supreme Courts. A brief review of those cases demonstrates that Hawkins' sentence passes constitutional muster.

A sentence violates the federal and state constitutional prohibitions against cruel and unusual punishment when it is so extreme and grossly disproportionate to the crime for which it is imposed that it shocks the conscience and offends fundamental notions of human dignity. (*Ewing v. California* (2003) 538 U.S. 11, 23; *In re Lynch* (1972) 8 Cal.3d 410, 424.) The burden of demonstrating such disproportionality rests with the defendant. (*People v. Wingo* (1975) 14 Cal.3d 169, 174; *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196-1197.) "Findings of disproportionality have occurred with exquisite rarity in the case law." (*Weddle*, at p. 1196.)

Hawkins' sentence was neither grossly disproportionate nor did it shock the conscience or offend fundamental notions of human dignity. Hawkins had a lengthy criminal history that included numerous residential burglaries. As the trial court told Hawkins at his sentencing, "You made it your profession to invade other people's homes and steal their property." In the instant case, Hawkins nearly ran over Norton and her two-year-old son because, as the trial court said, Norton had the audacity to demand the return of her property. He then engaged in a high speed chase, again raising the risk of serious injuries or fatalities to innocent bystanders as well as law enforcement personnel.

6

In these circumstances, Hawkins' admittedly lengthy sentence was not cruel or unusual punishment.

The conclusion we reach is fully consistent with other cases where courts have found sentences not to be cruel and unusual. For example, in *Lockyer v. Andrade* (2003) 538 U.S. 63, the United States Supreme Court affirmed two consecutive 25-years-to-life terms following a "third strike" conviction for stealing nine videotapes worth approximately $150. In *Ewing v. California, supra,* 538 U.S. 11, the same court approved a 25-years-to-life sentence under the three strikes law for stealing three golf clubs. Cases where courts have found sentences to be cruel and unusual are easily distinguishable. In *Weems v. United States* (1910) 217 U.S. 349, a federal disbursing officer convicted of making two false entries in his cash books was sentenced to 15 years at hard labor. In *In re Lynch, supra,* 8 Cal.3d at p. 413, a defendant convicted of a second offense of indecent exposure was sentenced to an indeterminate life term.

IV. Cunningham *Error in Imposing Upper Terms*

Hawkins argues the trial court violated his Sixth Amendment rights by imposing the upper term for all five counts based on facts neither admitted by the defendant nor found true by a jury beyond a reasonable doubt.

The trial court imposed upper term sentences on all five counts for the following reasons: "Your crime involves the threat of great bodily harm. You used a deadly weapon, that being your car. The manner in which the crime was carried out indicated planning. Your prior convictions are numerous. And you have served nine prior prison terms in connection with those prior felony convictions." The court did not make a finding of mitigating circumstances.

In *Cunningham v. California* (2007) 127 S.Ct. 856, the Supreme Court held that California's statutory scheme authorizing judges to determine whether to impose upper term sentences violates the Sixth Amendment. (*Id.* at p. 868.) "Except for a prior

7

conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Ibid.*, quoting *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Failure to submit a sentencing factor to a jury in violation of the Sixth Amendment requires reversal unless the court determines the error was harmless beyond a reasonable doubt. (*Washington v. Recuenco* (2006) 126 S.Ct. 2546, 2553; *Chapman v. California* (1967) 386 U.S. 18, 24.)

One of the aggravating circumstances cited by the trial court was that Hawkins' prior convictions were numerous. (See Cal. Rules of Court, rule 4.421(b)(2).) The fact of Hawkins' prior convictions is exempt from the *Cunningham* requirement that factors justifying the upper term be submitted to a jury and found true beyond a reasonable doubt. (*Cunningham v. California, supra,* 127 S.Ct. at p. 868.) Therefore, the court properly found that Hawkins' prior convictions were numerous, based on his 18 prior convictions. Assuming for purposes of argument that a finding that a defendant's prior convictions were "numerous" is not exempt from *Cunningham* (but see *People v. Waymire* (2007) 149 Cal.App.4th 1448, 1456), we have no difficulty concluding beyond a reasonable doubt that, had the issue been submitted to a jury, the jury would have found Hawkins' 18 convictions were numerous. We further conclude beyond a reasonable doubt that, had the trial judge been limited to relying on the sole aggravating circumstance of Hawkins' numerous prior convictions to determine whether to impose the upper term, he still would have imposed the upper term. The court placed great emphasis on Hawkins' criminal history as he commenced sentencing. "Mr. Hawkins, among your 20 or so prior felonies, your record's replete with residential burglaries. You made it your profession to invade other people's homes and steal their property. You were caught doing this in 1979, 1985, and 1993, before being caught doing so again in this case." The court found no mitigating circumstances. In light of the court's obvious concern about Hawkins' long criminal history, we conclude beyond a reasonable doubt

that the court would have found that the single aggravating circumstance of numerous prior convictions outweighed the nonexistent mitigating circumstances and warranted imposition of upper term sentences. (Cf. *People v. Waymire, supra,* 149 Cal.App.4th at p. 1458.)

V.    *Dual Use of Conviction in Imposing Enhancements*

Hawkins argues the trial court erred by relying on a single prior criminal case to impose both a five-year enhancement pursuant to section 667(a) and a one-year enhancement pursuant to section 667.5(b).

The trial court imposed a one-year enhancement pursuant to section 667.5(b) for "Prior 8" in the information, which alleged that on or about March 29, 1985 in case number 96269, Hawkins was convicted in Santa Clara Superior Court of "the crime(s) of Penal Code section 459-460.1 (2 [counts]) a felony, and that he/she then served a separate term in state prison for said offense." The court imposed a five-year enhancement pursuant to section 667(a) for Prior 16, which alleged that on or about March 29, 1985 in case number 96269, Hawkins was convicted in Santa Clara Superior Court of "residential burglary (2 [counts])." The original probation officer's report for case number 96269 states that Hawkins committed two residential burglaries. The first took place in the morning of September 12, 1984 and the second took place at a different house on September 13, 1984. Hawkins was convicted of two counts of first degree burglary and was sentenced to four years in prison for one count and a consecutive term of one year, four months for the second count.

In *People v. Jones* (1993) 5 Cal.4th 1142, the Supreme Court held, "when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (*Jones,* at p. 1150.) Enhancements imposed pursuant to section 667.5(b), although often referred to as prior prison term enhancements, are imposed for "that particular *subset* of

9

'prior felony convictions' that were deemed serious enough by earlier sentencing courts to warrant actual imprisonment." (*People v. Prather* (1990) 50 Cal.3d 428, 440, quoting Cal. Const., art. I, § 28, subd. (f); see *Jones,* at p. 1148.) That is, a section 667.5(b) enhancement is imposed for the prior offense underlying a prior prison term and cannot be imposed in addition to a section 667(a) enhancement for the same prior offense. (*Jones,* at pp. 1149-1150.)

Here, the trial court imposed both a section 667(a) enhancement and a section 667.5(b) enhancement for the same prior criminal *case*. That case, however, involved two offenses committed on different dates, resulting in separate convictions with consecutive terms for each conviction. The trial court did not run afoul of *Jones, supra,* 5 Cal.4th 1142 by imposing a section 667(a) enhancement for one of the residential burglary convictions (either the conviction that resulted in the four-year base term or the conviction that resulted in the one year four month consecutive term) and a section 667.5(b) enhancement for the other. A similar use of enhancements was upheld in *People v. Gonzales* (1993) 20 Cal.App.4th 1607, where the trial court imposed both a section 667(a) and a section 667.5(b) enhancement for a defendant who served a single prison term for two separate crimes. (*Gonzales,* at p. 1610.) The offenses were charged in separate criminal cases for which concurrent sentences were imposed. (*Ibid.*)

10

DISPOSITION

The judgment is affirmed.

_____

GEMELLO, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

11

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 5



**FILED**

Court of Appeal-First App. Dist.

JUL - 9 2007

DIANA HERBERT

BY_____

DEPUTY

THE PEOPLE,
Plaintiff and Respondent,
v.
HOMER EARL HAWKINS,
Defendant and Appellant.

A112556
San Mateo County No. SC058641


BY THE COURT:


    The petition for rehearing is denied.


Date: JUL - 9 2007          **JONES, P.J.**   P.J.

## DECLARATION OF SERVICE

People v. Hawkins                                                No. A112556

    I, the undersigned, declare that I am over the age of 18 years and am not a party to the within cause; my business address is 4104 24th Street, Ste., 411, San Francisco, California 94114. I served a true copy of the attached:

## PETITION FOR REVIEW

on each of the following by placing same in an envelope (or envelopes) addressed respectively as follows:

ATTORNEY GENERAL                          HOMER HAWKINS
455 Golden Gate Avenue                     (Appellant)
San Francisco, California 94102

                                          CLERK, COURT OF APPEAL
FIRST DISTRICT APPELLATE PROJECT           First Appellate District, Division Five
730 Harrison, Suite 201                    350 McAllister Street
San Francisco, California 94107            San Francisco, California 94102

CLERK, SUPERIOR COURT
County of San Mateo
400 County Center
Redwood City, California 94063

DISTRICT ATTORNEY
County of San Mateo
400 County Center
Redwood City, California 94063


Each said envelope was then on July 19th, 2007, sealed and deposited in the United States Mail with the postage fully prepaid.

    I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed on the 19th day of July, 2007.


                                                      _____
                                                     DECLARANT

# CV 08 · 1087

*SI*

*(PR)*

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: *MOTION (A)*

Case No. *SC-05 8641-A ; SF-339103-A*
People v. *HOMER EARLE HAWKINS (3)*

Number of pages to this Exhibit ___*38*___ pages.

JURISDICTION:  (Check only one)

☐ Municipal Court
☑ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

**ENDORSED FILED**
SAN MATEO COUNTY

MAY 0 5 2005

Clerk of the Superior Court
By SANDRA HARRIS
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA<br><br>Plaintiff,<br><br>vs.<br><br>HOMER EARLE HAWKINS<br><br>Defendant | Case No.: SF 339103A<br><br>DECISION GRANTING PRO PER STATUS AND NOTIFICATION TO SHERIFF'S LAW LIBRARIAN |

15    On April 22, 2005 upon application of the Defendant, Homer Earle Hawkins, and upon due

16  consideration, Commissioner Joseph N. Gruber granted Defendant's request for propria persona status.

17  During his preliminary hearing held on May 5, 2005 Defendant represented himself and was held to

18  answer on a violation of Penal Code § 460(A) (residential burglary) and Vehicle Code § 2800.2 (felony

19  fleeing). He was ordered to appear in Courtroom 2A on May 20th to set his jury trial date and pretrial

20  date. Defendant needs the resources of the law library in order to represent himself. At this point

21  Defendant apparently is facing a sentence of 25 years to life (due to three strikes) if he is convicted of

22  either or both charges.

23  Dated this May 5, 2005

24

25

26                                                              CARL W. HOLM
                                                                    JUDGE
27

28

1

```
J2411H1        SUPERIOR COURT - HALL OF JUSTICE & RECORDS      07/25/05
SAN MATEO CJIS        IN AND FOR THE COUNTY OF SAN MATEO          10:34
ORGANIZATION: SC
```

CASE NO. SC058641 A      DATE: 07/22/05      TIME: 09:00      DEPT.: 12

PEOPLE VS. HOMER EARLE HAWKINS

```
JUDGE:    H J ELLIS, JUDGE          CLERK:      KRISTY NELSON
REPORTER: JENELL MULLANE            2ND CLERK:  NONE
D.A.:     JOSEPH CANNON             DEFENSE CO: PRO-PER
```

PROCEEDINGS: MOTIONS

---

CHARGES: 1. PC 460(A)
         2. PC 212.5(C)
         3. PC 245(A)(1) W/PC 1192.7(C)(23)
         4. PC 245(A)(1) W/PC 1192.7(C)(23)
         5. VC 2800.2 W/PC 1203(E)(4) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2
         ) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2) W/PC 667.5(B) W/PC 667.5(
         B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 6
         67.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667(A) W/PC 667(A) W/PC
         667(A)

---

DEFENDANT PRESENT IN CUSTODY.

JOHN DIGIACINTO, CHIEF COUNSEL, IS PRESENT.

CAROL WOODWARD, COUNTY COUNSEL, IS PRESENT.

OFFICER JOSE SANTIAGO IS PRESENT.

9:18 A.M. : OFFICER JOSE SANTIAGO, CALLED BY COUNTY
      COUNSEL WAS SWORN AND TESTIFIED UNDER DIRECT
      EXAMINATION.

9:25 A.M. : WITNESS EXCUSED.

ORDER FOR INVESTIGATIVE AND ANCILLARY SERVICES IS FILED.

THE DEFENDANT IS DETERMINED BY THE COURT TO BE INDIGENT
      AND IS ENTITLED TO COURT APPOINTED EXPERTS IN THE
      PREPARATION AND DEFENSE OF THIS CASE.

THE PRIVATE DEFENDER IS APPOINTED TO PROVIDE
      INVESTIGATIVE AND ANCILLARY SERVICES IN THE DEFENSE OF
      THIS CASE.

# VIERRA INVESTIGATIONS, INC.

INVESTIGATIVE AND LEGAL SERVICES

812 S. Winchester Blvd., Suite 130-226
San Jose, CA 95128
Tel: (408) 295-1017
Fax (408) 364-3912

San Francisco Office
Tel (415) 239-1080
Fax (415) 239-1082

PI #19280
MEMBER OF CALI
MEMBER OF NALI

**MEMORANDUM**

**TO: Homer Hawkins**

**FROM:  Brian Vierra**

**RE: Interview of court personnel**

**DATE: October 20, 2005**

Homer, as you recall you had asked me to contact Judge Ellis's court reporter Janelle Mullane and Judge Grandsart's bailiff Carnevale was instrumental in introducing me to Janelle Mullane.

When I made contact with **Janelle Mullane** I showed her the minute orders that you had provided dated 7-25-05. She looked at the document and took a moment to go into her office, and she told me that nothing had been transcribed from this particular hearing.  She said that she did not recall the actual hearing itself and had no recollection of the events.  I asked her if she would be able to tell me if there were any in-chamber portion of this hearing, and she said that she did not recall any, and she was not able to tell by looking at the document itself.  She did point out to me that she herself did not prepare that document but that the clerk Kristy Nelson prepared it.    I thanked Janelle for her time and approached Kristy Nelson.

**Kristy Nelson** was most cooperative and I showed her the minutes from the 7-25-05 hearing in Judge Ellis's department. Kristy looked at the document and verified that she had prepared the minutes with

regards to this hearing. She told me that she did not have any specific recollections of this hearing. I asked whether or not she could tell by looking at the document if there had been any in chamber portion of the hearing, and she told me that she could not tell for certain. She went on to say that she sometimes puts that information in the minutes, and she did not see a notation on this particular document to that effect, but she said that this did not necessarily mean that there had been no meeting in chambers, as it is possible that the information was not noted. She told me that she has no recollection as to whether or not there was an in chamber meeting with regards to this hearing.

# VIERRA INVESTIGATIONS, INC.

INVESTIGATIVE AND LEGAL SERVICES

812 S. Winchester Blvd., Suite 130-226
San Jose, CA 95128
Tel: (408) 295-1017
Fax (408) 364-3912

San Francisco Office
Tel (415) 239-1080
Fax (415) 239-1082

PI #19280
MEMBER OF CALI
MEMBER OF NALI

MEMORANDUM

TO: Homer Hawkins

FROM:  Brian Vierra

RE:  Research with San Mateo Co. Superior court re Faretta motion

DATE: December 12, 2005

I have made efforts to determine whether or not a filled-out, signed copy of the Faretta was in fact in any of Mr. Hawkins San Mateo county case files. In order to do this I responded to the clerk's office and spoke with Kathy, who was not permitted to give out her last name, and she told me that she is the only Kathy in the Superior clerk's office.

She has done a considerable amount of research in order to locate the memo, and she is familiar with the memo, and after about a week of searching she has been unable to locate a copy of the Faretta memo and her most recent information, as of today's date, is that there was never an official one filled out. It was all done on the record, and this was told to her by Judge Grandsaert's clerk, who researched it and spoke with him, and their assessment was that this was not signed, so there is no hard copy of the document, but it would have been included in the court's minutes when it was discussed.

This is all of the information obtained from Kathy regarding the research on the Faretta memo.

ALL INFORMATION CONTAINED HEREIN IS CONFIDENTIAL

E-riling **C 07 5012** *SI* *(PR)*

# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. <u>This means that you **must**</u> (check off the boxes ☑ when done):

    ☒ **1) Serve** <u>this</u> ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

    <u>Each attorney representing a party must also:</u>

    ☐ **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, <u>do not</u> register again, your registration is valid for life on all ECF cases in this district.

    ☐ **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

    ☐ **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856.**

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

### Submitting Initiating Documents
PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case.  For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the subject line of all relevant emails to the court.  You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system.  All other documents must be e-filed from then on.  You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

### Converting Documents to PDF
Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system.  Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov**, and click on **[FAQ]**.

**Email Guidelines:** When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

**Questions**
Almost all questions can be answered in our **FAQs** at
**http://ecf.cand.uscourts.gov**, please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

Version 5/14/2007



1    HOMER E. HAWKINS (3)

2    CDC# ID C-55875

3    IRONWOOD STATE PRISON

4    P.O. BOX= 2199

5    BLYTHE CA. 92226-2199

6    IN PROPRIA PERSONA

7

8              UNITED STATES DISTRICT COURT OF

9              NORTHERN DISTRICT OF CALIFORNIA

10                          C 07 5012

11   HOMER E. HAWKINS (3),          CASE NO. CV-

12        Petitioner ,              (CADE NO.Re: SC-058641)

13                                  PETITIONER FOR DECLARATORY

14        Vs.                       JUDGEMENT UNDER FEDERAL

15                                  DECLARTORY JUDGEMENT ACT

16   DEBORAH DEXTER,WARDEN,         TITLE,28 U.S.C.AS § 2201,

17     et al.,              ,       2202

18        Respondents./             Title, 28 U.S.C. § 2284(b)(1)

19

20                          I

21                     JURIDICTION

22   This petition alleges that the Federal Constitutional Rights of petitioner

23   "HOMER E. HAWKINS(3)", who presently resides at Irowood State

24   Prison, P.O. Box= 2199, Blythe, Ca. 92226, were violated by

25   administrative action of the California Lesgislative,Govener,

26   Judge, which actions were directed against petitioner at San

27   Motel County Court, and the court giving rise to actual contro-

28   versy within Federal Jurisdiction. Accordingly, the Honorable

1  United States District Court, Northern District of California has

2  Jurisdiction to act pursuant to Title, 28 U.S.A. § 2201, 2202;

3  Title 28 U.S.C.  § 2284 (b)(1).

4

5                              II

6                            PARTIES

7   Petitioner Homer E. Hawkins(3), is incarcerated at Ironwood

8  State Prison, Warden Dexter, Legal custodian of petitioner. Jame

9  Tilton, is the Secretary of the California Department of Correct-

10  ions, and Mr. Arnold Schwarzenegger, Legislative, is responsible

11  for the operation of each of its state prisons, including the

12  operation of the California Board of Prison Hearings..

13

14                             III

15                           CLAIM-A

16   Whether or not under the Rules of LENITY,State agency exceeds

17  its jurisdiction in the administration of petitioner's (80-years

18  to life) term due to Statute's ambiguity in violation of Due

19  Process/ Liberty Interest.

20

21                           CLAIM-B

22   Whether or not standing is Ultra Vires triggered by an ambig-

23  uous Statut,"U.S. Const. Amend. VI" against state agency's, court

24  administration of petitioner's 80 year to life term, thus render-

25  ing it without fundamental jurisdiction and in constitutional

26  error and Intrusive Relief.

27

28

1    FACTS FOR RELIEF:

2        1.) In 2005, at fifty years of age, petitioner was remanded

3    to the custody of California Department of Corrections for a

4    term not to exceed 80 years to life for conviction of First De-

5    gree Burglary in Dec. 28, 2005. Under [Re:case No.San Motel Co.

6    Super. Ct. SF-339103; Re:case No. Court of Appeal. A-110179;

7    Re:case No.court of Appeal. A116268; Re:case No.Supreme court of

8    California. S-134231].

9        2.) The Controvery is a violation of "Propria Persona"[UNITED

10   STATES CONSTITUTION, SIXTH AMENDMENT] right of Self-Representat-

11   ion of adequate to prepare a defense. The administration trial

12   court system hinder the efforts to have resources to assist

13   petitioner in the "DUE PROCESS" defense tools that guaranteed by

14   the Amendment of American Justice--through the calling and inter-

15   rogation of favorable witnesses. And established in (Faretta Vs.

16   California, 422 U.S. 806, 95 S. Ct. 2525, 2533-34, 45 L. Ed. 2d

17   562 (1975).),(Milton v. Morris, 767 F. 2d 1443 (9th Cir. 1985).)

18       3.) As a result of the actual controverys as described herein,

19   petitioner suffers Uncertainty and Insecurities as to his Legal

20   federal Rights in question.

21       4.) 28 U.S.C.A. § 2201, 2202. Thus, Declaratory Judgement

22   would therefore afford a speedy and inexpensive method of adjud-

23   icating this legal dispute, settle the legal rights ofthe parties

24   and remove uncertainty and insecurity from the legal relationship

25   between petitioner and the State of California.

26       5.) 18 U.S.C. § 3626 (a) (3) (A), a request for a Three-

27   Judge court and Material sufficient to demonstrate that the requir-

28   ements of subparagraph (A) have been met. 18 U.S.C. § 3626 (a)

1  (3) (c).

2     6.) United States court of Appeals for the Ninth Circuit to

3  satisfy the notification requirement of 28 U.S.C. § 2284 (b)

4  (1). For purposes of judicial economy and avoiding the risk of

5  inconsistent judgments.

6

7                              IV

8                        PRAYER OF RELIEF

9

10    Wherefore the facts set forth herein satisfies the discretion

11  of this Honorable District Court, Pursuant to the Declaratory

12  Judgement Act petitioner does pray for declaration as follows:

13     1.) This Court's immediate issuance of Orders;

14        a.) Declaring the Rights of the Parties;

15        b.) Require the Respondent to show cause why its policy of

16  the state of California [NOT] to apply the Federal Rules in the

17  administration court, petitioner prison term, when the nature of

18  the term is ambiguous;

19        c.) Declaring whether or not under the Federal Rules of

20  California, the State agency exceeds its jurisdiction in the

21  adminstration of petitioner (80) years to life term, due to the

22  Statute's ambiguity in violation of Due Process/Liberty Interest.

23

24

25

26

27

28

I DECLARE UNDER PENALTY OF PERJURY, THAT THE FACTS AND

THE STATEMENTS ARE TRUE AND CORRECT, TO THE BEST OF MY

KNOWLEDGE AND BELIEF.


EXECUTED THIS 20 DAY OF September ,20 07, AT IRON-

WOOD STATE PRISON BLYTHE, CALIFORNIA.

DECLARANT IN PRO PER.

HOMER E. HAWKINS (3)

1
2
3

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## INSTRUCTIONS FOR PRISONER'S
## IN FORMA PAUPERIS APPLICATION

4   · You must submit to the court a completed Prisoner's In Forma Pauperis Application if
you are unable to pay the entire filing fee at the time you file your complaint or petition. Your
5   application must include copies of the prisoner trust account statement showing transactions
for the last six months and a certificate of funds in prisoner's account, signed by an authorized
6   officer of the institution.

7   ## A.   Non-habeas Civil Actions

8   Effective April 9, 2006, the filing fee for any civil action other than a habeas is
$350.00. Even if you are granted leave to proceed in forma pauperis, you must still pay the
9   full amount of the court's filing fee, but the fee will be paid in several installments. 28 U.S.C.
§ 1915.

10
You must pay an initial partial filing fee of 20 percent of the greater of (a) the average
11  monthly deposits to your account for the 6-month period immediately before the complaint
was filed or (b) the average monthly balance in your account for the 6-month period
12  immediately before the complaint was filed. The court will use the information provided on
the certificate of funds and the trust account statement to determine the filing fee immediately
13  due and will send instructions to you and the prison trust account office for payment if in
forma pauperis status is granted.

14
After the initial partial filing fee is paid, your prison's trust account office will forward
15  to the court each month 20 percent of the most recent month's income to your prison trust
account, to the extent the account balance exceeds ten dollars ($10.00). Monthly payments
16  will be required until the full filing fee is paid. If you have no funds over ten dollars ($10.00)
in your account, you will not be required to pay part of the filing fee that month.

17
**If your application to proceed in forma pauperis is granted, you will be liable for**
18  **the full $350.00 filing fee even if your civil action is dismissed. That means the court will**
**continue to collect payments until the entire filing fee is paid. However, if you do not**
19  **submit this completed application the action will be dismissed without prejudice and the**
**filing fee will not be collected.**

20
## B.   Habeas Actions
21
The filing fee for a habeas action is $5.00. If you are granted leave to proceed in
22  forma pauperis you will not be required to pay any portion of this fee. If you are not granted
leave to proceed in forma pauperis you must pay the fee in one payment and not in
23  installments. **If you use a habeas form to file a non-habeas civil action, you will be**
**required to pay the $350.00 filing fee applicable to all non-habeas civil actions.**

24
25
26
27
28

IFP APPLI.-PRISONER (Rev. 4/06)

E-Filing

1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**

10    HOMER E. HAWKINS (3)          **C 07 5012**
11                Plaintiff,         CASE NO. _____
12    vs.                            **PRISONER'S**
                                     **APPLICATION TO PROCEED SI**
13    DEBORAH DEXTER, WARDEN         **IN FORMA PAUPERIS**
14    et al.,         Defendant.

15                                                    **(PR)**

16        I, HOMER E. HAWKINS(3), declare, under penalty of perjury that I am the

17    plaintiff in the above entitled case and that the information I offer throughout this application

18    is true and correct. I offer this application in support of my request to proceed without being

19    required to prepay the full amount of fees, costs or give security. I state that because of my

20    poverty I am unable to pay the costs of this action or give security, and that I believe that I am

21    entitled to relief.

22        In support of this application, I provide the following information:

23    1.    Are you presently employed? Yes _____ No _✗_

24    If your answer is "yes," state both your gross and net salary or wages per month, and give the

25    name and address of your employer:

26    Gross: _____NONE_____    Net: _NONE_____

27    Employer: _____NONE_____

28    _____

1    If the answer is "no," state the date of last employment and the amount of the gross and net

2    salary and wages per month which you received. (If you are imprisoned, specify the last

3    place of employment prior to imprisonment.)

4    _____

5    _____

6    _____

7    2.      Have you received, within the past twelve (12) months, any money from any of the

8    following sources:

9         a.     Business, Profession or                Yes ____ No _X_

10              self employment

11        b.     Income from stocks, bonds,          Yes ____ No _X_

12              or royalties?

13        c.     Rent payments?                    Yes ____ No _X_

14        d.     Pensions, annuities, or             Yes ____ No _X_

15              life insurance payments?

16        e.     Federal or State welfare payments,     Yes ____ No _X_

17              Social Security or other govern-

18              ment source?

19    If the answer is "yes" to any of the above, describe each source of money and state the amount

20    received from each.

21    _____ _NONE_ _____

22    _____

23    3.     Are you married?                        Yes ____ No _X_

24    Spouse's Full Name: _____ _NONE_ _____

25    Spouse's Place of Employment: _____ X _____

26    Spouse's Monthly Salary, Wages or Income:

27    Gross $_____ X _____ Net $_____ X _____

28    4.     a.     List amount you contribute to your spouse's support:$ ____ X _____

1       b.      List the persons other than your spouse who are dependent upon you for

2               support and indicate how much you contribute toward their support. (NOTE:

3               For minor children, list only their initials and ages. DO NOT INCLUDE

4               THEIR NAMES.).

5       _____ NONE _____

6       _____

7   5.      Do you own or are you buying a home?              Yes ____ No _X_

8   Estimated Market Value: $_____ X _____ Amount of Mortgage: $_____ X

9   6.      Do you own an automobile?                         Yes ____ No _X_

10  Make _____ X _____ Year ____ X ____ Model _____ X

11  Is it financed? Yes _____ No _X_ If so, Total due: $_____ X

12  Monthly Payment: $ ____ X

13  7.      Do you have a bank account?   Yes ____ No _X_ (Do not include account numbers.)

14  Name(s) and address(es) of bank: _____ NONE _____

15  _____

16  Present balance(s):  $ _____ X _____

17  Do you own any cash?  Yes ____ No _X_ Amount: $ _____ X

18  Do you have any other assets? (If "yes," provide a description of each asset and its estimated

19  market value.)  Yes ____ No _X_

20  _____ NONE _____

21  8.      What are your monthly expenses?

22  Rent: $ _____ X _____ Utilities: _____ X

23  Food: $ _____ X _____ Clothing: _____ X

24  Charge Accounts:

25  Name of Account          Monthly Payment              Total Owed on This Acct.

26  _____ X _____    $ _____ X _____    $ _____ X

27  _____ X _____    $ _____ X _____    $ _____ X

28  _____ X _____    $ _____ X _____    $ _____ X

1    9.     Do you have any other debts? (List current obligations, indicating amounts and to

2    whom they are payable. Do <u>not</u> include account numbers.)

3    _____ *NONE* _____

4    _____

5    10.    Does the complaint which you are seeking to file raise claims that have been presented

6    in other lawsuits?   Yes ___ No _x_

7    Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in

8    which they were filed.

9    _____ *NONE* _____

10    _____

11        I consent to prison officials withdrawing from my trust account and paying to the court

12    the initial partial filing fee and all installment payments required by the court.

13        I declare under the penalty of perjury that the foregoing is true and correct and

14    understand that a false statement herein may result in the dismissal of my claims.

15

16    *10 - 15 - 07*         *Homer E. Hawkins III*

17      DATE             SIGNATURE OF APPLICANT

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

S149453

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re HOMER EARL HAWKINS III on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED.

SUPREME COURT
**FILED**

FEB - 7 2007

**Frederick K. Ohlrich Clerk**

DEPUTY

**GEORGE**

Chief Justice

MC-275

Name  *HOMER EARL HAWKINS (3.)*

Address  *P.O. BOX = 2199*

*IRONWOOD STATE PRISON*

*BLYTHE, CALIFORNIA. zip-92226*

CDC or ID Number  *C-53875*

**SUPREME COURT**
# FILED

JAN 1 8 2007

**Frederick K. Ohlrich Clerk**

_____
Deputy

*IN THE SUPREME COURT OF*

*THE STATE OF CALIFORNIA*
(Court)

---

*HOMER E. HAWKINS (3.)*
Petitioner

vs.

*THE SUPERIOR COURT OF SAN MATEO COUNTY*
*THE PEOPLE, REAL PARTY IN INTEREST*
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

# S149453

No. _____
*(To be supplied by the Clerk of the Court)*

CLERK SUPREME COUR[T]

---

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS    WEST GROUP
Official Publisher

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

☑ A conviction      ☐ Parole

☑ A sentence      ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

☑ Other (specify): _MOTION FOR RELIEF FROM DEFAULT; SUPERIOR COURT VIOLATED "DUE PROCESS"_

1. Your name: _HOMER EARL HAWKING (3.)_

2. Where are you incarcerated? _IRONWOOD STATE PRISON_

3. Why are you in custody? ☑ Criminal Conviction ☐ Civil Commitment

   _Answer subdivisions a. through i. to the best of your ability._

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   _RESIDENTIAL BURGLARY, ROBBERY WITH USE OF A DEADLY WEAPON, ASSAULT-FORCE_

   _LIKELY TO PRODUCE GBI ON PERSON (TWICE), FELONY-FLEEING FROM OFFICER_

   b. Penal or other code sections: _P.C. 460(a); P.C. 212.5(c); P.C. 245(A)(1); V.C. 2800.2_

   c. Name and location of sentencing or committing court: _SUPERIOR COURT - HALL OF JUSTICE,_

   _SAN MATEO COUNTY - REDWOOD CITY_

   d. Case number: _APPEAL No. A112556; SAN MATEO Co. Super. Ct. No. SC-052641_

   e. Date convicted or committed: _October 19, 2005_

   f. Date sentenced: ~~80 YEARS TO LIFE IN STATE PRISON~~ _(December 20, 2005)_

   g. Length of sentence: _80 YEARS TO LIFE IN STATE PRISON_

   h. When do you expect to be released? _NONE IN THIS LIFE TIME_

   i. Were you represented by counsel in the trial court? ☐ Yes. ☑ No. If yes, state the attorney's name and address:

   _(PRO. PER.) - PROPRIA PERSONA_

4. What was the LAST plea you entered? _(check one)_

   ☑ Not guilty ☐ Guilty ☐ Nolo Contendere ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☑ Jury ☐ Judge without a jury ☐ Submitted on transcript ☐ Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

1.) *MOTION FOR RELIEF FROM DEFAULT OF APPELLANT'S OPENING BRIEF*

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at *what* time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

1.) *Statement for Relief Requested; e.g., Appellant Appeal Attorney (Mr. ROSS THOMAS SBN-96184), file Opening Brief on date [July 31, 2006], Case No. A-112556 (San Mateo Co. Super. Ct. No. SC-052641). For the reasons stated above, requests that SUPERIOR COURT, COURT OF APPEAL, AND ATTORNEY), To file a Respondent Brief's. Under (California Rules of Court (15)(A)(B)) (A) TIME TO FILE [a] A respondent must serve and file its brief within (30) days after the appellant file its opening brief. (B) EXTENSIONS OF TIME [i] THE Parties may extend each period under (a) by up to (60) days by filing one or more stipulations in the reviewing court before the brief is "DUE". Stipulations must be signed by and served on all parties. The original signature of at least one party must appear on the Extension stipulation filed in the reviewing court; Appellant motion for relief from [DEFAULT] and [PERMIT] State relief needed, to e.g., appellant/petitioner that was file in opening brief. See Exhibit's (A)*

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

1.) *CALIFORNIA RULES OF COURT-37 (a); Corenevsky V. Superior Court (1984) 36 C.3d 307, 204 C.R. 165, 682 P. 2d 360; See Los Angeles V. Commission on State Mandates (1995) 32 C.A. 4th 805, 38 C.R. 2d 704;*

7. Ground 2 or Ground _____ (*if applicable*):

2.) THE COURT VIOLATED PETITIONER "DUE PROCESS" RIGHT'S :

a. Supporting facts:

2.) The right of "DUE PROCESS" protects a [ PROPRIA PERSONA ] of Petitioner/Appellant interest in fair adjudication by preventing [ ANCILLARY DEFENSE SERVICES]. Meaning that the "Redwood City Superior Court of San Mateo" county are responsible for providing ancillary services, even in absence of statue, under the U.S. Constitutional guarantees of due process and right, Petitioner say that State court judge in this case No. SF-339103-A " reasonably concluded that in order to adequately prepare petitioner defense, petitioner needed to make a certain number of local and long distance phone call, and to have access to a runner, investigator, and expert witness. The court Ordered various custodial, and other Officials to permit appellant / petitioner access to these resources, but later expressly found the order was violated. Under these circumstances, the conclude that appellant / petitioner due process rights were violated without having the court address the difficult issue of the exact scope of the right to prepare a defense. The claims of denial of due process by [ JOHN L. GRANDSAERT, JUDGE - Case No. SC-058641-A; DATED October 14, 2005], Reported by Cindy M. Branshaw, CSR No. 8048 on page 11-13" Trial Judge. See Exhibit's (B)
The "SIXTH AMENDMENT" does grants to the appellant / petitioner right's to makehis defense.

b. Supporting cases, rules, or other authority:

2.) Evil. Code § 730; See Bounds v. Smith, 430 U.S. 217, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Mayberry v. Penn., 400 U.S. 455, 463, 91 S. Ct. 499, 506, 27 L. Ed. 2d 532 (1971); Faretta V. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); United States V. Wilson, 690 F. 2d 1267 (9th Cir. 1982), cert. denied, - U.S. -, 104 S. Ct. 207, 78 L. Ed. 2d 179 (1983); Mckaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 949, 79 L. Ed. 2d 122 (1984).

8. Did you appeal from the conviction, sentence, or commitment? ☑ Yes. ☐ No.   If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_COURT OF APPEAL OF STATE OF CALIFORNIA, FIRST APPELLATE DISTRICT, DIVISION FIVE_

b. Result: _DENIED_ ___   c. Date of decision: _January 5, 2007_

d. Case number or citation of opinion, if known: _Court of Appeal No. A-116268 ; San Mateo Co. Super. Ct. No. SF-359103-A_

e. Issues raised: (1) _MOTION FOR RELIEF FROM DEFAULT OF APPELLANT'S OPENING BRIEF_

(2) _THE COURT VIOLATED PETITIONER " DUE PROCESS " RIGHT'S :_

(3) ___

f. Were you represented by counsel on appeal? ☑ Yes. ☐ No. If yes, state the attorney's name and address, if known:

_ROSS THOMAS, ATTORNEY AT LAW, SBN-96184, 4104 24th Street, No. 411, San Francisco, CA. 94114_

9. Did you seek review in the California Supreme Court? ☐ Yes. ☑ No.   If yes, give the following information:

a. Result: ___   b. Date of decision: ___

c. Case number or citation of opinion, if known: ___

d. Issues raised: (1) ___

(2) ___

(3) ___

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

___

___

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

___

___

___

___

___

___

___

___

___

___

b. Did you seek the highest level of administrative review available? ☐ Yes   ☐ No.

_Attach documents that show you have exhausted your administrative remedies._

MC-275 [Rev. January 1, 1999]           **PETITION FOR WRIT OF HABEAS CORPUS**       WEST GROUP<br>Official Publisher        Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?    ☑ Yes. If yes, continue with number 13.    ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _COURT OF APPEAL OF STATE OF ~~THE~~ CALIFORNIA, FIRST APPELLATE DISTRICT, DIVISION FIVE._

      (2) Nature of proceeding (for example, "habeas corpus petition"): _HABEAS CORPUS_

      (3) Issues raised: (a) _MOTION FOR RELIEF FROM DEFAULT OF APPELLANT'S OPENING BRIEF_

          (b) _THE COURT VIOLATED PETITIONER "DUE PROCESS" RIGHT'S!_

      (4) Result (Attach order or explain why unavailable): _SEE EXHIBIT_

      (5) Date of decision: _January 5, 2007_

   b. (1) Name of court: _____

      (2) Nature of proceeding: _____

      (3) Issues raised: (a) _____

          (b) _____

      (4) Result (Attach order or explain why unavailable): _____

      (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?    ☑ Yes.    ☐ No. If yes, state the attorney's name and address, if known:
_ROSS THOMAS - ATTORNEY AT LAW, SBN 96184, 4104 24th Street, No. 411_

_San Francisco, California, 94114_

17. Do you have any petition, appeal, or other matter pending in any court?    ☑ Yes.    ☐ No. If yes, explain:
_A PETITION FOR WRIT OF HABEAS CORPUS/ IN THE SUPREME COURT OF CALIFORNIA CASE_

_No. S-145139, INEFFECTIVE ASSISTANCE (CASE No. S-145139, July 19, 2006)_

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _01- 10 - 2007_                      ▶ _Homer E. Hawkins III_
                                                      (SIGNATURE OF PETITIONER)

# EXHIBIT C

A116268

Homer Earl Hawkins
CDC:C-55875
CSP Ironwood
P.O. Box 2199
Blythe, CA 92226

### NOTICE

*Please include both the appellate case number and the division number on any written communication or filing submitted to this court.*

**\*New rule effective July 1, 2006 for Civil Appeals and Writs**

\*Each party to an appeal must serve and file a Certificate of Interested Entities or Persons at the time it files its first document in this court. Each party must also include a copy of the Certificate of Interested Entities or Persons in its principal brief. The certificate must appear after the cover and before the tables. A party that learns of changed or additional information that must be disclosed must promptly serve and file a Supplemental Certificate of Interested Entities or Persons in this court. (See Cal. Rules of Court, rule 14.5.) Similar requirements apply to writ petitions. (See Cal. Rules of Court, rules 56(i), 57(c), 58(c), 59(d).)

**Our website address is
http://appellatecases.courtinfo.ca.gov**

pet

adda

COPY

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## IN AND FOR THE
## FIRST APPELLATE DISTRICT
## DIVISION FIVE

In re HOMER EARL HAWKINS on Habeas Corpus.

**FILED**

JAN 0 5 2007

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____

Court of Appeal No. A116268
San Mateo Co. Super. Ct. No. SF339103A

BY THE COURT:*

    The petition for writ of habeas corpus is denied.

Date _____1 - 5 · 0 7_____        SIMONS, J. ACTING P.J.

* Before Simons, Acting P.J., Gemello, J. and Miller, J. (Judge of the San Francisco County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution)

# EXHIBIT D

1.    HOMER EARL HAWKINS (3.)

2.    CDC. ID. C-55875 /AI-220

3.    IRONWOOD STATE PRISON

4.    P.O. BOX = 2199

5.    BLYTHE, CA. 92226

6.

7.    FIRST DISTRICT APPELLATE

8.    PROJECT

9.    730 Harrison Street, Suite # 201

10.   San Francisco, California. 94107

11.

12.        RE: CASE No. A112556

13.            SAN MATEO COUNTY

14.            SUPERIOR COURT No. SC-53641

15.

16.        Dear Mr. MATTHEW ZWERLING

17.        I am writing this letter concerning the Appointment of Appellate

18.    Counsel on my appeal. My concern is that "Mr. ROSS W. THOMAS, 4104



We have received your complaint against a California attorney and have assigned it the number shown below. We will contact you when our evaluation of your matter is complete.

Thank you for your patience.

OFFICE OF CHIEF TRIAL COUNSEL/INTAKE

Inquiry # _05-14281_

BF 1030 REV 4/99

ROSS THOMAS
Attorney at Law
4104 24th Street, No. 411
San Francisco, California 94114
(415) 627-4052

July 31, 2006

Homer Earl Hawkins
C-55875
San Quentin State Prison
San Quentin, California 94974

Dear Mr. Hawkins:

Enclosed is a copy of the appellant's opening brief I have filed on your behalf in the Court of Appeal.

Before discussing to the brief, I want to quickly review the appellate process. This will help you understand why certain claims were not raised in the brief.

First, and probably most important, the Court of Appeal does not decide whether you are innocent or guilty. Its review is limited to a determination of whether the trial proceedings were conducted according to the law. Thus, I cannot produce evidence on your behalf or argue that you did not commit the crime. Instead, I am limited to arguing that aspects of your trial were not conducted according to the law and thus you were denied your right to a fair trial.

Second, appellate review is limited to the trial records. As you know, the county clerk's office has furnished me a clerk and reporter's transcript of your trial. This transcript includes written motions filed in the case and a verbatim transcription of hearings held in your case. It is my job to review this transcript and find legal errors that affected your right to a fair trial. In an appeal, my review can go no further than the transcript because the Court of Appeal's review is also limited to the transcript. Consequently, if the transcript does not support a claim of legal error I cannot raise the claim on appeal.

Finally, the appellate review process involves two steps. The first step is the identification of legal errors committed in the trial court. The second step is demonstrating that these errors were prejudicial to your right to a fair trial. As may be obvious, the first step is much easier than the second one. Typically, I, like all appellate lawyers, review the transcript and identify instances of legal error. This is not that difficult task because in most cases a number of errors are committed. Once I have discovered the errors, I attempt, using case law and the facts of the particular case, to create arguments that the particular errors were prejudicial to the appellant's right to a fair trial. This

Page Two
Homer Hawkins
July 31, 2006

is often very difficult because the facts of the case may make it impossible to argue the error was prejudicial. For example, let's say the defendant is tried for robbing a bank. During trial, the prosecution calls five witnesses, all of whom witnessed the robbery and identified the defendant as the perpetrator. The prosecution also introduces a video depicting the defendant committing the crime. However, at trial, the judge commits a legal error by improperly allowing the jury to consider evidence that appellant had previously been convicted of robbery. In this example a legal error exists but it in light of the witnesses' testimony and the videotape it is impossible to argue that the jury convicted the defendant solely because it improperly considered the prior conviction evidence. The Court of Appeal reviewing this case would find that while an error may have occurred at trial that error did not prejudice the defendant's right to a fair trial. So as you can tell, the important question on appeal is not "Were any legal errors made at trial?" it is "Were the legal errors prejudicial to the defendant's right to a fair trial?"

Now, turning to the opening brief filed in this case.

You will notice that both the Statements of Case and Facts are very limited descriptions of the procedural history of the case and the evidence presented by the prosecution and defense. It is very important to note that the Court will not decide the case based on these statements. Instead, the purpose of these statements is to provide the Court with a short description of the kind of case it is dealing with. Additionally, your trial record is well over 1600 pages long. Realistically, there is no way that I can distill all the facts in this lengthy record into a statement of facts of a reasonable length.

I made the arguments available to you on direct appeal. In Argument I, I claimed that the robbery conviction must be reversed because the trial court failed to instruct the jury on the lesser include offense of grand theft from a person. If this claim is successful, the robbery count will be reversed.

In Argument II, I argued that the evidence presented at trial was not legally sufficient to support your two assault convictions. If the Court of Appeal agrees with this position, those two convictions will be reversed.

Arguments III, IV, and V address sentencing errors and I believe they are self-explanatory.

As to the next step, the Attorney General will be filing a written response to our brief within the next 30 to 90 days. I will send it along to you once it is received. I anticipate the Court of Appeal will decide the case in about nine months.

Page Two
Homer Hawkins
July 31, 2006

If you have any questions, please contact me.

Very truly yours,

ROSS THOMAS
Attorney at Law

# CV 08        1087

*SI*

# EXHIBIT COVER PAGE

3

EXHIBIT

*(PR)*

Description of this Exhibit: $JUDICIAL$ $PERFORMANCE$-$JUDGE$
(A) (B)
Case No. (A-110179); (S-134231); (1113027); (SC-58641, INF-031558)

Number of pages to this Exhibit ___33___ pages.

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☒ Appellate Court
☐ State Supreme Court
☐ United States District Court
☒ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

EXHIBIT A



State of California
Commission on Judicial Performance
455 Golden Gate Avenue, Suite 14400
San Francisco, CA 94102-3660
(415) 557-1200
FAX (415) 557-1266
Web Site: http://cjp.ca.gov

December 19, 2005

Homer E. Hawkins, 1113027
300 Bradford Street
(5E-22)
Redwood City, CA 94063

Dear Mr. Hawkins:

At its December meeting, the Commission on Judicial Performance determined not to take further action with respect to your complaint dated November 8, 2005.

The contents of your complaint do not provide grounds for proceeding further. In order to go forward with a judicial investigation, a basis for such an investigation must be shown. Conclusions about a judge's behavior, or categorizations of a judge's behavior, without specifics, are insufficient to warrant an investigation by this agency.

If you wish to provide specific information regarding your allegation that the judge and the deputy district attorney who handled your case were friends, it will be considered. However, based on the information provided to date, your case has been closed.

We do appreciate your time and effort in bringing this matter to the commission's attention.

Very truly yours,

Donna M. Vargas
Staff Counsel

DMV:al/L1219hawkins

Confidential under California Constitution,
Article VI, Section 18, and Commission Rule 102



State of California
Commission on Judicial Performance
455 Golden Gate Avenue, Suite 14400
San Francisco, CA 94102-3660
(415) 557-1200
FAX (415) 557-1266
Web Site: http://cjp.ca.gov

November 10, 2005

Homer E. Hawkins, #1113027
300 Bradford Street   (5E-22)
Redwood City, CA 94063

Dear Mr. Hawkins:

　　　　This letter is to acknowledge receipt of your complaint against a California judge(s). We are presently reviewing this information and you will be advised in writing, at a later date, of the Commission's action in this matter.

Very truly yours,

Bernadette M. Torivio
Executive Secretary

BMT:hs/

Confidential under California Constitution,
Article VI, Section 18, and Commission Rule 102



# 2005-2006 Grand Jury

**COUNTY OF SAN MATEO**
Hall of Justice
400 County Center
Redwood City, CA  94063-1655
(650) 599-1711; Fax (650) 363-4698

**August 20, 2005**

**Mr. Homer Earl Hawkins III**
**6E-22  #1113027-ID**
**300 Bradford Street**
**Redwood City, CA 94063**

**Dear Mr. Hawkins,**

**This is in response to your letter dated July 25, 2005.  The grand jury is not able to investigate all matters brought to its attention.  Some matters are beyond its authority to investigate, such as matters involving federal or state agencies, the courts, or private disputes.**

**The nature of your complaint is one of a criminal matter.  It is not within the jurisdiction of the San Mateo County Civil Grand Jury and the jury can take no action on this matter.**

*Edwin Glasgow*
**Edwin Glasgow, Foreperson**
**San Mateo County Civil Grand Jury**

**ENDORSED FILED**
SAN MATEO COUNTY

AUG 1 1 2005

Clerk of the Superior Court
By __Sarai Goulart__
DEPUTY CLERK

1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

IN AND FOR THE COUNTY OF SAN MATEO

10

11

12  THE PEOPLE OF THE STATE OF CALIFORNIA,    Case No. SC 58641

13          Plaintiff,                    **ORDER STRIKING DEFENDANT'S "MOTION FOR A PROTECTIVE ORDER"**

14          vs.                           **(CCP §§170.1, 170.2, 170.3 170.4)**

15  HOMER EARLE HAWKINS,

16          Defendant.

17

18

19      Defendant has filed a "Notice of Motion to Have a Protective Order: Memorandum of Points and

20  Authorities" (hereinafter "Motion"). The Motion does not specify the relief the defendant is seeking nor

21  the manner in which a protective order might apply to these proceedings.

22      The Motion does refer to "egregious legal error" (Motion, page 2, lines 7-8). To the extent the

23  defendant asserts judicial error in connection with Superior Court proceedings, (Motion, page 2, lines 7-

24  10), his recourse should be sought at the Court of Appeal.

25      The Motion refers to judicial disqualification, based solely on: (1) Judicial comments and rulings

26  made at a July 18, 2005 hearing, and, (2) The undersigned Judge's former employment as a Deputy

27  District Attorney.  (Motion, page 1, lines 31- 37, page 2, lines 21- 28).

28      CCP §170.2(b) provides that it shall not be grounds for disqualification that the judge has in any

1  capacity expressed a view on a legal or factual issue presented in the proceeding, and the mere fact that a

2  judge has made rulings on the legal and factual issues before the court is not a ground for judicial

3  disqualification.  Roitz v. Coldwell Banker Residential Brokerage Co., (1998) 62 Cal.App.4th 716; Say

4  & Say v. Castellano, (1994) 22 Cal.App.4th 88, 92.

5         CCP § 170.1(a)(2)(B) provides that a judge may be disqualified if he or she has, "served as a

6  lawyer in the proceeding, or in any other proceeding involving the same issues he or she served as a

7  lawyer for any party in the present proceeding or gave advice to any party in the present proceeding upon

8  any matter involved in the action or proceeding."  However, in the case of a judge who has formerly

9  served as a lawyer for a public agency which is a party to the proceeding, disqualification is required if

10 the judge, "has personally advised or in any way represented the public agency concerning the factual or

11 legal issues in the proceeding."   Defendant does not allege that the undersigned Judge has advised or

12 represented the public agency plaintiff in this proceeding.

13         .   Thus, the Motion does not, on its face, disclose any ground for judicial disqualification.  CCP

14 §170.4, subd. (b) provides that "if a statement of disqualification is untimely filed or if on its face it

15 discloses no legal grounds for disqualification, the trial judge against whom it was filed may order it

16 stricken."

17         THEREFORE, IT IS ORDERED THAT: The "Notice Of Motion To Have A Protective Order:

18 Memorandum Of Points And Authorities" filed by defendant on July 22, 2005 is stricken.

19

20

21 Dated: _____8/11/05_____                    _____

22                                                    JUDGE OF THE SUPERIOR COURT

23

24

25

26

27

28

ENDORSED FILED
SAN MATEO COUNTY

JUL 2 2 2005

Clerk of the Superior Court
By  Sarai Goulart
DEPUTY CLERK

HOMER EARL HAWKINS (3.)
6E-22  # 1113027-ID
300 BRADFORD STREET
REDWOOD CITY, CA. 94063
Propria Persona for Defendant


IN THE SUPERIOR COURT OF THE REDWOOD CITY OF THE
STATE OF CALIFORNIA, COUNTY OF SAN MATEO


PEOPLE OF THE STATE OF              SO-CASE : SC-58641
CALIFORNIA,                         DA-CASE : INF-031558
                Plaintiff,              (FELONY)


        Vs.                         NOTICE OF MOTION TO HAVE A
                                    PROTECTIVE ORDER :
HOMER EARL HAWKINS (3),             MEMORANDUM OF POINTS AND
                Defendant. /        AUTHORITIES


        TO THE ABOVE-ENTITLED COURT, AND TO THE DISTRICT ATTORNEY
OFFICE OF SAN MATEO         , COUNTY, STATE OF CALIFORNIA :


        PLEASE TAKE NOTICE THAT, on July 22, 2005 , in Department 11
at 9:00 A.M     , or as soon thereafter as the matter may be heard, the defendant
will move the Court for an order of THE PROCEDURES FOR PROTECTIVE ORDER (see
Penal Code § 1054.7):


                SUMMARY OF ARGUMENT


        Defendant argue that his Motion is being "DENIED" by the [HON. J.
Grandsaert-Judge ], because of willfully disregarded of law and disposing of complaint
in criminal hearing by defendant. On "July 18, 2005" the judge abuse the power
of the judicial office when he abbreviate or change critical "WORDS" as trying to
make defendant say words that he didn't wanted to say in the aspects of the
adversary process in ways that would run counter to the scheme established by relevant
constitutional and statutory law. The robe a judge wears as he sits upon the bench
is not a license to excoriate "DEFENDANT OR ANYONE ELSE". The [HONORABLE, Mr.
GRANDSAERT] did say that (Mrs. M. AILHISER-Prosecutor) was "COLLEAGUE" in the same office.

## MEMORANDUM OF POINTS AND AUTHORITIES

A judge can be disbarred or otherwise disciplined by the bar as an "ATTORNEY" for misconduct committed in his or her capacity as a judge. (In re Littell, 294 N.E. 2d 126 (Ind. 1973)).

It has been said that a judge is a lawyer who performs his or her job behind the "BENCH" instead of in "FRONT" of it, and who, therefore, may be disciplined accordingly. (In re Piper, 534 P. 2d 159 (Or. 1975)).

Nonetheless, error can amount to judicial misconduct. In fact, egregious legal "ERROR", legal "ERROR MOTIVATED" by bad faith, or a continuing pattern of legal error may well violate several provisions of the Code of Judicial Conduct. Courts have held that legal error may violate (CANON-2) of the Code, which requires judges to comply with the law, to avoid impropriety, and to conduct themselves in a manner that promotes public confidence in the judiciary. (In re Sardino, 448 N.E. 2d (N.Y. 1983); In re McGee, 452 N.E. 2d 1258 (N.Y. 1983); In re Reeves, 469 N.E. 2d 1321 (N.Y. 1984). Legal error has also been found to violate (CANON-3), which provides that "A Judge Should Be Faithful to the law and maintain professional competence in it. (In re Yengo, 72 N.J. 425, 371 A. 2d 41 (1977); In re Scott, 386 N.E. 2d 218 (Mass. 1979).

A California judge was disciplined because the judge "Directed his Inquiry Clearly to Support the Prosecution position. (People V. Mahoney (1927) 201 C. 618, 627, 258 P. 607); McCartney V. Commission on Judicial Qualifications, 12 Cal. 3d 512, 533, 526 P. 2d 268, 283, 116 Cal. Rptr. 260, 275 (1974); People V. Santana (2000) 80 CA.4th 1194, 1206) If, however, a judge, prior to a case, learns about factual matters from an extrajudicial source, disqualification is necessary. (Elmore v. State, 682 S.W. 2d 758 (Ark. 1985); In re Bell, 373 A. 2d 232 (D.C. 1977)).

Therefore the requirement to disqualify also hold true for a judge who served as prosecutor for the state. In fact, if a judge-previously-prosecutor superviser, the judge may be required to disqualify, even if there is no "SHOWING" that the judge was involved or Thus, frequent disqualification may be necessary for new judges who previously worked as prosecutors. (State ex rel. Wright V. Morgan County Ct., 451 N.E. 2d 316 (Ind. 1983)).

In addition, the procedures for "PROTECTIVE" orders on Discovery are tailored to the court of original proceeding in jurisdiction. "Penal Code § 1054.7" authorizes a court, to hear a good cause showing in an "In Camera" proceeding. The record (Reporter's transcript) of an "In Camera" showing must be preserved, in the records of the court and made available to an appellate/court in the event of an appeal or writ.

DECLARATION IN SUPPORT OF MOTION

DECLARATION OF "HOMER E. HAWKINS (3.)" IN SUPPORT OF
NOTICE OF MOTION [TO HAVE A PROTECTIVE ORDER; MEMORANDUM
OF POINTS AND AUTHORITIES]:

I am "PROPRIA PERSONA" for the defendant in this case.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAW OF
THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND
CORRECT:

Date: July 22_____, 2005

Signature of PROPRIA PERSONA
HOMER EARL HAWKINS (3.)

# EXHIBIT B

Court of Appeal, First Appellate District, Division Five - No. A110179
S134231

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

HOMER E. HAWKINS, Petitioner,

v.

SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;

THE PEOPLE, Real Party in Interest.

---

Application for stay and petition for review DENIED.

**SUPREME COURT**
**F I L E D**

JUN - 8 2005

Frederick K. Ohlrich Clerk

---
DEPUTY

GEORGE

---
Chief Justice

*Proof of Service – Mail*

## PROOF OF SERVICE

Re:  Case Number _____

Case Title  *HAWKINS V. THE REDWOOD CITY SUPERIOR*

*COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO!*

I hereby declare that I am a citizen of the United States, am over 18 years of age, and am/am not a party in the above-entitled action. I am employed in/reside in the County of _*SAN MATEO*_ and my business/residence address is

_*300 BRADFORD STREET*_

_*REDWOOD CITY, CALIFORNIA, ZIP - 94063*_

On _*May 23, 2005*_, I served the attached document described as a _*HABEAS CORPUS WRIT =*_

*N.A. [Denieding Me Access TO THE COURT'S (see All EXHIBITS)]:*

on the parties in the above-named case. I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon. I then placed the envelopes in a U.S. Postal Service mailbox in _*REDWOOD CITY*_, California, addressed as follows:

*IN THE SUPERIOR COURT OF CALIFORNIA*
*400 COUNTY CENTER*
*REDWOOD CITY, CA. 94063*

*ATTORNEY GENERAL OFFICE  # 11000*
*455 GOLDEN GATE, AVE.*
*SAN FRANCISCO, CALIFORNIA. 94102*

*OFFICE OF THE CLER.*
*TO THE SUPREME COURT*
*350 McALLISTER STREE*
*SAN FRANCISCO, CALIFORN*
*ZIP - 94102*

I, _*Darryl Lee Goldstein*_, declare under penalty of perjury that the foregoing is true and correct.

Executed on _*May 23, 2005*_, at _____

_*Redwood City*_, California.

_____
Signature



RECEIVED

MAY 27 2005

CLERK SUPREME COURT

SUPREME COURT
FILED

MAY 27 2005
Frederick K. Ohlrich Clerk

Deputy

1.   HOMER E. HAWKINS (Sr.)

2.   SE-20 ## 1113027

3.   300 Bradford Street

4.   Redwood City, CA. 94063

5.   Propria Persona for Defendant :

6.

7.       IN THE SUPREME COURT OF THE STATE OF

8.             CALIFORNIA

                            A110179

9.

10.   PEOPLE OF THE STATE OF            SO-CASE : SF-

11.   CALIFORNIA,                       339103

12.       Real Party in Interest       SC58641

13.                               DA-CASE: COM-

14.   THE REDWOOD CITY SUPERIOR     0315593

15.   COURT OF THE STATE OF CALIFORNIA,   (FELONY)

16.   COUNTY OF SAN MATEO

17.             Respondent,       S:PETITION FOR WRIT &

18.                            HABEAS CORPUS FOR

19.       Vs.                     SUPERSEDEAS/999(a) :

20.

21.   HOMER E. HAWKINS (Sr.)       VIOLATION OF THE CRIMINA

22.        Defendant/Petitioner.   /   LAW PROCEDURE AND PRACTI

23.

24.     PETITION FOR WRIT OF SUPERSEDEAS [E.G., MANDATE],

25.    [AND REQUEST FOR STAY OF PROCEEDINGS PRESENTLY

26.    SET] FOR [JUNE 2,2005]. PETITION WITH MEMORANDUM

27.    OF POINTS AND AUTHORITIES TO THE HONORABLE CHIEF

28.

1.         JUSTICE OF CALIFORNIA AND THE ASSOCIATE

2.         JUSTICES OF THE SUPREME COURT OF CALIFORNIA:

3.

4.     I, "HOMER E. HAWKINS (s)", defendant and petitioner, respectfully

5. petition this court for review following the decision of the "COURT OF

6. APPEAL", [No. A110179] Appellate District, Division [FIVE-5], filed

7. on date [May 19, 2005], affirming [DENIED] Motion for (VIOLATION

8. OF [PENAL CODE-SECTION - 460 (A), ENTER AN INHABITED DWELLING HOUSE],

9. [VEHICLE CODE-SECTION-2800.2, INTENT TO EVADE, FLEE, ELUDE

10. A PURSUING PEACE OFFICER's].)

11.

12.      (1.) THIS CASE PRESENTS THE FOLLOWING QUESTION FOR

13.         REVIEW:

14.       (A) Why is it were in (SUPERIOR COURT/MUNICIPAL

15.         COURT), Judges do not like to hear "DISMISSAL

16.         995's" before they proceed in a [PRELIMINARY

17.         EXAMINATION] hearing and continue a Valid

18.         holding order.

19.

20.       (B) Why is it were the (MAGISTRAT's JUDGE) do not

21.         thoroughly review the defendant's "PROPRIA

22.         PERSONA (DUE PROCESS PRIVILEGES) that

23.         initially provided Constitutional right, Or under-

24.         mind or hinder petitioner full preparation of defense.

25.

26.       STATEMENT OF THE CASE AND FACTS:

27.

28.

1.

2.     The "COURT OF APPEAL's" opinion was [NONE] in two

3.    day opinion of was unfairly decision "WITHOUT" looking into

4.    the court reporter procedure "TRANSCRIPT's".

5.

6.              A R G U M E N T 's :

7.

2.         (1.) [PETITIONER CONSTITUTIONAL RIGHT HAVE

9.            BEEN DENIED]:

10.

11.         (A) On [May 5, 2005], in Department [4A] of

12.    respondent court, the Honorable [CARL W. HOLM-JUDGE], presiding,

13.    Petitioner move to [MOTION TO DISMISS CHARGES/COMPLAINT, AS

14.    THE CONSTITUTIONAL RIGHT WAS VIOLATED]. But the Honorable

15.    Judge made a comment saying that this writ does not concern this

16.    case. Making the judgment to exceed or abuses of the Court discretion.

17.         (B) Petitioner is particularly aggrieved by respondent

18.    court's actions, which will result in irreparable damage to petitioner

19.    in that [THE SAN MATEO COUNTY SHERIFF OF REDWOOD CITY]. The

20.    potential harm, e.g., will be that the city jail is "RESTRICTING"

21.    petitioner at facilitating preparation of a defense. (UNDER DUE

22.    PROCESS) clause of the "CONSTITUTION". Petitioner will be

23.    confronted at the trial with [ILLEGALLY ARREST PROCEDURES

24.    THAT "MUST" INFORM THE PERSON TO BE ARRESTED/AND ILLEGALLY

25.    MIRANDA SEIZED EVIDENCE] that requirement is the general

26.    law in the "UNITED STATES". Petitioner will be forced to

27.    proceed to trial (ABSENT) a valid holding order. All the

28.

1.    proceedings about which this petition is concerned have
2.    occurred within the Territorial Jurisdict of (OVERT) respondent
3.    court's, and of this Supreme court. (See:5 Am.Jur. 2d(1995ed.), Arrest § 92 et seq.)
4.    (c) Fifth-FOUTH AMENDMENT, Privilege is available
5.    OUTSIDE" of criminal court proceeding an serves ot pretect
6.    person in all settings in which their freedom of action is curtailed
7.    from being compelled to incrimination (u.s.c.A. Const. Amend. 5).
8.    Evidence seized in violation of one's "FOUTH
9.    AMENDMENT RIGHTS" and suppressed as fruit of a (ILLEGAL
10.    SEARCH, DETENTION, OR ARREST) is not admissible in the
11.    prosecution's Case-In-chief (People V. Moore (1988) 201 CA
12.    3d 877, 885, 247 CR 353); It is still admissible to impeach the
13.    defendant testimony in court [People V. Moore Supra]; (U.S.
14.    V. Havens (1980) 446 US 620, 64 L Ed 2d 559, 100 S.Ct. 1912 [The
15.    Moore Court held that the "CONTRARY", California rule found
16.    in (People V. Belleci (1979) 24 C3d 879, 887, 157 CR 503) was
17.    abrogated by "Cal. Const art I, § 28 (d)).]
18.
19.
20.    (2) DEFENDANT'S RIGHT TO REPRESENT SELF
21.    WHEN SELF-REPRESENTATION PERMITTED:
22.
23.    (A) A defendant has the right, under the "SIXTH
24.    AND FOURTEETH AMENDMENTS" to the United States Con-
25.    stitution, to waive counsel and represent himself or herself
26.    (Faretta V. California (1975) 422 US 806, 836, 45 L. Ed 2d
27.    562, 581, 95 S. Ct. 2525); Cruz V. Hauck, 627 F. 2d at
28.

1.  220 (two or three hours a week might be inadequate).)
2.         (B). It has been suggested, but Authoritatively
3.  decided, that an incarcerated defendant's right to self-representation
4.  includes access to law library, Telephone Free, Investigators,
5.  Daily Journal, Authorized Experts Literature, legal runner,
6.  Paper's and Pen's, Plus the use of the law library and Legal
7.  Telephones Call's for [SEVEN HOURS] a day on weekdays, the
8.  opportunity to interview witnesses for extended periods of time,
9.  and Free Photocopying. (Bounds V. Smith, 430 U.S. 217, 224-25,
10. 97 S. Ct. 1491 (1977); Gluth V. Kangas, 951 F. 2d at 1510; see
11. Wilson V. Superior Court (1977) 21 C 3d. 816, 821, 142 CR 30). Once
12. those privileges have been granted to a defendant, he or she is
13. deprived of due process if the privileges are later thaken away
14. without procedural safeguards, including "DESCRIPTION OF
15. THE EXACT SAFEGUARDS THAT "MUST" BE PRVIDED). (As The United
16. States Supreme Court Noted in Montanye V. Haymes (1976) 427
17. U.S. 236 [49 L. Ed. 2d 466, 96 S. Ct. 2543]; Bounds v. Smith, 430
18. U.S. at 828; Ramos V. Lamm, 639 F. 2d 559, 524 (10th Cir. 1980);
19. HOOKS V. Wainwright, 536 F. Supp. 1330, 1342 (M.D. Fla. 1982) (Li-
20. brary without federal cases or with many missing volumes were
21. inadequate), cert. denied, 450 U.S. 1041 (1981); Tuggle V. Barks-
22. dale, 641 F. Supp. at 38-37 (Various statutes, court rules,
23. federal Procedure materials, and other books required; Missing
24. or damaged books must be repaired or replaced); (Hooks V.
25. Wainwright, 536) (Libraries without federal case reporters
26. or federal statutes would be inadequate), rev'd on other grounds,
27. 775 F. 2d 1433 (11th Cir. 1985), cert. denied, 479 U.S. 915 (1986).)
28.

# PRAYER FOR RELIEF

Petitioner is without remedy save for Habeas Corpus.
Accordingly, Petitioner Requests that the Court:

　　　　1. Issue a Writ of Habeas Corpus;

　　　　2. Issue an Order to Show Cause;

　　　　3. Declare the rights of the Parties;

　　　　4. Order Respondents to place Petitioner in "PRIVILEGE
　　　　　　Pro. Pre. Placement that is appropriate;

　　　　5. Grant any and all other relief found necessary or
　　　　　　appropriate; (See All EXHIBIT's [A-c]):


I DECLARE UNDER PENALTY OF PERJURY THAT
THE FOREGOING IS TRUE AND CORRECT ON INFOR-
MATION AND BELIEF AND THOSE I BELIEVE TO BE
TRUE:


EXECUTED ON May 23, 2005

Propria Persona

HOMER E. HAWKINS (3)

A110179

Homer E. Hawkins
5E-20  1113027
300 Bradford Street
Redwood City, CA  94063

## NOTICE

*Please include both the appellate case number and the division number on any written communication or filing submitted to this court.*

**Our website address is
http://appellatecases.courtinfo.ca.gov**

pet

adda

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**
**IN AND FOR THE**
**FIRST APPELLATE DISTRICT**
**DIVISION FIVE**

HOMER E. HAWKINS,
    Petitioner,

v.

THE SUPERIOR COURT OF SAN MATEO COUNTY,
    Respondent;

THE PEOPLE,
    Real Party in Interest.

**FILED**

MAY 1 9 2005

Court of Appeal - First App. Dist.
DIANA HERBERT

By

Court of Appeal No. A110179
San Mateo Co. Super. Ct. No. SF339103

BY THE COURT:

    The petition for writ of supersedeas and request for a stay are denied.

Date    **MAY 19 2005**        STEVENS, J.   Acting P.J.

\* _ Jones, P.J. ✓ Stevens, J. ✓ Simons, J. ✓ Gemello, J.

```
J2411H1          SUPERIOR COURT - HALL OF JUSTICE & RECORDS     08/16/05
SAN MATEO CJIS          IN AND FOR THE COUNTY OF SAN MATEO          11:44
ORGANIZATION: SC
```

CASE NO. SC058641 A     DATE: 08/16/05     TIME: 09:00     DEPT.: 11

PEOPLE VS. HOMER EARLE HAWKINS

```
JUDGE:    JOHN L GRANDSAERT, JUDGE     CLERK:     SARAI GOULART
REPORTER: CINDY BRANSHAW               2ND CLERK: NONE
D.A.:     ALLHISER                     DEFENSE CO: IN PRO PER
```

PROCEEDINGS: MOTIONS

---

CHARGES: 1. PC 460(A)
         2. PC 212.5(C)
         3. PC 245(A)(1) W/PC 1192.7(C)(23)
         4. PC 245(A)(1) W/PC 1192.7(C)(23)
         5. VC 2800.2 W/PC 1203(E)(4) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2
         ) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2) W/PC 667.5(B) W/PC 667.5(
         B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 6
         67.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667(A) W/PC 667(A) W/PC
         667(A)

---

DEFENDANT PRESENT IN CUSTODY.

DEFENDANT APPEARED IN PRO PER.

CAROL WOODWARD ALSO PRESENT FROM COUNTY COUNSEL OFFICE.

PEOPLE'S OPPOSITION TO MOTION FOR DISCOVERY, MOTION TO
    DISMISS BECAUSE LOSS OR DESTRUCTION OF EVIDENCE (FILED
    8-15-05) POINTS AND AUTHORITIES. FILED.

DEFENSE GRAND JURY MOTION IS DENIED.

DEFENSE DISCOVERY MOTION IS DENIED.

THE PEOPLE STIPULATED THAT NO SEARCH WARRANT WAS ORDER
    FOR THE MERCEDES CAR.

10:05 A.M. : JOHN KOVACH, CALLED BY PEOPLE WAS SWORN AND
    TESTIFIED UNDER DIRECT EXAMINATION.

10:15 A.M. : WITNESS TESTIFIED UNDER CROSS EXAMINATION.

CASE NO. SC058641 A      DATE: 08/16/05      TIME: 09:00      DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

THE EXHIBITS LISTED BELOW WERE INTRODUCED AND MARKED FOR
    IDENTIFICATION ON BEHALF OF THE: PEOPLE.

EXH.#1 COPIES OF POLAROID PICTURES PACKAGE.

EXH.#2 ATTACHMENT 1 (DOCUMMENTS)

EXH.#3 RECORDS OF HOMER HAWKINS FROM CDC. (PAROLE
    INFORMATION).

10:46 A.M. :  WITNESS EXCUSED.

10:47 A.M. : ANDREW ARMANDO, CALLED BY PEOPLE WAS SWORN
    AND TESTIFIED UNDER DIRECT EXAMINATION.

11:01 A.M. :  WITNESS EXCUSED.

11:01 A.M. : JEFF LIU, CALLED BY PEOPLE WAS SWORN AND
    TESTIFIED UNDER DIRECT EXAMINATION.

EXH.#4 A COPY OF MR. HAWKINS DRIVER LICENSE.

EXH.#5 6 PAGES OF PHOTOGRAPHS OF MR. HAWKINS MERCEDES
    CAR.

11:16 A.M. :  WITNESS TESTIFIED UNDER CROSS EXAMINATION.

11:18 A.M. :  WITNESS EXCUSED.

11:18 A.M. : ANDREW ARMANDO, PREVIOUSLY SWORN, RESUMED
    THE STAND AND TESTIFIED FURTHER UNDER RE-CROSS
    EXAMINATION.

11:19 A.M. :  WITNESS TESTIFIED UNDER CROSS EXAMINATION.

11:21 A.M. :  WITNESS EXCUSED.

THE EXHIBITS LISTED BELOW WERE PREVIOUSLY MARKED FOR
    IDENTIFICATION ON BEHALF OF THE PEOPLE AND ARE NOW
    ADMITTED:

DEFENDANT OBJECTS THAT EXH. 1 AND 5 NOT BE ADMITTED INTO
    EVIDENCE.

THE COURT ORDERS THAT ALL EXH. ARE ADMITTED INTO
    EVIDENCE.

CASE NO. SC058641 A      DATE: 08/16/05      TIME: 09:00      DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

DEFENSE MOTION TO SUPPRESS IS DENIED DENIED.

BAIL REMAINS SET AT $500,000.00.

DEFENDANT REMAINS IN CUSTODY.

DEFENDANT ORDERED TO RETURN.

MATTER CONTINUED TO 10/17/2005 AT 8:30 A.M. IN SCRWC
        COURT, D- 11 FOR JURY TRIAL.

ENTERED ON CJIS BY S.GOULART DATE 08/16/2005.

```
J2411H1            SUPERIOR COURT - HALL OF JUSTICE & RECORDS      10/14/05
SAN MATEO CJIS            IN AND FOR THE COUNTY OF SAN MATEO          17:12
ORGANIZATION: SC
```

CASE NO. SC058641 A    DATE: 10/14/05    TIME: 09:00    DEPT.: 11

PEOPLE VS. HOMER EARLE HAWKINS

```
JUDGE:    JOHN L. GRANDSAERT, JUDGE     CLERK:     SANDY HARRIS
REPORTER: CINDY BRANSHAW                2ND CLERK: NONE
D.A.:     ALLHISER                      DEFENSE CO: NONE
```

PROCEEDINGS: FURTHER PROCEEDINGS

---

```
CHARGES: 1. PC 460(A)
         2. PC 212.5(C)
         3. PC 245(A)(1) W/PC 1192.7(C)(23)
         4. PC 245(A)(1) W/PC 1192.7(C)(23)
         5. VC 2800.2 W/PC 1203(E)(4) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2
         ) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2) W/PC 667.5(B) W/PC 667.5(
         B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 6
         67.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667(A) W/PC 667(A) W/PC
         667(A)
```

---

THIS MATTER WAS PLACED ON CALENDAR FOR "HOUSEKEEPING"
    MATTERS BEFORE THE TRIAL WHICH IS SCHEDULED FOR OCTOBER
    17, 2005

DEPUTY DA MARY ALLHISER PRESENT.

DEFENDANT PRESENT IN CUSTODY.

DEFENDANT IS IN PRO-PER STATUS

WHEN ASKED BY THE COURT, THE DEFENDANT, HOMER HAWKINS,

STATES THAT HE STILL WANTS TO REPRESENT HIMSELF

WHEN ASKED BY THE COURT, THE DEFENDANT, HOMER HAWKINS, STATES THAT HE WANTS TO WEAR JAIL CLOTHING DURING HIS TRIAL

NOTICE OF MOTION FOR {COURT ORDER VIOLATION} FOR QUALIFIED EXPERTS. MEMEOANDUM OF POINTS AND AUTHORITIES FILED.

THE DEFENDANT MAKING AN ORAL MOTION FOR CONTINUANCE

CASE NO. SC058641 A       DATE: 10/14/05       TIME: 09:00       DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

THE COURT PROCEEDS WITH DEFENDANT'S MOTIONS

THE COURT READS POSTCARD FROM THE OFFICE OF CHIEF TRIAL
    COUNSEL/INTAKE THAT DEFENDANT RECEIVED IN REGARDS TO THE
    COMPLAINT HE FILED

POSTCARD RETURNED TO DEFENDANT

THE COURT IS TRYING TO CLARIFY WHAT EXACTLY THE
    DEFENDANT IS ASKING IN REGARDS TO HIS MOTION ON
    QUALIFIED EXPERTS, AS WELL AS WHY HE IS ASKING FOR A
    CONTINUANCE

THE COURT WILL RECESS UNTIL 1:30 P.M.

DEFENDANT NEEDS TO BE MORE SPECIFIC IN HIS REQUESTS

1:30 P.M. : COURT RECONVENED.

DEFENDANT PRESENT IN CUSTODY.

DEPUTY DA MARY ALLHISER PRESENT.

DEPUTY COUNTY COUNSEL CAROL WOODARD PRESENT.

THE COURT PROCEEDS WITH DEFENDANT'S MOTIONS

1:39 P.M.  :  ATTORNEY WOODWARD ADDRESSED THE COURT IN
    REGARDS TO HOW MAY HOURS THE DEFENDANT MAY SPEND IN THE
    LAW LIBRARY, IF BOOKS CAN BE CHECKED OUT TO THE
    DEFENDANT AND IF THE DEFENDANT HAS ACCESS TO A COMPUTER

1:43 P.M. : CYNTHIA, CALLED BY ATTORNEY CAROL WOODWARD
    WAS SWORN AND TESTIFIED UNDER DIRECT EXAMINATION.

WITNESSES' LAST NAME IF FILED UNDER SEAL

THE FOLLOWING EXHIBITS WERE MARKED FOR IDENTIFICATION
    AND ADMITTED INTO EVIDENCE ON BEHALF OF THE SHERIFF'S
    DEPARTMENT :

SHERIFF'S EXHIBIT 1:  2 PAGE DOCUMENT ENTITLED
    "CORRECTIONAL FACILITIES LIBRARY"

SHERIFF'S EXHIBIT 2:  9 PAGE DOCUMENT ENTITLED "DISPLAY
    INMATE MOVEMENT LOG"

CASE NO. SC058641 A     DATE: 10/14/05     TIME: 09:00     DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

1:54 P.M. :  WITNESS TESTIFIED UNDER CROSS EXAMINATION.

DOCUMENTS THAT DEFENDANT HAS SHOWN TO DDA ALLHISER AND
    TO THE WITNESS, DEFENDANT DOES NOT WANT MARKED AS
    EXHIBITS

2:05 P.M. :  WITNESS EXCUSED.

AT 2:10 P.M.  :  WITNESS, HOMER HAWKINS, TESTIFIES ON
    BEHALF OF HIMSELF

2:17 P.M. :  WITNESS TESTIFIED UNDER CROSS EXAMINATION.

2:22 P.M. :  WITNESS EXCUSED.

DEFENDANT STATES THAT HE WOULD LIKE DOCUMENTS THAT WERE
    SHOWN TO WITNESS, CYNTHIA, MARKED AS EXHIBITS

THE FOLLOWING EXHIBITS WERE MARKED FOR IDENTIFICATION
    AND ADMITTED INTO EVIDENCE ON BEHALF OF THE DEFENDANT :

DEFENDANT'S EXHIBT A:   SERIES OF 4 PAGES, 2 INMATE
    REQUEST FORMS, DOCUMENT ENTITLED SAN MATEO COUNTY LAW
    LIBRARY, COPY OF FRONT OF ENVELOPE, ADDRESSED TO GARY
    JERNIGAN

DEFENDANT'S MOTION FOR APPOINTMENT OF EXPERTS DENIED

THE COURT FINDS THAT THE DEFENDANT HAS BEEN GIVEN ACCESS
    TO LAW LIBRARY

DEFENDANT WILL NOT BE GOING FORWARD WITH EX-PARTE
    DISCOVERY

THE COURT WILL RULE ON DEFENDANT'S REQUEST FOR
    TRANSCRIPTS FROM PRIOR HEARINGS ON MONDAY, OCTOBER 17,
    2005

THE DEFENDANT HAS CONCERNS THAT HIS INVESTIGATING
    OFFICER HAS BEEN DENIED ACCESS TO THE PEOPLE'S EXHIBITS

THE COURT FINDS THAT THE DEFENDANT'S INVESTIGATING
    OFFICER DOES HAVE ACCESS TO THE PEOPLE'S EXHIBITS

COURT AND COUNSEL DISCUSS DEFENDANT'S PRIOR FILED
    MOTIONS

CASE NO. SC058641 A    DATE: 10/14/05    TIME: 09:00    DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

DEFENDANT'S MOTION TO DISQUALIFY JUDGE GRANDSAERT
    DENIED.

DEFENDANT'S MOTION RE: MIRANDA DENIED.

DEFENDANT'S MOTION RE: PC 1538.5 DENIED.

DEFENDANT'S MOTION RE: RIGHT TO CERTAIN SERVICES DENIED.

DEFENDANT'S MOTION TO EXCLUDE EVIDENCE DENIED.

DEFENDANT'S MOTION TO DISMISS PRIORS DENIED.

COURT AND COUNSEL DISCUSS PROTOCOL DURING TRIAL

DEFENDANT'S MOTION TO BIFURCATE PRIORS GRANTED.

RULING COULD CHANGE IF DEFENDANT TESTIFIES

COURT AND COUNSEL DISCUSS TIME LIMIT DURING JURY VOIR
    DIRE

THE COURT WILL ALLOW EACH SIDE 30 MINUTES FOR JURY VOIR
    DIRE AND THEN EACH SIDE 10 MINUTES WHEN NEW PROPSPECTIVE
    JURORS ARE SEATED

THE COURT WILL ALLOW EACH SIDE 30 MINUTES FOR OPENING
    STATEMENTS

DDA ALLHISER STATES FOR THE RECORD THAT SHE HAS NOT
    RECEIVED ANY DISCOVERY FROM THE DEFENDANT AS OF THIS
    DATE

THE COURT WILL ALLOW THE DEFENDANT TO HAVE A COPY OF THE
    CLERKS MINUTES.   THE MAY NOT BE AVAILABLE TO THE
    DEFENDANT UNTIL THE FOLLOWING DAY

TRIAL SCHEDULE WILL BE AS FOLLOWS:  DDA ALLHISER AND THE
    DEFENDANT WILL NEED TO BE IN COURT BY 8:30 A.M.

SCHEDULE FOR THE JURY WILL BE FROM 9:00 A.M. UNTIL NOON
    AND THEN FROM 1:30 P.M. UNTIL 4:30 P.M.

PREVIOUS DATE OF OCTOBER 17, 2005 AT 8:30, REMAINS AS
    SET

CASE NO. SC058641 A      DATE: 10/14/05      TIME: 09:00      DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

PEOPL'S PROPOSED WITNESS LIST FILED.

JURY INSTRUCTIONS FILED.

PEOPLE'S TRIAL MOTION TO ADMIT THE DEFENDANT'S PAROLE-
    AT LARGE STATUS AS EVIDENCE OF MOTIVE AND INTENT; POINTS
    AND AUTHORITIES FILED.

PEOPLE'S MOTION TO ADMIT EVIDENCE OF FELONY CONVICTIONS
    FOR IMPEACHMENT OF DEFENDANT FILED.

PEOPLE'S MOTION TO EXCLUDE EVIDENCE OF AND REFERENCE TO
    "STRIKE" ALLEGATIONS AND CONSEQUENCES, EVIDENCE CODE
    210, 352 FILED.

SPECIAL PR-VOIR DIRE JURY INSTUCTIONS RECEIVED

DEFENDANT REMAINS IN CUSTODY.

BAIL REMAINS SET AT $500,000.00.

ENTERED ON CJIS BY S.HARRIS DATE 10/14/2005.

```
J2411H1          SUPERIOR COURT - HALL OF JUSTICE & RECORDS       10/17/05
SAN MATEO CJIS            IN AND FOR THE COUNTY OF SAN MATEO          14:40
ORGANIZATION: SC
```

CASE NO. SC058641 A       DATE: 10/17/05       TIME: 08:30       DEPT.: 11

PEOPLE VS. HOMER EARLE HAWKINS

```
JUDGE:      JOHN L. GRANDSAERT, JUDGE        CLERK:      SARAI GOULART
REPORTER: CINDY BRANSHAW                     2ND CLERK:  NONE
D.A.:     ALLHISER                           DEFENSE CO: PRO PER
```

PROCEEDINGS: JURY TRIAL

---

CHARGES: 1. PC 460(A)
        2. PC 212.5(C)
        3. PC 245(A)(1) W/PC 1192.7(C)(23)
        4. PC 245(A)(1) W/PC 1192.7(C)(23)
        5. VC 2800.2 W/PC 1203(E)(4) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2
        ) W/PC 1170.12(C)(2) W/PC 1170.12(C)(2) W/PC 667.5(B) W/PC 667.5(
        B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 6
        67.5(B) W/PC 667.5(B) W/PC 667.5(B) W/PC 667(A) W/PC 667(A) W/PC
        667(A)

---

TRIAL DAY 2.

8:30 A.M. : COURT CONVENED.  COUNSEL PRESENT.  DEFENDANT
    PRESENT IN CUSTODY.

DEFENDANT APPEARED IN PRO PER.

MR. VIERRA DEFENSE INVESTIGATER ALSO PRESENT IN COURT

INVESTIGATOR OFFICER BEN HAND ALSO PRESENT

NOTICE OF MOTION FOR (RETURN OF PERSONAL PROPERTY)
    FILED.

MEMORANDUM FROM VIERRA INVESTIGATIONS RECEIVED  9-25-05

MEMORANDUN FROM VIERRA INVESTIGATIONS RECEIVED 9-25-05

PEOPLE'S MOTION TRIAL MOTION TO ADMIT THE DEF. PAROLEE
    GRANTED.

PEOPLES MOTION MOT.TO EXCLUDE EVID. OF AND REFERENCE TO
    STRIKE GRANTED.

CASE NO. SC058641 A      DATE: 10/17/05      TIME: 08:30      DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

PEOPLES MOTION MOT. TO ADMIT EVID. OF FELONY CONVICTIONS
    FOR IMPEACHMENT OF DEFENDANT GRANTED.

DEFENSE MOTION TO HAVE A EXPERT ASSISTANCE REGARDING
    JURY SELECTION DENIED.

8:58 A.M. : COURT RECESSED.

9:37 A.M. :  THE CLERK WAS DIRECTED TO CALL FOR TRIAL
    JURORS.

9:37 A.M. :  THE PERSONS ON THE ATTACHED TRIAL SUMMARY
    LIST WHO WERE SUMMONED TO APPEAR AS JURORS IN THIS CASE
    APPEARED AND ANSWERED TO THE CALL OF THEIR NAMES; AND,
    THE PERJURY ADMONITION TO ANSWER ALL QUESTIONS TOUCHING
    UPON THEIR QUALIFICATIONS TO SERVE AS JURORS IN THIS
    CASE WAS ADMINISTERED.

9:43 A.M. : COURT RECONVENED.  COUNSEL PRESENT.
    DEFENDANT PRESENT IN CUSTODY.

9:43 A.M. :  JURORS NOW PRESENT.

9:44 A.M. : THE PERJURY ADMONITION TO ANSWER ALL
    QUESTIONS TOUCHING UPON THEIR QUALIFICATIONS TO SERVE AS
    JURORS IN THIS CASE WAS ADMINISTERED.

THE COURT INTRODUCED THE PARTIES AND READ THE WITNESS
    LIST.

SEE TRIAL SUMMARY LIST ATTACHED.

9:45 A.M. :  JURY SELECTION COMMENCED.

THE INFORMATION WAS READ BY THE COURT.

PROSPECTIVE JURORS ADMONISHED.

10:25 A.M. : COURT  RECESS FOR BREAK UNTIL 10:50.

JURORS REMAIN IN COURTROOM FOR HARDSHIP.

JUROR # 484 WAS EXCUSED FOR HARDSHIP

JUROR # 473 WAS EXCUSED FOR HARDSHIP

CASE NO. SC058641 A      DATE: 10/17/05      TIME: 08:30        DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

JUROR # 439 WAS EXCUSED FOR HARDSHIP

JUROR # 219 WAS EXCUSED FOR HARDSHIP

10:40 A.M. : COURT  RECESS FOR BREAK.

10:50 A.M. : COURT RECONVENED.  COUNSEL PRESENT.
     DEFENDANT PRESENT IN CUSTODY.

MR. VIERRA ALSO PRESENT IN COURT.

INVESTIGATOR OFFICER BEN HAND ALSO PRESENT

JURY SELECTION CONTINUES

PROSPECTIVE JURORS ADMONISHED.

11:58 A.M. : COURT RECESS FOR LUNCH UNTIL 13:30.

1:30 P.M. : COURT RECONVENED.  COUNSEL PRESENT.
     DEFENDANT PRESENT IN CUSTODY.

1:30 P.M. :  JURORS NOW PRESENT.

JURY SELECTION CONTINUES

MR. VIERRA ALSO PRESENT IN COURT

INVESTIGATOR OFFICER BEN HAND ALSO PRESENT IN COURT

2:20 P.M. :  JURY SELECTION RESUMED.

2:20 P.M. :  BOTH SIDES BEING SATISFIED; THE FOLLOWING
     PERSONS WERE GIVEN THE ACKNOWLEDGMENT AND AGREEMENT TO
     TRY THE CASE AS JURORS (AND ALTERNATE JUROR(S)):

1. 58

2. 798

3. 501

4. 99

5. 451

CASE NO. SC058641 A      DATE: 10/17/05      TIME: 08:30      DEPT.: 11
PEOPLE VS. HOMER EARLE HAWKINS

6.  951

7.  486

8.  905

9.  829

10.  378

11.  841

12.  493

2:18 P.M. :  BOTH SIDES BEING SATISFIED, THE FOLLOWING
       PERSONS WERE GIVEN THE ACKNOWLEDGMENT AND AGREEMENT TO
       TRY THE CASE AS ALTERNATE JUROR(S):

ALTERNATE JUROR NO. 1. 1054

ALTERNATE JUROR NO. 2. 1121

2:19 P.M. :  THE REMAINING PROSPECTIVE JURORS WERE
       THANKED AND EXCUSED BY THE COURT.  PROSPECTIVE JURORS'
       FINAL STATUS IS REFLECTED ON THE TRIAL SUMMARY LIST
       ATTACHED.

THE COURT INSTRUCT THE JURY

14:38  JURORS ARE EXCUSES FOR THE DAY AND ORDERED TO
       RETURN 10/18/05 AT 9:00

DEFENSE MOTION HIS RIGHTS HAS BEEN VIOLATED DENIED.

2:40 P.M. :  COURT ADJOURNED TO RECONVENE ON 10/18/2005
       AT 8:30 A.M. IN SCRWC, D- 11 FOR FURTHER JURY TRIAL.

DEFENDANT REMAINS IN CUSTODY.

BAIL REMAINS SET AT $500,000.00.

ENTERED ON CJIS BY S.GOULART DATE 10/17/2005.

US POSTAGE $06.40°
FEB
72442-4888
MAILED FROM ZIP CODE

ATTN:

OFFICE OF THE CLERK
NORTHERN DISTRICT OF
CALIFORNIA

450 GOLDEN GATE, AVE
SAN FRANCISCO, CALIFORNIA
ZIP - 94102

RECEIVED

FEB 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PRIORITY MAIL
WWW.USPS.COM

HOMER E HAWKINS III
EDC # 12-55134
BLYTHE-5000 STATE HIGHWAY
P.O. BOX 2199
BLYTHE CALIFORNIA
ZIP - 92226

LEGAL MAIL