1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET HALEY
   Deputy Attorney General
5  JOAN KILLEEN
   Deputy Attorney General
6  State Bar No. 111679
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-7004
     Telephone: (415) 703-5968
8    Fax: (415) 703-1234
     Email: Joan.Killeen@doj.ca.gov
9  Attorneys for Respondent

10                    IN THE UNITED STATES DISTRICT COURT

11               FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14  **HOMER E. HAWKINS,**                          C 08-1087 SI (PR)

                                    Petitioner,

15            **v.**

16  **DEBORAH DEXTER, Warden,**

17                                    Respondent.

18

19          **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

20

21

22

23

24

25

26

27

28

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | JULIET HALEY
Deputy Attorney General
5 | JOAN KILLEEN
Deputy Attorney General
6 | State Bar No. 111679
455 Golden Gate Avenue, Suite 11000
7 | San Francisco, CA 94102-7004
Telephone: (415) 703-5968
8 | Fax: (415) 703-1234
Email: Joan.Killeen@doj.ca.gov
9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13

14 | **HOMER E. HAWKINS,**                                C 08-1087 SI (PR)

15 |                                  Petitioner,        **ANSWER TO PETITION FOR**
                                                        **WRIT OF HABEAS CORPUS**
16 |          **v.**

17 | **DEBORAH DEXTER, Warden,**

18 |                                  Respondent.

19 | Respondent provides this Answer to the Petition for Writ of Habeas Corpus:

20 | I

21 | <u>CUSTODY</u>

22 | Petitioner, Homer E. Hawkins, is lawfully in state custody pursuant to the 2005 judgment

23 | for convictions of robbery, assault with a deadly weapon, burglary, Cal. Penal Code §§ 212.5(c),

24 | 245(a)(1), 460(a), and evading a police officer, Cal. Vehicle Code § 2800.2, with prior conviction

25 | enhancements, Cal. Penal Code §§ 667(a), 667.5(b), 1170.12(c)(2),  for which he was sentenced to

26 | 80 years to life by the San Mateo County Superior Court.

27

28

II

## EXHAUSTION OF STATE REMEDIES

Petitioner has exhausted his state remedies with respect to the claims raised in his petition.

III

## STATEMENT OF FACTS AND PROCEDURE

Respondent incorporates by reference the statement of facts and procedure contained in the accompanying memorandum of points and authorities in support of the answer.

IV

## DENIAL OF CLAIMS

Respondent denies that petitioner's federal constitutional rights were violated in any way. Specifically, respondent denies that petitioner's right to due process was violated by the trial court's failure to instruct on a lesser related offense, and by the jury's verdicts that he committed two counts of assault with a deadly weapon; that his sentence was cruel and unusual under the Eighth Amendment; and that he was deprived of jury fact-finding at sentencing under the Sixth Amendment.

V

## AVAILABLE TRANSCRIPTS AND RECORDS

Attached are the Clerk's and Reporter's Transcripts of the trial, together with other relevant records, as indicated in the Index of State Court Records Lodged in Support of Answer, incorporated herein by reference.

VI

## GENERAL DENIAL

Except as otherwise admitted, respondent denies each and every allegation of the petition which, if found true, would form the basis of federal habeas relief.

1        WHEREFORE, respondent respectfully requests that the petition for writ of habeas corpus

2    be denied.

3            Dated:  June 27, 2008

4                            Respectfully submitted,

5                            EDMUND G. BROWN JR.
                             Attorney General of the State of California

6                            DANE R. GILLETTE
                             Chief Assistant Attorney General

7                            GERALD A. ENGLER
                             Senior Assistant Attorney General

8

9                            JULIET HALEY
                             Deputy Attorney General

10

11                           /s/ Joan Killeen
                             JOAN KILLEEN

12                           Deputy Attorney General

13                           Attorneys for Respondent

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer To Petition For Writ Of Habeas Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

3

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
JULIET HALEY
Deputy Attorney General
JOAN KILLEEN
Deputy Attorney General
State Bar No. 111679
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-3664
    Telephone: (415) 703-5968
    Fax: (415) 703-1234
    Email: Joan.Killeen@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **HOMER E. HAWKINS,**<br><br>                              Petitioner,<br><br>          **v.**<br><br>**DEBORAH DEXTER, Warden,**<br><br>                              Respondent. | C 08-1087 SI (PR) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   JULIET HALEY
    Deputy Attorney General
5   JOAN KILLEEN
    Deputy Attorney General
6   State Bar No. 111679
      455 Golden Gate Avenue, Suite 11000
7     San Francisco, CA 94102-3664
      Telephone: (415) 703-5968
8     Fax: (415) 703-1234
      Email: Joan.Killeen@doj.ca.gov
9   Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
    HOMER E. HAWKINS,                          C 08-1087 SI (PR)
14
                              Petitioner,      **MEMORANDUM OF POINTS
15                                             AND AUTHORITIES IN
                v.                             SUPPORT OF ANSWER TO
16                                             PETITION FOR WRIT OF
    DEBORAH DEXTER, Warden,                    HABEAS CORPUS**
17
                              Respondent.
18

19          In its Order to Show Cause, this Court identified petitioner's claims for relief as (1) "that

20   his right to due process was violated because the trial court failed to sua sponte instruct the jury on

21   grand theft as a lesser-included offense of robbery"; (2) "that the evidence was insufficient to

22   support the conviction for two counts of assault with a deadly weapon"; and (3) "that his 80-to-life

23   sentence (a) was cruel and unusual punishment and (b) was imposed without the facts being found

24   by a jury and beyond a reasonable doubt." 4/18/08 Order to Show Cause at 7. As shown below, the

25   state court reasonably rejected petitioner's claims.

26                          **STATEMENT OF THE CASE**

27          On May 18, 2005, the San Mateo County District Attorney charged petitioner with

28
    Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
    (PR)

1  robbery, two counts of assault with a deadly weapon, burglary, Cal. Penal Code §§ 212.5(c),

2  245(a)(1), 460(a), and evading a police officer, Cal. Vehicle Code § 2800.2, with allegations that

3  he had four prior strike convictions, three prior serious felony convictions, and had served nine prior

4  prison terms, Cal. Penal Code §§ 667(a), 667.5(b), 1170.12(c)(2).  Exh. A [hereafter "CT"] 13-25.

5  Petitioner represented himself in trial proceedings.  CT 8.

6          On October 19, 2005, a jury found petitioner guilty as charged.  CT 514-518.  On

7  November 18, 2005, the trial court found the prior conviction allegations to be true.  CT 589.  On

8  December 20, 2005, the court sentenced petitioner to a total term of 80 years to life.  CT 694-699.

9          On June 19, 2007, the California Court of Appeal affirmed petitioner's judgment, Exh. F,

10  and on July 9, 2007, denied rehearing.  Exh. H.  On August 29, 2007, the California Supreme Court

11  denied review.  Exh. J.

12          Petitioner filed his federal petition for writ of habeas corpus on February 22, 2008.  The

13  petition is timely.  28 U.S.C. § 2244(d)(1); *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

14                              **STATEMENT OF FACTS**

15          On April 20, 2005, shortly before noon, Stephanie Norton and her two-year-old son,

16  Benjamin, returned to her home in Portola Valley.  She did not expect to see anyone there, but when

17  she arrived, she saw an unfamiliar blue Mercedes Benz parked in her driveway.  Holding her son,

18  Norton walked up to the Mercedes to get a closer look.  She was concerned because she did not

19  expect to see it there, and so she memorized its license plate.  Exh. B [hereafter "RT"] 314-315, 324-

20  326.

21          Still holding Benjamin, Norton went to her front door, but no one was there.  She walked

22  all the way around her house to see if she could find anyone, but still saw no one.  When she

23  returned to her driveway, she saw petitioner, who was carrying a bag, approach her from the side

24  of her house.  RT 326- 328, 330-331.  When he saw her, he said, "Whoa, whoa, whoa."  Norton

25  asked him who he was and what he was doing.  RT 328.  Petitioner said he was there from "the

26  insurance," and that her husband sent him.  Norton "knew something was wrong" when he said that.

27  RT 329.  She started to back up toward a storage shed.  As she did so, she realized that petitioner

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

2

was carrying a pillowcase that looked like it was full.  When petitioner walked quickly over to the driver's side of the Mercedes, Norton realized they were being robbed and told petitioner to stop. RT 329-332.  She went to the driver's side of the Mercedes to "intercept" petitioner.  He was already in the driver's seat, with the door open, and she was "[r]ight next to it."  RT 330.  Norton could see her pillowcase on the front passenger seat.  She said, "That's our stuff.  Give that back."  RT 331. Petitioner started the car and told Norton, "You better get out of the way."  Norton "didn't do anything," but petitioner "started rolling the car backwards a little bit."  RT 332.  Norton was holding her son in her left arm.  She was near the inside of the driver's door so that she could touch it with her hand in an effort to stop petitioner.  Petitioner "said, you better get out of the way, again. And then, the car went backwards really fast. . . .  [¶]  It seemed like he gunned it.  All of a sudden it started shooting backwards."  RT 333.  Norton "kind of sidestepped" to get out of the way of the open driver's door.  She was not struck by the door, but she "had to move fast to get out of the way, or else [she] would have been hit.  It was moving right at me.  The door was moving right at me, and the wheels were practically right next to me."  RT 334.  On cross-examination, Norton told petitioner, "There wasn't any cussing.  The second time you said, you better get out of the way.  It was definitely said in a serious sort of loudish and gruff tone.  And my impression was that I needed to get out of the way of the car."  RT 366.  Norton was less than one foot from the door and was touching it with her hand.  She was about one foot from the side of the car.  RT 367-368.[1]  When petitioner's car backed up, Norton saw the tires spin and kick up gravel in her driveway.  RT 369.

Norton called the police about 12:08 p.m., after petitioner left.  They arrived about 1:00 p.m. and checked her house for additional suspects.  RT 335-336.  Inside the house, Norton saw that the window to her back door was raised and the screen torn.  She also learned that the sliding glass door in the master bedroom was open and the lock on the screen for the sliding glass door in the guest room was broken.  RT 358-360.

About 1:30 or 2:00 p.m., Norton went to East Palo Alto, where she identified petitioner,

---

1.  When fully opened, the outside edge of the driver's side door was 45 inches from the side of the car.  RT 399.

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

3

the Mercedes, and some of her belongings from the pillowcase on the front seat.  She recalled seeing some of her jewelry, her jewelry box, her earring rack, her husband's belt and leather jacket, a jar of coins, a gift certificate, and her camera and video camera.  RT 336-341.  Norton also recognized the pillowcase petitioner had in his possession, which previously had been on a pillow in her master bedroom.  RT 346.

Deputy Sheriff Robert Lawrence was on duty on a marked sheriff's motorcycle that day. RT 195.  He heard a dispatch regarding a reported burglary in the area.  The suspect description was a Black male driving a light blue Mercedes with a license plate number of 3AZL346.  The dispatch described the suspect as a "parolee at large." RT 197.  Lawrence passed the Mercedes near Highway 280.  When he turned to follow the vehicle, the driver accelerated away from him.  RT 198-199. Lawrence sped up to follow the Mercedes and saw it run through a stop sign at Alpine and Highway 280.  He turned on his lights and siren and followed the vehicle northbound on 280.  RT 199-200. Initially, the Mercedes and Lawrence were traveling about 80 miles per hour.  After the driver turned to look at Lawrence, he accelerated to about 100 miles per hour and was passing other vehicles on the highway.  Lawrence could not keep up with him and felt it was unsafe to continue the pursuit at that speed.  He saw the Mercedes exit at Woodside Road and advised other officers of the vehicle's last known location.  Lawrence never saw the driver slow down after the chase began.  RT 201-203.

Deputy Sheriff Andrew Armando saw Deputy Lawrence in pursuit of the Mercedes on Highway 280.  RT 209-210.  The Mercedes "was driving erratically and very fast."  RT 210. Armando saw it make "an abrupt three-lane change, from the fast lane all the way over to the shoulder, right before the exit to Woodside." RT 210-211.  Armando lost sight of the Mercedes after it turned onto Woodside Road, but saw it again on Stockbridge, where the driver ran a stop sign at about 30 miles per hour.  By then, Armando had learned the driver was wanted on a warrant for being a parolee at large.[2]  When Armando resumed the pursuit, the driver accelerated to about 80

---

2.  A parolee at large is a person who has not reported in or has committed another offense in violation of his parole status.  RT 250.

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

4

miles per hour.  He drove through two stop signs at about 40 miles per hour, then increased his speed to 85 miles per hour.  RT 211-216.  The Mercedes went through a stop sign on Selby at 80 miles per hour, then went through another stop sign at El Camino, where Selby ended, at 50 miles per hour. As the car turned onto El Camino, it went across the road to the wrong side, then returned to the right side of the road as it turned on Fifth Avenue and continued at about 60 miles per hour.  RT 217-220.  After the Mercedes ran two stop signs at 60 miles per hour and drove on the wrong side of the road at 70 miles per hour, Armando decided to quit the pursuit.  Instead of slowing, the Mercedes continued to accelerate, eventually turning onto Highway 101.  RT 221-223.

East Palo Alto Police Officer Angel Sanchez pursued the Mercedes for a short distance after it exited Highway 101.  He lost sight of the vehicle as it fled through residential neighborhoods at 60 miles per hour.  RT 230-233.  East Palo Alto Police Officer Jeff Liu saw the Mercedes just after it had parked in a carport in Manhattan Alley.  A man, whom Officer Liu identified as petitioner, was on the passenger side taking items out of the car.  When Officer Liu approached petitioner with his gun drawn, petitioner made eye contact with him, then started running.  Liu gave chase and caught up to him.  When he told petitioner to get on the ground, however, petitioner refused.  RT 247-253.  Even though Liu hit him with his baton, "it didn't seem to have much of an effect on him."  RT 253.  Petitioner started running again, and Liu resumed the pursuit.  RT 253-254. Eventually, petitioner was arrested in his apartment building after he complied with Liu's order to get down on the ground.  RT 258-260.

Deputy Sheriff John Kovach took custody of petitioner at the apartment complex.  While petitioner was in the back of his patrol car, petitioner's sister approached and said petitioner had money that she needed.  RT 271-273.  After Deputy Kovach asked petitioner his name, petitioner said, "I ain't saying shit."  RT 296-297.  Stephanie Norton made a positive identification of petitioner while he was with Deputy Kovach.  She also identified the Mercedes and some of her belongings in the car.  RT 275-278.

Deputy Kovach spent "hours" going through the contents of the Mercedes.  RT 279.  He found a screwdriver, which Norton said did not belong to her, inside the pillowcase that was leaning

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

5

1  against the passenger side door of the Mercedes.  RT 278-279, 286, 304-306, 388-389.  "There were

2  very many items inside of the vehicle," including inside the glove box, center console, passenger

3  compartment, side compartments, and trunk.  RT 298.  Included among the documents found in the

4  vehicle was a purchase contract for a multi-million dollar house and a purchase contract for a new

5  Lamborghini.  RT 299-300.  When Deputy Kovach searched petitioner, he found another

6  screwdriver, as well as a coin bag and a case for sunglasses that contained 15 $100 bills.  RT 301-

7  302.  Deputy Kovach did not send the screwdriver found in the pillowcase for fingerprint processing

8  because he did not believe the identity of the burglar was in question.  RT 307.  Similarly, Detective

9  Ben Hand did not have the Mercedes or its contents dusted for fingerprints because he believed it

10  was unnecessary.  RT 404-405.

11  Deputy Sheriff Tim Glitz determined that the point of entry into Norton's home was the

12  rear door that entered into a laundry room.  The screen on the door's window had been cut and there

13  were pry marks under the frame of the window.  He was unable to find any identifying fingerprints

14  at the point of entry or inside the house.  RT 375-378.

15  Petitioner's sister, Tracy Hawkins, testified that she had never known petitioner to

16  threaten, shoot, or stab anyone when arrested or at any other time.  She had never known petitioner

17  to be in need of money, clothing, or anything else.  She was aware that he had documentation for

18  a large loan and was in the process of buying a house.  Petitioner was not employed on April 20,

19  2005, and had not had a job for years.  Petitioner had been staying at her apartment for about five

20  months before his arrest.  He gave her about $100 a month for rent, and she provided him with food

21  and shelter.  He was the only person who had keys to the Mercedes.  RT 468-475.

22  **STANDARD FOR GRANTING RELIEF**

23  The Court reviews the state court's rulings under a "highly deferential" standard imposed

24  by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Woodford v. Visciotti*, 537

25  U.S. 19, 24 (2002) (per curiam).  The federal court has no authority to grant habeas relief unless the

26  state court's ruling was "contrary to, or involved an unreasonable application of," clearly established

27  Supreme Court precedent.  28 U.S.C.  § 2254(d)(1).  A decision constitutes an "unreasonable

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

1  application" of Supreme Court law if the state court's application of law to the facts is "objectively

2  unreasonable." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's ruling based on a

3  factual determination also must be "'objectively unreasonable' in light of the record" to warrant

4  habeas relief.  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2).  The

5  petitioner bears the burden of showing that the state court's decision was unreasonable. *Visciotti*,

6  537 U.S. at 25.  Even if a constitutional error occurred, habeas relief is available only if the error had

7  a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, ___

8  U.S. ___, 127 S.Ct. 2321, 2325, 2328 (2007), internal quotation marks omitted *see Brecht v.*

9  *Abrahamson*, 507 U.S. 619, 637 (1993).

10  **ARGUMENT**

11  **I.**

12  **PETITIONER'S CONTENTION THAT THE TRIAL COURT SHOULD**
    **HAVE INSTRUCTED ON GRAND THEFT FROM A PERSON AS A**
13  **LESSER OFFENSE DOES NOT STATE A COGNIZABLE CLAIM**

14       Petitioner contends the trial court should have instructed the jury on grand theft from a

15  person as a lesser included offense of robbery.  The state court rejected his claim under state law,

16  finding grand theft was not a lesser included offense.  Petitioner's contention that the instruction

17  should have been given does not state a cognizable claim.

18  **A.   State Court Record**

19       After the prosecution rested, the court and parties raised the issue of instruction on lesser

20  included offenses. RT 428.  The prosecutor stated grand theft person was a standard lesser included

21  offense of robbery, but argued  "there is no reasonable set of facts to justify grand theft person,

22  simple grand theft, or petty theft."  RT 429.  The court stated it would decide the question of lesser

23  included offense instructions the next day, after petitioner presented his evidence.  RT 432.

24       The next day, the court ruled as follows:

25       I have reviewed testimony taken in this case, and have determined there is not a basis
         for lesser included instructions in this case.
26       Mr. Hawkins has not requested any.  But even had he requested them, there is no
         evidentiary basis for the jury to find the defendant guilty of any lesser offense, if they
27       were to find him not guilty of the greater offense.
         So, in other words, there is no evidentiary basis for lesser includeds in this case.
28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

7

1   That is the argument of the People.  I reviewed the People's memorandum.  And I do
2   agree with the statements of law and facts stated therein.  And my own independent
    research into the law advises me that there is not a place for lesser included instructions
3   in this case.

RT 485.
4

**B.   State Court Of Appeal's Ruling**
5

6        Hawkins argues the trial court erred by failing sua sponte to instruct the jury on
    grand theft from the person of another as a lesser included offense of robbery.

7        A trial court has a duty to instruct sua sponte on a lesser included offense if there is
    substantial evidence that the lesser offense, but not the greater offense, was committed.
8   (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 160.)  Here, the trial record did not
    contain substantial evidence that Hawkins committed the lesser offense of grand theft
9   from the person of another.  (§ 487, subd. (c).)  That offense occurs when a defendant
    takes property that is in some way actually upon or attached to another person or carried
10  by or held in actual physical possession by that person.  (*In re Jesus O.* (2007) 40 Cal.4th
    859, 863.)  Unlike robbery, it does not occur when a defendant takes property from the
11  immediate presence of another.  (*Ibid.*)  Here, Hawkins took a pillowcase full of Norton's
    personal property from her house while she was not present; he carried the property to his
12  car while she objected but made no physical contact with the property; and he drove away
    with the property in his car while she stood by the car.  Hawkins never took the property
13  from Norton's person.  Therefore, an instruction on the offense of grand theft from the
    person of another was not required.
14
Exh. F at 4.
15

**C.   The State Court Reasonably Rejected Petitioner's Claim**
16

17       As the state court of appeal explained, grand theft from the person of another was not a

18  lesser included offense under the facts of this case because petitioner took property from Norton's

19  immediate presence, which constituted a robbery, rather than directly from her, which could have

20  constituted a robbery or grand theft from the person of another.  *See In re Jesus O.*, 40 Cal.4th 859,

21  863 (2007).  Accordingly, the lesser offense was, at best, a lesser related offense, but it was not a

22  lesser included offense.  Under California law, a criminal defendant does not have "a unilateral

23  entitlement to instructions on lesser offenses which are not necessarily included in the charge."

24  *People v. Birks*, 19 Cal.4th 108, 136 (1998).  The parties may nevertheless agree to instructions on

25  lesser related offenses, but such instructions should not be given if one party objects.  *Id.* at 136,

26  n.19.  Here, the prosecutor objected to any lesser related offense instructions.  Accordingly, as a

27  matter of state law, which is binding on this Court, *see Estelle v. McGuire*, 502 U.S. 62, 67-68

28  (1991), petitioner was not entitled to instruction on grand theft from the person of another, because

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

8

1  the offense at issue was not a lesser included offense and the prosecutor objected to instruction on

2  the lesser related offense.

3         Moreover, "the United States Supreme Court has expressly refrained from recognizing a

4  federal constitutional right to instructions on lesser included offenses in noncapital cases." *People v.*

5  *Breverman*, 19 Cal.4th 142, 165 (1998).  The Ninth Circuit has similarly held that the failure of a

6  state trial court to instruct on lesser included offenses in a non-capital case does not present a federal

7  constitutional claim.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*,

8  163 F.3d 1092, 1105-06 (9th Cir. 1998); *cf. Vickers v. Ricketts*, 798 F.2d 369, 371 (9th Cir. 1986)

9  (where evidence supports lesser included offense instruction in capital case, due process requires

10  that the court given instruction sua sponte).  However, "the defendant's right to adequate jury

11  instructions on his or her theory of the case might, in some cases, constitute an exception to the

12  general rule," *Solis*, 219 F.3d at 929, but there must be substantial evidence to warrant instruction

13  on the lesser included offense.  *Id*. at 929-30.  As explained above, grand theft from the person of

14  another is not a lesser included offense of robbery under the facts of this case because petitioner did

15  not take the property directly from Norton's person.  Because the elements of the offense were not

16  met, there necessarily was not substantial evidence to support instruction on the lesser offense.

17         The California Supreme Court has also found no federal constitutional entitlement to

18  instruction on lesser related offenses.  *People v. Birks*, 19 Cal.4th at 112, 123-133.  Again, the state

19  court's conclusion is consistent with federal law.  In *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998),

20  the court concluded that, in capital cases, instruction "on offenses that are not lesser included

21  offenses of the charged crime under state law . . . are not constitutionally required."  The court

22  observed, "Almost all States . . . provide instructions only on those offenses that have been deemed

23  to constitute lesser included offenses of the charged crime.  [Citation.]  We have never suggested

24  that the Constitution requires anything more."  *Id*. at 96-97.  In rejecting a rule that instruction in

25  capital cases on lesser related offenses was constitutionally required, the court explained,

26         Moreover, respondent's proposed instructions would have introduced another kind
           of distortion at trial.  Nebraska proceeded against respondent only on a theory of felony

27         murder, a crime that under state law has no lesser included homicide offenses.  The State
           therefore assumed the obligation of proving only that crime, as well as any lesser included

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

9

1    offenses that existed under state law and were supported by the evidence; its entire case
     focused solely on that obligation.  To allow respondent to be convicted of homicide
2    offenses that are *not* lesser included offenses of felony murder, therefore, would be to
     allow his jury to find beyond a reasonable doubt elements that the State had not attempted
3    to prove, and indeed that it had ignored during the court of trial.  This can hardly be said
     to be a reliable result . . . .
4

5    *Id*. at 99, original italics.   Necessarily, since instruction on lesser related offenses is not

6    constitutionally required in capital cases, it is not required in noncapital cases.  *See People v. Birks*,

7    19 Cal.4th at 123-133; *see also Anderson v. Calderon*, 232 F.3d 1053, 1082 (9th Cir. 2000) (no error

8    in refusing to instruct on second degree murder or voluntary manslaughter in capital case, because

9    California law did not recognize any lesser included offenses to felony murder).

10          Since, as a matter of state law, grand theft from the person of another was not a lesser

11   included offense in this case, and since instruction on lesser related offenses is not constitutionally

12   required, petitioner fails to state a federal constitutional claim.  Accordingly, his claim should be

13   rejected.

14                                                   **II.**

15   **THE STATE COURT REASONABLY REJECTED PETITIONER'S**
     **CLAIM THAT INSUFFICIENT EVIDENCE SUPPORTED HIS**
16   **ASSAULT CONVICTIONS**

17          Petitioner contends that insufficient evidence supported his two convictions for assault

18   with a deadly weapon.  The state court reasonably rejected his claim.

19   **A.    State Court Of Appeal's Ruling**

20          Hawkins argues there was insufficient evidence to support his convictions for assault
     with a deadly weapon based on his backing out of the driveway while Norton and her son
21   were in the path of the car door.

22          When a conviction is challenged on the ground of insufficient evidence, "the court
     must review the whole record in the light most favorable to the judgment below to
23   determine whether it discloses substantial evidence—that is, evidence which is
     reasonable, credible, and of solid value—such that a reasonable trier of fact could find the
24   defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557,
     578.)  Hawkins specifically argues there was insufficient evidence that he contemplated
25   committing battery when he drove from the house.  He argues the evidence that he twice
     warned Norton to move away from his car showed that he intended to leave without
26   hurting Norton or her son.

27          Hawkins confuses the required intent with subjective expectation or desire.
     "[A]ssault does not require a specific intent to cause injury or a subjective awareness of

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

10

the risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.)  Trial evidence demonstrated that Hawkins intentionally backed his vehicle out of the driveway while warning Norton, who was standing in the open driver's side doorway, to get out of the way.  A reasonable jury could infer from this evidence that Hawkins knew that the probable and direct result of his backing up the car was that the car door would strike Norton while she was holding her son.  Thus, there was substantial evidence that Hawkins committed an intentional act knowing the probable and direct result of that act would be a battery.

Hawkins' warnings to Norton did not shield him from criminal responsibility for taking action that would have resulted in battery had Norton not moved out of the way. When a defendant threatens to commit a battery unless the potential victim complies with a condition the defendant has no right to impose (i.e., Hawkins threatens to back into Norton unless she gets out of the way so he can leave with her property) and he has the present ability and intent to carry through with the threat, the defendant commits an assault. (*People v. Page* (2004) 123 Cal.App.4th 1466, 1473.)

Exh. F at 4-5.

## B.    The State Court Reasonably Rejected Petitioner's Claim

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.*, quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.  On habeas review, a federal court evaluating the evidence should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  Circumstantial evidence and inferences drawn from that evidence may be sufficient to support a conviction, but mere suspicion and speculation cannot support logical inferences. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

11

1    After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional

2    layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal

3    habeas court must ask whether the operative state court decision reflected an unreasonable

4    application of *Jackson* to the facts of the case. *Id*. at 1275. That is, the state court's application of

5    the *Jackson* standard must be "'objectively unreasonable.'" *Id*. at 1275 n.13, quoting *Williams v.*

6    *Taylor*, 529 U.S. 362, 409 (2000).

7    Here, the state court reasonably rejected petitioner's claim. As the state court explained,

8    petitioner misconstrued the elements of assault. The evidence showed that petitioner intentionally

9    backed his vehicle out of the driveway while Norton stood by holding her son. His "warning" that

10   she should get out of the way was in fact a threat that if she did not move, he would hit her. He had

11   no right to threaten to commit a battery in order to get her to comply with his demand so that he

12   could take her property. Since the evidence shows petitioner knew that the probable and direct

13   result of his backing up the car was that the car door would strike Norton and her son, and since he

14   had the present ability and intent to carry out his threat, the offenses of assault with a deadly weapon

15   were established. Accordingly, petitioner's claim should be rejected.

16                                            **III.**

17   **THE STATE COURT REASONABLY REJECTED PETITIONER'S**
     **CLAIM THAT HIS SENTENCE CONSTITUTED CRUEL AND**
18   **UNUSUAL PUNISHMENT**

19   Petitioner contends that his sentence of 80 years to life constitutes cruel and unusual

20   punishment. The state court reasonably rejected his claim.

21   **A.    State Court Of Appeal's Ruling**

22   Hawkins argues his sentence for 80 years to life is cruel and unusual punishment that
     violates the state and federal constitutions. He relies on the view of Justice Stanley Mosk,
23   expressed in concurring and dissenting opinions, that a sentence that cannot be completed
     in a defendant's lifetime constitutes cruel and unusual punishment. (*People v. Hicks*
24   (1993) 6 Cal.4th 784, 797 (dis. opn. of Mosk, J.); *People v. Deloza* (1998) 18 Cal.4th 585,
     600-601 (conc. opn. of Mosk, J.).) He makes no effort to support his argument with the
25   controlling decisions of the United States or California Supreme Courts. A brief review
     of those cases demonstrates that Hawkins' sentence passes constitutional muster.
26
27   A sentence violates the federal and state constitutional prohibitions against cruel and
     unusual punishment when it is so extreme and grossly disproportionate to the crime for
     which it is imposed that it shocks the conscience and offends fundamental notions of
28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

12

human dignity. (*Ewing v. California* (2003) 538 U.S. 11, 23; *In re Lynch* (1972) 8 Cal.3d 410, 424.) The burden of demonstrating such disproportionality rests with the defendant. (*People v. Wingo* (1975) 14 Cal.3d 169, 174; *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196-1197.) "Findings of disproportionality have occurred with exquisite rarity in the case law." (*Weddle*, at p. 1196.)

Hawkins' sentence was neither grossly disproportionate nor did it shock the conscience or offend fundamental notions of human dignity. Hawkins had a lengthy criminal history that included numerous residential burglaries. As the trial court told Hawkins at his sentencing, "You made it your profession to invade other people's homes and steal their property." In the instant case, Hawkins nearly ran over Norton and her two-year-old son because, as the trial court said, Norton had the audacity to demand the return of her property. He then engaged in a high speed chase, again raising the risk of serious injuries or fatalities to innocent bystanders as well as law enforcement personnel. In these circumstances, Hawkins' admittedly lengthy sentence was not cruel and unusual punishment.

The conclusion we reach is fully consistent with other cases where courts have found sentences not to be cruel and unusual. For example, in *Lockyer v. Andrade* (2003) 538 U.S. 63, the United States Supreme Court affirmed two consecutive 25-years-to-life terms following a "third strike" conviction for stealing nine videotapes worth approximately $150. In *Ewing v. California, supra*, 538 U.S. 11, the same court approved a 25-years-to-life sentence under the three strikes law for stealing three golf clubs. Cases where courts have found sentences to be cruel and unusual are easily distinguishable. In *Weems v. United States* (1910) 217 U.S. 349, a federal disbursing officer convicted of making two false entries in his cash books was sentenced to 15 years at hard labor. In *In re Lynch, supra*, 8 Cal.3d at p. 413, a defendant convicted of a second offense of indecent exposure was sentenced to an indeterminate life term.

Exh. F at 6-7.

**B.    The State Court Reasonably Rejected Petitioner's Claim**

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court held that the court's threshold task under 28 U.S.C. § 2254(d)(1) is to determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 71. The court acknowledged that its previous Eighth Amendment opinions had "not been a model a clarity," and had "not established a clear or consistent path for courts to follow." *Id.* at 72. The court held that the only relevant clearly established Supreme Court law in this area is that a "gross disproportionality principle is applicable to sentences for terms of years." *Id.*; *accord*, *Ewing v. California*, 538 U.S. 11, 23 (2003).

Legislatures have "broad discretion to fashion a sentence that fits within the scope of the proportionality principle." *Andrade* at 76. While the precise contours of this principle are

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

13

"unclear," it is applicable "only in the 'exceedingly rare' and 'extreme' case." *Id*. at 72-73, quoting

*Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring).

The Supreme Court concluded that the state court's affirmance of Andrade's sentence of 50 years to life, which was based on two current convictions for felony petty theft of videotapes with a prior, plus three prior convictions for residential burglary, was not an unreasonable application of the gross disproportionality principle. *Andrade* at 73-74.  That sentence fell between the facts in *Rummel v. Estelle*, 445 U.S. 263 (1980), and *Solem v. Helm*, 463 U.S. 277 (1983).  *Andrade* at 74.  In *Rummel,* the court upheld a sentence of life in prison with the possibility of parole for three non-violent theft-related felonies.  In *Solem,* the court reversed a sentence of life without possibility of parole for passing a bad check along with six prior non-violent felonies, but acknowledged that *Rummel* would apply "in a similar factual situation."  *See Andrade* at 74.   In *Ewing*, the court upheld on direct appeal a sentence of 25 years to life for the current offense of felony grand theft of three golf clubs with a prior conviction, where the defendant had suffered three prior convictions for residential burglary and one for robbery.

The Supreme Court held in *Andrade* that because the scope of the Eighth Amendment as applied to non-capital cases was so imprecisely defined, it was not objectively unreasonable for the state court to conclude that Andrade's sentence fit within those broad parameters.  *Id*. at 76; *see Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."); *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous.").

The only question before this Court is whether the state court's decision upholding petitioner's sentence of 80 years to life was an unreasonable application of the gross disproportionality principle as explained by the Supreme Court.  Habeas relief may not be premised on circuit authority.  *Sims v. Rowland,* 414 F.3d 1148, 1151 (9th Cir. 2005) ("reference to Ninth

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

14

1    Circuit precedent cannot be used to circumvent the requirement that, in order to grant the writ, we

2    must be persuaded that the state court's decision is contrary to clearly established Supreme Court

3    precedent").

4    Here, the state court found that petitioner's sentence did not violate the gross

5    disproportionality principle, nor did it shock the conscience or offend fundamental notions of human

6    dignity. As the court noted, petitioner had a lengthy criminal history. The trial court found true the

7    allegations that petitioner suffered four prior strike convictions, three prior serious felony

8    convictions, and had served nine prior prison terms. At sentencing, the trial court noted petitioner

9    had committed 18 prior felonies over the previous 30 years. 12/20/05 RT 17. Petitioner had been

10   found guilty of committing five new felonies in the current case. Because of petitioner's prior strike

11   convictions, the court sentenced him under the three strikes law. Thus, even though the trial court

12   stayed sentence on two of the new convictions, and ran one of the new terms concurrently, the

13   sentence under the three strikes law totaled 80 years to life, including enhancements for the prior

14   convictions. 12/20/05 RT 17-21.[3/] As the court of appeal also noted, petitioner's new convictions

15   involved threats of violence to Norton and her son, as well as the risk of serious injury to innocent

16   bystanders and law enforcement personnel.

17   In light of petitioner's numerous prior convictions and the seriousness of his current

18   convictions, the trial court's sentence did not constitute cruel and unusual punishment. Accordingly,

19   the state court's rejection of petitioner's claim was reasonable.

20                                              **IV.**

21   **THE STATE COURT REASONABLY REJECTED PETITIONER'S
     CLAIM THAT THE TRIAL COURT VIOLATED HIS SIXTH**

22   **AMENDMENT RIGHTS BY SELECTING THE UPPER TERM WHEN
     CALCULATING MINIMUM PAROLE ELIGIBILITY UNDER AN**

23   **INDETERMINATE SENTENCE**

24

25   Petitioner contends the trial court violated his Sixth Amendment right to a jury trial by

26   imposing upper terms on all five counts. The court did not impose determinate upper term

27   ───────────────────────────────────────────────

28   3. The prosecutor had urged a sentence of 75 years to life plus 24 years. (CT 619.)

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
(PR)

15

sentences, however.  Instead, the court calculated the minimum term of the indeterminate life sentence on each count by selecting the upper term and adding all applicable enhancements.  *See* Cal. Penal Code § 1170.12(c)(2)(A)(iii).  When sentencing petitioner, the court imposed a life sentence with a minimum term of 80 years.  Since petitioner was not entitled to any jury fact-finding in that circumstance, the state court reasonably rejected his claim.

**A.    State Court Of Appeal's Ruling**

Hawkins argues the trial court violated his Sixth Amendment rights by imposing the upper term for all five counts based on facts neither admitted by the defendant nor found true by a jury beyond a reasonable doubt.

The trial court imposed upper term sentences on all five counts for the following reasons:  "Your crime involves the threat of great bodily harm.  You used a deadly weapon, that being your car.  The manner in which the crime was carried out indicated planning.  Your prior convictions are numerous.  And you have served nine prior prison terms in connection with those prior felony convictions."  The court did not make a finding of mitigating circumstances.

In *Cunningham v. California* (2007) 127 S.Ct. 856, the Supreme Court held that California's statutory scheme authorizing judges to determine whether to impose upper term sentences violates the Sixth Amendment.  (*Id.* at p. 868.)  "Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  (*Ibid.*, quoting *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.)  Failure to submit a sentencing factor to a jury in violation of the Sixth Amendment requires reversal unless the court determines the error was harmless beyond a reasonable doubt.  (*Washington v. Recuenco* (2006) 126 S.Ct. 2546, 2553; *Chapman v. California* (1967) 386 U.S. 18, 24.)

One of the aggravating circumstances cited by the trial court was that Hawkins' prior convictions were numerous.  (See Cal. Rules of Court, rule 4.421(b)(2).)  The fact of Hawkins' prior convictions is exempt from the *Cunningham* requirement that factors justifying the upper term be submitted to a jury and found true beyond a reasonable doubt.  (*Cunningham v. California, supra,* 127 S.Ct. at p. 868.)  Therefore, the court properly found that Hawkins' prior convictions were numerous, based on his 18 prior convictions.  Assuming for purposes of argument that a finding that a defendant's prior convictions were "numerous" is not exempt from *Cunningham* (but see *People v. Waymire* (2007) 149 Cal.App.4th 1448, 1456), we have no difficulty concluding beyond a reasonable doubt that, had the issue been submitted to a jury, the jury would have found Hawkins' 18 convictions were numerous.  We further conclude beyond a reasonable doubt that, had the trial judge been limited to relying on the sole aggravating circumstance of Hawkins' numerous prior convictions to determine whether to impose the upper term, he still would have imposed the upper term.  The court placed great emphasis on Hawkins' criminal history as he commenced sentencing.  "Mr. Hawkins, among your 20 or so prior felonies, your record's replete with residential burglaries.  You made it your profession to invade other people's homes and steal their property.  You were caught doing this in 1979, 1985, and 1993, before being caught doing so again in this case."  The court found no mitigating circumstances.  In light of the court's obvious concern about Hawkins' long criminal history, we conclude beyond a reasonable doubt that the court would have found that the single aggravating circumstance of numerous prior convictions outweighed the

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

16

1    nonexistent mitigating circumstances and warranted imposition of upper term sentences.
     (Cf. *People v. Waymire, supra,* 149 Cal.App.4th at p. 1458.)
2    Exh. F at 7-9.

3    **B.    The State Court Reasonably Rejected Petitioner's Claim**

4            As noted, a jury convicted petitioner of five new felony offenses.  After petitioner waived

5    his right to jury trial on the prior conviction allegations, RT 559-562, the trial court found true the

6    allegation that he had four prior strike convictions, thus requiring sentencing under the three strikes

7    law.  "If a defendant has two or more prior felony convictions, as defined in paragraph (1) of

8    subdivision (b), that have been pled and proved, the term for the current felony conviction shall be

9    an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence

10   calculated as the greater of" one of three options.  Cal. Penal Code § 1170.12(c)(2)(A).  In

11   calculating the minimum term, the trial court selected the third option, Cal. Penal Code §

12   1170.12(c)(2)(A)(iii), because it provided the "greater" minimum term of the three options.[4]  After

13   selecting the third option, the trial court calculated the minimum terms of the life sentences using

14   the upper term for each offense.  12/20/05 RT 17-21.  The court stayed the sentence on counts one

15   and three and ran the sentence on count four (which had a minimum term of 28 years) concurrently.

16   The court thus imposed a minimum term of 29 years on count two and a minimum term of 27 years

17   on count five, to run consecutively, plus the enhancements, for a total sentence of 80 years to life.

18   *Id.*[5]

19           The trial court's imposition of sentence did not violate *Cunningham v. California,* 127

20   S.Ct. 856 (2007), because petitioner's maximum sentence based on the facts found by the jury at

21   trial, and by the court after petitioner waived his jury trial right on the prior conviction allegations,

22   was the indeterminate term of life imprisonment on each count.  The court's calculation of the

23   

24           4.  That option specified "the term determined by the court pursuant to Section 1170 for the
     underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with
25   Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046."  Cal. Penal
     Code § 1170.12(c)(2)(A)(iii).
26   

27           5.  Had the trial court based its calculations on midterms instead of upper terms, the
     minimum terms would have been 27 years and 26 years, respectively.  *See* CT 701.
28   

     Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI
     (PR)

minimum term of the indeterminate sentence thus did not constitute a sentence that exceeded the statutory maximum. As *Cunningham* stated, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Id*. at 860.

Here, the statutory maximum was life in prison. Calculation of the minimum term of that indeterminate sentence did not affect the statutory maximum. As the Supreme Court has previously explained, unlike relying on judicially-found facts to impose a sentence above the statutory maximum, a sentencing court's reliance on judicially-found facts to impose a greater mandatory minimum sentence that a defendant must serve does not implicate the Sixth Amendment and is not subject to *Cunningham*'s requirements. *See McMillan v. Pennsylvania*, 477 U.S. 79, 82 (1986) (trial court may consider sentencing factors in finding a mandatory minimum applies to a defendant's sentence); *see also Apprendi v. New Jersey*, 530 U.S. 466, 487 n.13 (2000) (reaffirming *McMillan* and explaining that it does not conflict with the principle announced in *Apprendi*). In *Blakely v. Washington*, 542 U.S. 296 (2004), the court explained, "Of course indeterminate schemes involve judicial fact-finding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Id*. at 309, original italics. Since calculation of the minimum terms did not serve to increase petitioner's sentence beyond the statutory maximum of life, his sentence did not violate the Sixth Amendment under the rule announced in *Cunningham v. California*, which was concerned only with the imposition of sentence under California's Determinate Sentencing Law. *See* 127 S.Ct. at 868-71.

Moreover, as the state court of appeal found, the aggravating circumstances that petitioner had served nine prior prison terms and had numerous prior convictions were exempt from the rule that a jury must find facts that increase a defendant's sentence beyond the statutory maximum. *Cunningham v. California*, 127 S.Ct. at 868 ("Except for a prior conviction, 'any fact that increases

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

18

1    the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

2    proved beyond a reasonable doubt.'"). And, as the state court also found, petitioner waived his right

3    to a jury trial on the prior conviction allegations. RT 559-562. Since the state court found, beyond

4    a reasonable doubt, that if the trial court could only have relied on petitioner's prior convictions, it

5    still would have selected the upper term when calculating the minimum term of the indeterminate

6    life term, any error in the trial court's reliance on the additional aggravating circumstances was

7    harmless. *See Washington v. Recuenco*, 126 S.Ct. 2546, 2552-53 (2006); *see also People v. Black*,

8    41 Cal.4th 799, 813 (2007) ("the existence of a single aggravating circumstance is legally sufficient

9    to make the defendant eligible for the upper term").

10           Petitioner's claim thus fails for two reasons. First, he was sentenced to an indeterminate

11   term, life in prison. The trial court's calculation of the minimum term before petitioner would be

12   eligible for parole did not constitute a finding that increased the statutory maximum term for the

13   offense. Second, even if the trial court's selection of the upper term when making the parole

14   eligibility calculation affected petitioner's Sixth Amendment rights, any error was harmless because

15   the trial court's reliance on petitioner's prior convictions was exempt from any requirement of jury

16   fact-finding, petitioner waived his right to a jury trial on the circumstance in any event, and the trial

17   court would have imposed the same sentence even if that was the only circumstance the court could

18   consider. Accordingly, petitioner's claim should be rejected.

19

20

21

22

23

24

25

26

27

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

19

1

**CONCLUSION**

2          For the reasons stated, respondent respectfully requests that the petition for writ of habeas

3    corpus be denied.

4          Dated:  June 27, 2008

5                                    Respectfully submitted,

6                                    EDMUND G. BROWN JR.
                                     Attorney General of the State of California

7                                    DANE R. GILLETTE
                                     Chief Assistant Attorney General

8
                                     GERALD A. ENGLER
9                                    Senior Assistant Attorney General

                                     JULIET HALEY
10                                   Deputy Attorney General

11

12                                   /s/ Joan Killeen
                                     JOAN KILLEEN
13                                   Deputy Attorney General

14                                   Attorneys for Respondent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

20

1

# TABLE OF CONTENTS

2

Page

3   STATEMENT OF THE CASE                                                   1

4   STATEMENT OF FACTS                                                      2

5   STANDARD FOR GRANTING RELIEF                                            6

6   ARGUMENT                                                                7

7       I.   PETITIONER'S CONTENTION THAT THE TRIAL COURT
8           SHOULD HAVE INSTRUCTED ON GRAND THEFT FROM A
            PERSON AS A LESSER OFFENSE DOES NOT STATE A
9           COGNIZABLE CLAIM                                 7

10          A.   State Court Record                          7

11          B.   State Court Of Appeal's Ruling               8

12          C.   The State Court Reasonably Rejected Petitioner's Claim   8

13      II.  THE    STATE    COURT    REASONABLY    REJECTED
            PETITIONER'S CLAIM THAT INSUFFICIENT EVIDENCE
14          SUPPORTED HIS ASSAULT CONVICTIONS              10

15          A.   State Court Of Appeal's Ruling              10

16          B.   The State Court Reasonably Rejected Petitioner's Claim  11

17      III. THE    STATE    COURT    REASONABLY    REJECTED
            PETITIONER'S    CLAIM    THAT    HIS    SENTENCE
18          CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT       12

19          A.   State Court Of Appeal's Ruling              12

20          B.   The State Court Reasonably Rejected Petitioner's Claim  13

21      IV.  THE    STATE    COURT    REASONABLY    REJECTED
            PETITIONER'S    CLAIM    THAT    THE    TRIAL    COURT
22          VIOLATED    HIS    SIXTH    AMENDMENT    RIGHTS    BY
            SELECTING THE UPPER TERM WHEN CALCULATING
23          MINIMUM    PAROLE    ELIGIBILITY    UNDER    AN
            INDETERMINATE SENTENCE                         15

24          A.   State Court Of Appeal's Ruling              16

25          B.   The State Court Reasonably Rejected Petitioner's Claim  17

26  CONCLUSION                                                              20

27

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Anderson v. Calderon*
232 F.3d 1053 (9th Cir. 2000)                                                                    10

5

*Apprendi v. New Jersey*
6      530 U.S. 466 (2000)                                                                            18

7

*Blakely v. Washington*
542 U.S. 296 (2004)                                                                              18

8

*Bowen v. Roe*
9      188 F.3d 1157 (9th Cir. 1999)                                                                   2

10

*Brecht v. Abrahamson*
507 U.S. 619 (1993)                                                                               7

11

*Cunningham v. California*
12     127 S.Ct. 856 (2007)                                                                         17, 18

13

*Estelle v. McGuire*
502 U.S. 62 (1991)                                                                                8

14

*Ewing v. California*
15     538 U.S. 11 (2003)                                                                            13

16

*Fry v. Pliler*
___ U.S. ___
17     127 S.Ct. 2321 (2007)                                                                          7

18

*Harmelin v. Michigan*
501 U.S. 957 (1991)                                                                              13

19

*Hopkins v. Reeves*
20     524 U.S. 88 (1998)                                                                             9

21

*In re Jesus O.*
40 Cal.4th 859 (2007)                                                                             8

22

*Jackson v. Virginia*
23     443 U.S. 307 (1979)                                                                           11

24

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                                                    12

25

*LaMere v. Slaughter*
458 F.3d 878 (9th Cir. 2006)                                                                     11

26

*Lockyer v. Andrade*
27     538 U.S. 63 (2003)                                                                          13, 14

28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

ii

**TABLE OF AUTHORITIES**  (continued)

Page

*McMillan v. Pennsylvania*
477 U.S. 79 (1986) — 18

*Miller-El v. Cockrell*
537 U.S. 322 (2003) — 7

*Mitchell v. Esparza*
540 U.S. 12 (2003) — 14

*Payne v. Borg*
982 F2d 335 (9th Cir. 1992) — 11

*People v. Birks*
19 Cal.4th 108 (1998) — 8-10

*People v. Black*
41 Cal.4th 799 (2007) — 19

*People v. Breverman*
19 Cal.4th 142 (1998) — 9

*Rummel v. Estelle*
445 U.S. 263 (1980) — 14

*Sims v. Rowland*
414 F.3d 1148 (9th Cir. 2005) — 14

*Solem v. Helm*
463 U.S. 277 (1983) — 14

*Solis v. Garcia*
219 F.3d 922 (9th Cir. 2000) — 9

*Vickers v. Ricketts*
798 F.2d 369 (9th Cir. 1986) — 9

*Walters v. Maass*
45 F.3d 1355 (9th Cir. 1995) — 11

*Washington v. Recuenco*
126 S.Ct. 2546 (2006) — 19

*Williams v. Taylor*
529 U.S. 362 (2000) — 7, 12

*Windham v. Merkle*
163 F.3d 1092 (9th Cir. 1998) — 9

*Woodford v. Visciotti*
537 U.S. 19 (2002) — 6, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

iii

**TABLE OF AUTHORITIES  (continued)**

                                                                          **Page**

*Yarborough v. Alvarado*
541 U.S. 652 (2004)                                                          14


**Statutes**

28 United States Code
        § 2244(d)(1)                                                   2
        § 2254(d)(1)                                                6, 13
        § 2254(d)(2)                                                   7

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)                 6

California Penal Code
        § 212.5(c)                                                     2
        § 245(a)(1)                                                    2
        § 460(a)                                                       2
        § 667(a)                                                       2
        § 667.5(b)                                                     2
        § 1170.12(c)(2)                                                2
        § 1170.12(c)(2)(A)                                            17
        § 1170.12(c)(2)(A)(iii)                                   16, 17

California Vehicle Code
        § 2800.2                                                       2

Mem. Of P.'s & A.'s In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

iv

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET HALEY
   Deputy Attorney General
5  JOAN KILLEEN
   Deputy Attorney General
6  State Bar No. 111679
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-5968
8    Fax: (415) 703-1234
     Email: Joan.Killeen@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13
   **HOMER E. HAWKINS,**                    C 08-1087 SI (PR)
14
                               Petitioner,
15
            **v.**
16
   **DEBORAH DEXTER, Warden,**
17
                               Respondent.
18

19
        **INDEX OF STATE COURT RECORDS LODGED IN SUPPORT OF ANSWER TO
20           PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | JULIET HALEY
Deputy Attorney General
5 | JOAN KILLEEN
Deputy Attorney General
6 | State Bar No. 111679
   455 Golden Gate Avenue, Suite 11000
7 |  San Francisco, CA 94102-3664
   Telephone: (415) 703-5968
8 | Fax: (415) 703-1234
   Email: Joan.Killeen@doj.ca.gov
9 | Attorneys for Respondent

10 |          IN THE UNITED STATES DISTRICT COURT

11 |          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 |               SAN FRANCISCO DIVISION

13 |

14 | **HOMER E. HAWKINS,**                                      C 08-1087 SI (PR)

15 |                                      Petitioner,    **INDEX OF STATE COURT
                                                         RECORDS LODGED IN
16 |        **v.**                                       SUPPORT OF ANSWER TO
                                                         PETITION FOR WRIT OF
17 | **DEBORAH DEXTER, Warden,**                          HABEAS CORPUS**

18 |                                      Respondent.

19 |                          INDEX

20 |     Exhibits

21 |        A       Clerk's Record on Appeal, Vols. 1-2, Supp. CT (1 vol.)

22 |        B       Reporter's Transcript on Appeal, Vols. 1-4, 12/20/05 RT (1 vol.)

23 |        C       Appellant's Opening Brief, A112556

24 |        D       Respondent's Brief, A112556

25 |        E       Appellant's Reply Brief, A112556

26 |        F       California Court of Appeal Opinion, A112556

27 |        G       Petition for Rehearing, A112556

28 |

Index Of State Court Records Lodged In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* -
C 08-1087 SI (PR)

1          H          California Court of Appeal Order Denying Rehearing, A112556

2          I          Petition for Review, A112556

3          J          California Supreme Court Order Denying Review, S154640

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Index Of State Court Records Lodged In Supp. Of Ans. To Pet. For Writ Of Hab. Corpus - *Hawkins v. Dexter, Warden* - C 08-1087 SI (PR)

## DECLARATION OF SERVICE

Case Name: **Hawkins v. Dexter, Warden**                    No.: **C 08-1087 SI (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the Bar of this Court at which member's direction this service is made. I am 18 years of age or older and not a party to the within entitled cause; I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **June 27, 2008**, I placed the attached **1) ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; 2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; AND 3) INDEX OF STATE COURT RECORDS LODGED IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** in the internal mail collection system at the Office of the Attorney General, 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102, for deposit in the United States Postal Service that same day in the ordinary course of business, in a sealed envelope, postage thereon fully prepaid, addressed as follows:

Homer E. Hawkins
C-55875/2c-217
Ironwood Prison
P. O. Box 2199
Blythe, CA 92226

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **June 27, 2008**, at San Francisco, California.

| L. SORENSEN | /s/ L. Sorensen |
|---|---|
| Typed Name | Signature |