UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMER E. HAWKINS,<br><br>    Petitioner,<br><br>    v.<br><br>DEBORAH DEXTER, Warden,<br><br>    Respondent.<br>_____/ | No. C 08-1087 SI (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Homer E. Hawkins' pro se petition for writ of habeas corpus. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A.    The Crimes

Hawkins' petition pertains to his conviction for residential burglary, robbery, assault with a deadly weapon (viz., his car), and evading a police officer. Other than the facts related to the assault with a deadly weapon charge, the particulars of the crimes are not relevant to the claims in the habeas petition. The California Court of Appeal described the assault evidence:

> Stephanie Norton arrived home around noon with her two-year-old son, Benjamin, and noticed an unfamiliar blue Mercedes Benz parked in her driveway. Norton picked up her son and looked to see if anyone was at her front door. After returning to the driveway, she saw a man she later identified as Hawkins coming around the side of the house with a bag in his hand. Norton asked, "Who are you and what are you doing?" He said he was there from "the insurance" and that her husband sent him. Norton noticed that Hawkins was carrying a full pillowcase and was walking quickly toward the driver's side of the Mercedes. Suspecting she was being robbed, she walked to the driver's side of the Mercedes to intercept

Hawkins, still holding Benjamin in her arms. Hawkins sat in the driver's seat and placed the pillowcase on the passenger seat. Norton stood in the open doorway with her hand on the door.

Norton told Hawkins, "That's our stuff. Give that back." Hawkins started the car and told her she better get out of the way. Norton stayed put and Hawkins started rolling the car backward a few inches. Hawkins, speaking in a "serious sort of loudish and gruff tone," again said Norton better get out of the way. He did not cuss or act like he was going to attack Norton, but she was afraid she would be hit by the door if she did not get out of the way. Hawkins then backed up the car very fast and Norton moved out of the way. "[H]e gunned it. All of a sudden it started shooting backwards." The tires spun and kicked up gravel from the driveway. Norton would have been hit if she had not moved quickly out of the way. "The door was moving right at me, and the wheels were practically right next to me."

Norton called the police. Two sheriff's deputies spotted the Mercedes on the road and pursued it in marked vehicles with their lights and sirens activated. Hawkins drove at excessive speeds and ran several stop signs during this pursuit.

Cal. Ct. App. Opinion, pp. 1-2. The car chase ended at Hawkins' home, where he tried to flee on foot. He was caught by the police and arrested. After Hawkins left in his car, Norton entered her house and saw that the screen on the back door had been cut and the window raised. Several items of personal property that were missing from her house were recovered from Hawkins' possession after his arrest.

B.   Case History

Hawkins was convicted following a jury trial in San Mateo County Superior Court of robbery, two counts of assault with a deadly weapon, burglary, and evading a police officer. See Cal. Penal Code, §§ 212.5(c), 245(a)(1), 460(a); Cal. Vehicle Code § 2800.2. Several sentence enhancement allegations were found true: he had suffered four prior convictions that counted as strikes under California's Three Strikes law, had suffered three prior serious felony convictions, and had served nine prior prison terms. See Cal. Penal Code, §§ 1170.12(c)(2), 667(a), 667.5(b). Hawkins was sentenced to a total term of 80 years to life in prison. Hawkins represented himself in the trial court.

He appealed. His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the California Supreme Court.

Hawkins then filed his federal petition for writ of habeas corpus. The court found cognizable three claims for relief: (1) the trial court's failure to sua sponte instruct the jury on

2

grand theft as a lesser-included offense of robbery violated his right to due process; (2) his right to due process was violated because the evidence was insufficient to support the assault with a deadly weapon convictions; and (3) the 80-years-to-life sentence (a) was cruel and unusual punishment and (b) was imposed without the facts being found by a jury and beyond a reasonable doubt. A fourth claim was dismissed. Respondent filed his answer. Hawkins filed a traverse. The matter is now ready for decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in San Mateo County, in this judicial district. 28 U.S.C. §§ 84, 2241 (d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

1 based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

A.   <u>Failure to Instruct on Lesser Offense</u>

Hawkins contends the state court erred in failing to <u>sua sponte</u> instruct the jury on grand theft from the person of another as a lesser included offense of robbery. He further argues that there was sufficient evidence to support an instruction for grand theft.

At trial, Hawkins did not request the instruction. During a discussion of the instructions, the prosecutor stated that grand theft from a person was a standard lesser included offense of robbery but argued that the facts did not support any grand theft instruction in this case. RT 429. The trial court agreed that there was not a basis for the lesser included instruction in this case. "[E]ven had [Hawkins] requested them, there is no evidentiary basis for the jury to find the defendant guilty of any lesser offense, if they were to find him not guilty of the greater offense." RT 485.

The California Court of Appeal rejected Hawkins' argument that the trial court erred in

4

1 failing to sua sponte instruct on grand theft. Under state law, the trial court had a duty to instruct
2 sua sponte on a lesser included offense if there was substantial evidence that the lesser offense,
3 but not the greater offense, was committed. Cal. Ct. App. Opinion, p. 4 (citing People v.
4 Breverman, 19 Cal. 4th 142, 154, 160 (Cal. 1998)). Here, however, there was not substantial
5 evidence that Hawkins committed the lesser offense of grand theft from the person of another.
6 Cal. Ct. App. Opinion, p. 4 (citing Cal. Penal Code § 487(c)):

> That offense occurs when a defendant takes property that is in some way actually upon or attached to another person or carried by or held in actual physical possession by that person. (In re Jesus O. (2007) 40 Cal. 4th 859, 863.) Unlike robbery, it does not occur when a defendant takes property from the immediate presence of another. (Ibid.) Here, Hawkins took a pillowcase full of Norton's personal property from her house while she was not present; he carried the property to his car while she objected but made no physical contact with the property; and he drove away with the property in his car while she stood by the car. Hawkins never took the property from Norton's person. Therefore, an instruction on the offense of grand theft from the person of another was not required.

Cal. Ct. App. Opinion, p. 4.

Hawkins' federal due process claim based on the failure to instruct fails because there is no clearly established federal rule that a trial court must instruct on all lesser included and lesser related offenses. Although instructions on lesser included offenses must be given in capital cases, Beck v. Alabama, 447 U.S. 625 (1980), "[t]here is no settled rule of law on whether Beck applies to noncapital cases such as the present one. In fact, this circuit, without specifically addressing the issue of extending Beck, has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case." Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc). The failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000), cert. denied, 534 U.S. 839 (2001); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998).

Respondent argues that the lesser offense was, at most, a lesser related offense and not a lesser included offense. The California Court of Appeal determined as a matter of state law that it was a lesser included offense, and this court is not free to ignore that determination. The

state court's interpretation of state law binds a federal court in a habeas action. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988). Whether the offense was a lesser related or lesser included offense does not change the outcome here, however, because the law concerning the duty to give instructions on lesser related offenses is even more unsettled than that concerning the duty to give instructions on lesser included offenses. "[A]ny finding of constitutional error would create a new rule, inapplicable to the present case under [Teague v. Lane, 489 U.S. 288 (1989).]" Turner, 63 F.3d at 819. Hawkins therefore cannot prevail under 28 U.S.C. § 2254(d) on a claim that he had a federal due process right to lesser included or lesser related offense instructions.

Even though there is not a constitutional right to lesser included and lesser related instructions, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984)). Solis suggests that there must be substantial evidence to warrant the instruction on the lesser included offense. See Solis, 219 F.3d 929-30 (no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice); see also Cooper v. Calderon, 255 F.3d 1104, 1110-11 (9th Cir. 2001) (no duty in death penalty case to instruct on second degree murder as a lesser included offense because the evidence established that the killer had acted with premeditation, so if the jury found that the defendant was the killer, it necessarily would have found that he committed first degree murder). This exception is inapplicable because Hawkins presented no evidence during the trial regarding grand theft of a person instead of robbery. The defense theory was not well-articulated by the self-represented defendant, but did not include a grand theft of a person theory. Hawkins contended that he did not receive a proper Miranda warning at the time of his arrest, and that his investigator was not allowed to gather all the facts necessary to present his case. His closing argument tried to show inadequate investigation of the crime and police misconduct. See RT 530-532. As stated above, there was not substantial evidence to support a finding of grand theft from the person of another. Hawkins' constitutional rights were not violated by the court's failure to sua sponte instruct on grand theft from the person as a lesser included offense.

6

B.   Sufficiency Of Evidence Of Assault With A Deadly Weapon

Hawkins claims there is insufficient evidence to support his convictions for assault with a deadly weapon. Specifically, he argues there was insufficient evidence that he contemplated committing battery when he drove from the house.

The California Court of Appeal found that there was sufficient evidence to support the verdict and explained that Hawkins confused different concepts in his analysis.

> [Hawkins] argues the evidence that he twice warned Norton to move away from his car showed that he intended to leave without hurting Norton or her son.
>
> Hawkins confuses the required intent with subjective expectation or desire. "[A]ssault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (People v. Williams (2001) 26 Cal.4th 779, 790.) Trial evidence demonstrated that Hawkins intentionally backed his vehicle out of the driveway while warning Norton, who was standing in the open driver's side doorway, to get out of the way. A reasonable jury could infer from this evidence that Hawkins knew that the probable and direct result of his backing up the car was that the car door would strike Norton while she was holding her son. Thus, there was substantial evidence that Hawkins committed an intentional act knowing the probable and direct result of that act would be a battery.
>
> Hawkins' warnings to Norton did not shield him from criminal responsibility for taking action that would have resulted in battery had Norton not moved out of the way. When a defendant threatens to commit a battery unless the potential victim complies with a condition the defendant has no right to impose (i.e., Hawkins threatens to back into Norton unless she gets out of the way so he can leave with her property) and he has the present ability and intent to carry through with the threat, the defendant commits an assault. (People v. Page (2004) 123 Cal. App. 4th 1466, 1473.)

Cal. Ct. App. Opinion, p. 5.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt, but rather determines whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843

(1993). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338. Under § 2254(d), a federal habeas court applies the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005), cert. denied, 546 U.S. 1137 (2006). Generally, a federal habeas court must ask whether the state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 (quoting 28 U.S.C. § 2254(d)).

The California Court of Appeal's decision was not contrary to or an unreasonable application of Jackson and Winship. The state appellate court correctly identified the controlling legal principle, albeit without mentioning either of the U.S. Supreme Court cases. And that court also reasonably applied the controlling legal principle to Hawkins' case.

For the conviction to stand, there had to be evidence to establish beyond a reasonable doubt that his movement of the car "would probably and directly result in the application of physical force" on Norton and her son, and that he "was aware of facts that would lead a reasonable person to realize that as a direct, natural, and probable result of this act, that physical force would be applied to another person," and that he had the "present ability to apply physical force" to Norton and her son.[1] The evidence was sufficient on these points. Norton's testimony clearly supported a finding that she and her son would have been hit by the moving car had she not jumped out of the way. Norton held her baby throughout the encounter, and was standing

---

[1] The jury instruction on the assault stated:

In order to prove an assault, each of the following elements must be proved:

1. A person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person.

2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural, and probable result of this act, that physical force would be applied to another person; and,

3. At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another.

RT 506.

8

1  "right next to" the driver's seat during the encounter while Hawkins was in the car with the car
2  door open. RT 330. Norton was less than a foot from the side of the car. RT 367, 368. When
3  fully opened, the door extended 45 inches from the side of the car. RT 399. Hawkins told
4  Norton to get out of the way, and caused the car to roll backwards a few inches, RT 332, at
5  which point Norton was close enough to touch the inside of the driver's door. When Norton
6  demanded her property, Hawkins warned her again to get out of the way and then caused the car
7  to abruptly accelerate in reverse. RT 333-334, 369. Norton side-stepped and backed up to get
8  out of the way of the open driver's side door. RT 334. She feared that she would be hit by the
9  car because she "had to move fast to get out of the way, or else I would have been hit. It was
10 moving right at me. The door was moving right at me, and the wheels were practically right next
11 to me." RT 334; see RT 366 ("And my impression was that I needed to get out of the way of the
12 car."). An assault was shown. As the state appellate court explained, Hawkins' instruction to
13 the victim to get out of his way so the assault would not succeed does not relieve him of liability
14 for the assault. In fact, warning the victim to get out of harm's way showed his awareness that
15 physical force would be applied to Norton and her son as a direct result of his movement of the
16 car.

17     Hawkins contends that he did not intend to commit battery against Norton and her child
18 when he backed out of Norton's driveway. That does not matter. Under California law, an
19 "assault does not require a specific intent to cause injury or a subjective awareness of the risk
20 that an injury might occur. Rather, assault only requires an intentional act and actual knowledge
21 of those facts sufficient to establish that the act by its nature will probably and directly result in
22 the application of physical force against another." People v. Williams, 26 Cal. 4th 779, 790
23 (2001).

24     Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact
25 could have found the essential elements of assault proven beyond a reasonable doubt. The
26 evidence to support Hawkins' convictions for assault with a deadly weapon on Norton and her
27 son was constitutionally sufficient. Hawkins is not entitled to the writ on this claim.
28

C.     Challenges To The Sentence

    1.     The Sentence is Not Cruel and Unusual Punishment

Hawkins contends that his sentence of 80 years to life imprisonment violated his Eighth Amendment right to be free from cruel and unusual punishment because he cannot complete the sentence within his lifetime. Hawkins quotes Justice Stanley Mosk's dissenting opinion in unrelated cases that a sentence which cannot be completed in the defendant's lifetime "makes a mockery of the law and amounts to cruel and unusual punishment" in violation of the United States and California Constitutions. App. Brief, p. 18 (quoting People v. Hicks, 6 Cal.4th 784,797 (1993) (Mosk, J., dissenting)). He does not cite any binding precedent or federal law to support this view.

A criminal sentence that is significantly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment's prohibition of cruel and unusual punishment. See Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90 (citation and quotation marks omitted). "'The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Under this proportionality principle, the threshold determination for the court is whether petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. Harmelin, 501 U.S. at 1005; Ewing, 539 U.S. at 30-31 (applying Harmelin standard). Only if such an inference arises does the court proceed to compare petitioner's sentence with sentences in the same and other jurisdictions. See Harmelin, 501 U.S. at 1005; cf. Ewing, 538 U.S. at 23. The threshold for an "inference of gross disproportionality" is quite high. See, e.g., Ewing, 538 U.S. at 30 (sentence of 25 years to life for conviction of grand theft with prior convictions was not grossly disproportionate); Lockyer v. Andrade, 538 U.S. 63

1  (2003) (upholding two consecutive 25-to-life terms for two convictions of theft of videotapes
2  with prior convictions); Harmelin, 501 U.S. at 1008-09 (mandatory sentence of life without
3  possibility of parole for first offense of possession of 672 grams of cocaine did not raise
4  inference of gross disproportionality). Andrade and Ewing are the Supreme Court's most recent
5  pronouncements on Eighth Amendment claims regarding prison sentences and both upheld
6  California Three Strikes sentences for shoplifters with prior convictions. One of the important
7  lessons from these two cases is that relief under the Eighth Amendment continues to be reserved
8  for the extreme cases.
9        In determining whether the sentence is grossly disproportionate under a recidivist
10 sentencing statute, the court looks to whether such an "extreme sentence is justified by the
11 gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365
12 F.3d 755, 768 (9th Cir. 2004); see Ewing, 538 U.S. at 28. In judging the appropriateness of a
13 sentence under a recidivist statute, a court may take into account the government's interest not
14 only in punishing the offense of conviction, but also its interest "'in dealing in a harsher manner
15 with those who [are] repeat[] criminal[s].'" United States v. Bland, 961 F.2d 123, 129 (9th Cir.)
16 (quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980)), cert. denied, 506 U.S. 858 (1992). The
17 Eighth Amendment does not preclude a state from making a judgment that protecting the public
18 safety requires incapacitating criminals who have already been convicted of at least one serious
19 or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists.
20 See, e.g., Ewing, 538 U.S. at 25 (upholding 25-to-life sentence for recidivist whose current
21 conviction was for grand theft (for shoplifting three golf clubs)); Rummel, 445 U.S. at 284-85
22 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of
23 credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false
24 pretenses); Nunes v. Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir.), cert. denied, 128 S. Ct. 404
25 (2007) (upholding 25-to-life sentence for current conviction of petty theft with a prior theft-
26 related conviction after finding that the petitioner's criminal history was longer, more prolific,
27 and more violent than that in Andrade where a stiffer sentence was upheld); Taylor v. Lewis, 460
28 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding 25-to-life sentence upon a conviction of

possession of 0.036 grams of cocaine base with two prior felony convictions for voluntary manslaughter and robbery, and past violations of probation and parole); Rios v. Garcia, 390 F.3d 1082, 1082-83 (9th Cir. 2004), cert. denied, 546 U.S. 827 (2005) (upholding 25-to-life sentence for current conviction of petty theft with a prior theft-related conviction and second degree burglary (for episode in which he shoplifted two watches having a combined value of $79.88, was chased by a loss prevention officer and was apprehended in the store parking lot after a minor struggle) and prior convictions were two robbery convictions in 1987); Bland, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior violent felony convictions, including rape and assault); but see, e.g., Ramirez, 365 F.3d 755 (25-to-life sentence was grossly disproportionate for offender whose current crime was petty theft with a prior theft-related conviction and the two prior strike convictions were robbery convictions); Reyes v. Brown, 399 F.3d 964 (9th Cir. 2005), cert. denied, 547 U.S. 1218 (2006) (remanding for further proceedings to determine whether 26-to-life sentence was grossly disproportionate for current offense of perjury (for making misrepresentations on a DMV driver's license application when he impersonated a friend) and prior convictions were a 1981 residential burglary conviction committed as a juvenile and a 1987 armed robbery conviction).

The standard of review in § 2254(d) presents an additional problem for habeas petitioners asserting Eighth Amendment sentencing claims. In Lockyer v. Andrade, 538 U.S. at 72-73, the Court rejected the notion that its case law was clear or consistent enough to be clearly established federal law within the meaning of 28 U.S.C. § 2254(d), except that it was clearly established that a gross disproportionality principle did apply to sentences for terms of years (as well as to the death penalty). However, the precise contours of that principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73 (quoting Harmelin, 501 U.S. at 1001).

The California Court of Appeal rejected Hawkins' Eighth Amendment challenge to his sentence. The Court of Appeal found:

Hawkins had a lengthy criminal history that included numerous residential

> burglaries. As the trial court told Hawkins at his sentencing, 'You made it your profession to invade other people's homes and steal their property.' In the instant case, Hawkins nearly ran over Norton and her two-year-old son because, as the trial court said, Norton had the audacity to demand the return of her property. He then engaged in a high speed chase, again raising the risk of serious injuries or fatalities to innocent bystanders as well as law enforcement personnel. In these circumstances, Hawkins' admittedly lengthy sentence was not cruel or unusual punishment.

Cal. Ct. App. Opinion, pp. 6-7.

The California Court of Appeal's rejection of Hawkins' claim was clearly consistent with controlling Supreme Court precedent regarding the Eighth Amendment. Hawkins had a very lengthy criminal record. See CT 705-707. His criminal record began in 1973. Hawkins had served nine prior terms in prison and had been convicted of 18 felonies (in 1974, 1975, 1978, twice in 1979, 1982, 1984, 1989, 1992, 1993, 2000, 2002 and 2004) before the current criminal episode. Hawkins was a parolee at large (i.e., one who had failed to report to his parole officer) when arrested for the current offenses. The probation officer noted that "Hawkins has been ridiculously inadequate on both probation and parole with abysmal performance. He has had a complete disregard for his conditions of parole and frequently absconded." CR 709. At Hawkins' sentencing, the trial court judge noted that Hawkins' lack of remorse, pattern of evading police, and reckless behavior in this and earlier offenses. See 12/20/05 RT 15-17.

Hawkins is not entitled to habeas relief on his Eighth Amendment claim. Hawkins' current offenses of residential burglary, robbery, assault with a deadly weapon, and evading a police officer are serious crimes, and certainly are far more serious than the shoplifting crimes at issue in Andrade and Ewing, in which the Supreme Court upheld 25-to-life and 50-to-life sentences for recidivist offenders. Hawkins' sentence of 80-to-life for a recidivist with current convictions for burglary, robbery, evading arrest, and assault with a deadly weapon is not that "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Ewing, 538 U.S. at 30.

### 2. There Was No Apprendi/Cunningham Error

Hawkins received a sentence that totals 80 years to life imprisonment. The sentence is comprised of 29 years to life on count 2, plus a consecutive sentence of 27 years to life on count 5, plus a consecutive 24 years for the sentence enhancements. The sentence enhancements consisted of three 5-year enhancements under California Penal Code § 667(a) for his prior serious felony convictions,[2] and nine 1-year enhancements under California Penal Code § 667.5(b) for his prior prison terms. He contends that the sentence violated Apprendi and Cunningham because he received the "aggravated terms of imprisonment." Petition, p. 9.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury. U.S. Const. amend. VI. This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment's Due Process Clause. Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968). The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 488-90 (2000). The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings. Blakely v. Washington, 542 U.S. 296, 303-04 (2004). The Court reaffirmed this basic principle when it determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court. See United States v. Booker, 543 U.S. 220, 233-38

---

[2]The abstract of judgment mistakenly listed the second and third enhancements as having been imposed under California Penal Code § 677(a), instead of § 667(a), but the sentencing transcript reflects that they were imposed under § 667(a). 12/20/05 RT 21.

14

(2005). The sentencing guidelines were unconstitutional because they required the court to impose an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt. Id. at 243-245.

In Cunningham v. California, 549 U.S. 270 (2007), the Court held that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence. Id. at 288-89. The sentencing court was directed under the DSL to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense. Id. at 277. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that the California sentencing law violated the rule set out in Apprendi. Id. at 288-89, 293. Although the DSL gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts.

Hawkins' claim runs into the problem that the statutory maximum for his crimes is life imprisonment because he was sentenced under California's Three Strikes law. Hawkins was not sentenced under the DSL sentencing triad that Cunningham ruled impermissible. Instead, he received an indeterminate sentence, and his claim concerns the minimum number of years he must serve on that life sentence before he is eligible for parole. Nothing in the judge's determinations of the sentence enhancements will cause Hawkins' sentence to extend beyond the life maximum to which he was sentenced and for which he may be imprisoned based on the third strike conviction. That the Apprendi line of cases does not apply is evidenced by the fact that an indeterminate sentencing scheme is one of the proposed solutions to the jury trial problems caused by determinate sentencing schemes the Court has invalidated. See, e.g., Blakely, 542 U.S. at 305 (citing with approval Williams v. New York, 337 U.S. 241 (1986) (judge's consultation of facts outside the trial record to decide whether to sentence defendant to death did not violate the jury trial right because the indeterminate sentencing scheme allowed the judge

to sentence the defendant to death or imprisonment)); see also id. at 332 (Breyer, J., dissenting) (noting that one of the alternatives to Guidelines-type sentencing scheme is indeterminate sentencing, such as California's former system). In Blakely, the Court explained that indeterminate sentencing that gives a judge greater judicial power to set the sentence does not infringe on the province of the jury: "It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to the lawful imposition of the penalty. Of course, indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." Blakely, 542 U.S. at 308-09. Since Hawkins was sentenced to an indeterminate life term, the calculation of the minimum number of years he had to serve before being eligible for parole was not a finding that increased the statutory maximum term. There was no Apprendi error.

It does not appear that Hawkins is challenging the 24 years he received under the sentence enhancements. To the extent he challenges the 24 years he received for the sentence enhancements, his claim would fail because he waived his jury trial rights on the prior conviction allegations, see RT 59-562, and because the enhancements were based on his prior convictions, which represent a narrow exception to the constitutional right to a jury determination of sentencing factors. See Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998); Apprendi, 530 U.S. at 490 ("In sum, our reexamination of our cases in this area, and of the history upon which they rely confirms" that the right to a jury applies to all sentencing factors, "[o]ther than the fact of a prior conviction.") He is not entitled to the writ on his sentence challenges.

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: February 18, 2009

SUSAN ILLSTON
United States District Judge